# EXHIBIT B

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Shannon J. Leap, Esq. (SBN 339574)
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

M.B., by and through her Guardian *ad litem*, Nayelli Bautista and L.D., by and through his Guardian *ad litem*, Jasmin Trinidad, individually and as successors in interest to CARLOS DE ANDA, deceased

Plaintiffs,

vs.

CITY OF LOS ANGELES; JOSE ARTEAGA MAYAN; KASSANDRA RODRIGUEZ; and DOES 1-10, inclusive,

Defendants.

Case No. Case No. 2:24-cv-07642-SVW-SSC

## [PROPOSED] FIRST AMENDED COMPLAINT FOR DAMAGES

1. Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)
2. Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)
3. Denial of Familial Relationship – Substantive Due Process, Fourteenth Amendment (42 U.S.C. § 1983)
4. Municipal Liability – Ratification (42 U.S.C. § 1983)
5. Municipal Liability – Inadequate Training (42 U.S.C. § 1983)
6. Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)
7. Battery
8. Negligence
9. Bane Act (Cal. Civil Code 52.1)

## DEMAND FOR JURY TRIAL

-1-

## COMPLAINT FOR DAMAGES

M.B., by and through her Guardian *ad litem*, Nayelli Bautista and L.D., by and through his Guardian *ad litem*, Jasmin Trinidad, individually and as successors in interest to CARLOS DE ANDA, deceased, bring this Complaint against Defendants CITY OF LOS ANGELES, JOSE ARTEAGA MAYAN, KASSANDRA RODRIGUEZ, and DOES 1-10, inclusive, and hereby allege as follows:

## INTRODUCTION

1.     This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the fatal officer-involved shooting of Carlos De Anda on September 13, 2023.

## JURISDICTION AND VENUE

2.     This case arises under 42 U.S.C. § 1983 and 1988 as well as California law.  This court has subject matter jurisdiction over Plaintiffs' federal question and civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has jurisdiction over Plaintiffs' supplemental state law claims under 28 U.S.C. § 1367 as those claims arise out of the same transactions and occurrences as Plaintiffs' federal question claims.

3.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because all incidents, events, and occurrences giving rise to this action occurred in the City and the County of Los Angeles, California.

## PARTIES

4.     At all relevant times, Decedent CARLOS DE ANDA ("DECEDENT") was an individual residing in the City of Los Angeles, County of Los Angeles, California.

5.     Plaintiff M.B., a minor, is the natural daughter of DECEDENT. M.B. sues both in an individual capacity as the daughter of DECEDENT and in a

representative capacity as a successor in interest to DECEDENT pursuant to California Code of Civil Procedure § 377.30. Plaintiff M.B. seeks survival damages, wrongful death damages, and punitive damages under federal and state law.

6.      Plaintiff L.D., a minor, is the natural son of DECEDENT. L.D. sues both in an individual capacity as the son of DECEDENT and in a representative capacity as a successor in interest to DECEDENT pursuant to California Code of Civil Procedure § 377.30. Plaintiff L.D. seeks survival damages, wrongful death damages, and punitive damages under federal and state law.

7.      At all relevant times, Defendant CITY OF LOS ANGELES ("CITY") is and was a municipal corporation existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Los Angeles Police Department ("LAPD") and its agents and employees.  At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the and its employees and agents complied with the laws of the United States and of the State of California.  At all relevant times, CITY was the employer of Defendants DOE OFFICERS.

8.      At all relevant times, Defendants JOSE ARTEAGA MAYAN, KASSANDRA RODRIGUEZ, DOES 1-7 ("DEFENDANT OFFICERS") are police officers for LAPD who were acting under color of law within the course and scope of their duties as officers for the LAPD.  DOES 1-7 were acting with the complete authority and ratification of their principal, Defendant CITY.

9.      Defendants DOES 8-10 are managerial, supervisorial, and policymaking employees of LAPD, who at all relevant times were acting under color of law within the course and scope of their duties as managerial, supervisorial,

[PROPOSED] FIRST AMENDED COMPLAINT FOR DAMAGES

and policymaking employees for the LAPD. DOES 8-10 were acting with the complete authority and ratification of their principal, Defendant CITY.

10.     On information and belief, at all relevant times DOES 1-10 were residents of the City of Los Angeles.

11.     In doing the acts and failing and omitting to act as hereinafter described, DOE OFFICERS were acting on the implied and actual permission and consent of DOES 8-10 and the CITY.

12.     In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 8-10 were acting on the implied and actual permission and consent of the CITY.

13.     The true names and capacities, whether individual, corporate, association, or otherwise of Defendants DOES 1-10, inclusive, are unknown to Plaintiffs, who otherwise sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to show the true names and capacity of these Defendants when they have been ascertained.  Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

14.     At all times mentioned herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

15.     All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Moreover, Defendants and their agents ratified all of the acts complained of herein.

16.     DOES 1-10 are sued in their individual capacity.

[PROPOSED] FIRST AMENDED COMPLAINT FOR DAMAGES

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

17.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

18.     On September 13, 2023, DEFENDANT OFFICERS responded to the 1200 block of South New Hampshire Avenue in the Pico-Union neighborhood of Los Angeles, California responding to a call for vandalism. DEFENDANT OFFICERS encountered DECEDENT in a large, empty parking lot, surrounded by a wall on three sides. On the fourth, street-facing side, the wall had a gate on its top half, such that the responding officers could see through it into the parking lot.

19.     DOE 1 and DEFENDANT JOSE ARTEAGA MAYAN, who were partners, arrived at the scene and saw DECEDENT at the opposite end of the parking lot from them. They walked along the fourth wall on the sidewalk with their weapons drawn and pointed at DECEDENT. JOSE ARTEAGA MAYAN yelled commands at DECEDENT in Spanish.

20.     The DEFENDANT OFFICERS knew or should have known that DECEDENT was or could have been experiencing a mental health crisis.

21.     The LAPD has a unit designated as a mental health response team unit: the Systemwide Mental Assessment Response Team ("SMART Unit").

22.     DEFENDANT JOSE ARTEAGA MAYAN communicated to DOE 1 that they should request the SMART Unit, because it appeared to DEFENDANT JOSE ARTEAGA MAYAN that DECEDENT was or could have been experiencing a mental health crisis. Inexplicably, DOE 1 instructed DEFENDANT JOSE ARTEAGA MAYAN not to call the SMART Unit.

23.     An LAPD Air Unit arrived over the scene and communicated with DEFENDANT OFFICERS about DECEDENT'S position, containment, and limited ability to flee the scene.

24.     The parking lot had a driveway entrance and opening in the fence to the north of where DOE 1 and DEFENDANT JOSE ARTEAGA MAYAN were positioned. Additional DOE officers responded to that opening, including DEFENDANT KASSANDRA RODRIGUEZ.

25.     DECEDENT approached the driveway entrance to the parking lot, where several DEFENDANT OFFICERS were, with their patrol units. DEFENDANT JOSE ARTEAGA MAYAN  ran to the entrance with his firearm drawn. DOE 1, who on information and belief, was armed with a less-lethal weapon, also ran to the entrance of the parking lot with his less-lethal weapon drawn.

26.     DEFENDANT OFFICERS escalated the situation by simultaneously shouting conflicting commands at DECEDENT, who was disoriented and suffering from a mental health crisis, which DEFENDANT OFFICERS knew or should have known. DECEDENT approached the DEFENDANT OFFICERS, who were near their patrol vehicles, such that the DEFENDANT OFFICERS had distance, times, space, and cover between themselves and DECEDENT.

27.     The DEFENDANT OFFICERS, including JOSE ARTEAGA MAYAN and KASSANDRA RODRIGUEZ failed to give adequate commands to DECEDENT and failed to give DECEDENT an opportunity to comply with commands prior to their use of lethal weapons against him.

28.     As DECEDENT approached the DEFENDANT OFFICERS in front of him, the DEFENDANT OFFICERS, including but not limited to DEFENDANT JOSE ARTEAGA MAYAN and DEFENDANT KASSANDRA RODRIGUEZ, discharged their firearms at DECEDENT, striking DECEDENT several times.

29.     At all relevant times, DECEDENT did not pose an immediate threat of death or serious bodily injury to DEFENDANT OFFICERS or others. DECEDENT was not armed with a firearm, and did not raise or point any weapon at DEFENDANTOFFICERS nor anyone else at the time of the shooting. DECEDENT

never made verbal threats towards DEFENDANT OFFICERS or anyone else prior to or during the shooting.

30.    At all relevant times, DEFENDANT OFFICERS were not faced with an immediate defense of life situation and had less-lethal alternatives available to take DECEDENT into custody.

31.    DEFENDANT OFFICERS failed to provide a warning that they were prepared to use lethal force prior to their use of lethal force, despite it being feasible to do so.

32.    On information and belief, despite having knowledge that DECEDENT was seriously injured by DEFENDANT OFFICERS' use of deadly force, DEFENDANT OFFICERS failed to timely summon medical care or permit medical personnel to treat DECEDENT. The delay of medical care to DECEDENT was a contributing cause of DECEDENT's harm, injury, pain and suffering, and ultimate death.

33.    DECEDENT sustained several gunshot wounds to his body and died as a result of his gunshot wounds.

34.    Plaintiffs M.B. and L.D. are DECEDENT's successors-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and succeed DECEDENT's interest in this action as the biological children of DECEDENT.

35.    On or around March 21, 2024, Plaintiffs filed a comprehensive claim for damages with the City of Los Angeles in substantial compliance with § 910 of the California Government Code. On or around April 4, 2024, the City returned Plaintiffs' claims on the basis that it was untimely.

36.    On or around April 17, 2024, Plaintiffs served an Application for a Late Claim, pursuant to §§ 911.4 and § 911.6 of the California Government Code. On or around May 10, 2024, CITY accepted Plaintiffs' Application for a Late Claim, and

[PROPOSED] FIRST AMENDED COMPLAINT FOR DAMAGES

advised Plaintiffs that the merits of their claims would be investigated, and then denied the merits of said claims.

## **FIRST CLAIM FOR RELIEF**

**Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**

(Against DEFENDANTS JOSE ARTEAGA MAYAN, KASSANDRA RODRIGUEZ, and DOES 1-7 ("DEFENDANT OFFICERS"))

37.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

38.     DEFENDANT OFFICERS, including DEFENDANTS JOSE ARTEAGA MAYAN and KASSANDRA RODRIGUEZ used excessive and unreasonable force against DECEDENT when they shot him several times. Defendant DEFENDANTS JOSE ARTEAGA MAYAN and KASSANDRA RODRIGUEZ unjustified use of force deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

39.     As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

40.     At all relevant times, DECEDENT did not forcibly resist, nor did he pose an immediate threat of death or serious bodily injury to DEFENDANT OFFICERS or anyone else.

41.      DEFENDANTS JOSE ARTEAGA MAYAN's and KASSANDRA RODRIGUEZ's use of force was excessive and objectively unreasonable and contrary to basic police officer training because DECEDENT posed no immediate threat of death or serious bodily injury to anyone at the time.

42.    DEFENDANT OFFICERS, including JOSE ARTEAGA MAYAN and KASSANDRA RODRIGUEZ did not exhaust all reasonable available alternative measures prior using deadly force on DECEDENT. DEFENDANT OFFICERS, including JOSE ARTEAGA MAYAN and KASSANDRA RODRIGUEZ failed provide adequate commands and warnings prior to using deadly force, despite it be feasible to do so.

43.    As a result of their misconduct as described above, DEFENDANT OFFICERS are liable for DECEDENT's injuries, either because they were integral participants in the use of excessive force or because they failed to prevent these violations.

44.    The conduct of DEFENDANT JOSE ARTEAGA MAYAN and KASSANDRA RODRIGUEZ was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANT JOSE ARTEAGA MAYAN and KASSANDRA RODRIGUEZ.

45.    Plaintiffs M.B. and L.D. bring this claim as successors-in-interest to DECEDENT and seek survival damages, including pre-death pain and suffering, emotional distress, loss of life, and loss of enjoyment of life for the violation of DECEDENT's rights. Plaintiffs also seek attorneys' fees under this claim.

## SECOND CLAIM FOR RELIEF

**Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**

(Against DEFENDANTS JOSE ARTEAGA MAYAN, KASSANDRA RODRIGUEZ, and DOES 1-7 ("DEFENDANT OFFICERS"))

46.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

47.    DEFENDANT OFFICERS failed to provide much needed medical care to DECEDENT, failed to timely summon needed medical care for DECEDENT, prevented medical care personnel from timely treating DECEDENT, and refused to permit medical care personnel access to DECEDENT for care at the scene for an appreciable amount of time after the incident.

48.    The denial of medical care by DEFENDANT OFFICERS deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

49.    As a result of the foregoing, DECEDENT suffered great physical pain and suffering up to the time of his death, loss of life, loss of enjoyment of life, and loss of earning capacity.

50.    DEFENDANT OFFICERS knew that failure to provide timely medical treatment to DECEDENT could result in further significant injury, the unnecessary and wanton infliction of pain, or death, but disregarded that serious medical need, causing DECEDENT great bodily harm and death.

51.    The conduct of DEFENDANT OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANT OFFICERS.

52.    At all relevant times, DEFENDANT OFFICERS were acting under color of state law.

53.    As a result of their misconduct as described above, DEFENDANT OFFICERS are liable for DECEDENT's injuries, either because they were integral participants or because they failed to prevent these violations.

54.    Plaintiffs M.B. and L.D. bring this claim as a successors-in-interest to the DECEDENT, and seek survival damages, including pre-death pain and

suffering, loss of life, and loss of enjoyment of life for the violation of DECEDENT'S rights. Plaintiffs also seek punitive damages, costs, and attorney's fees under this claim.

### THIRD CLAIM FOR RELIEF

**Fourteenth Amendment – Denial of Familial Relationship (42 U.S.C. § 1983)**

(Against DEFENDANTS JOSE ARTEAGA MAYAN, KASSANDRA RODRIGUEZ, and DOES 1-7 ("DEFENDANT OFFICERS"))

55.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

56.     DEFENDANT OFFICERS acted within the course and scope of their employment as police officers for the Defendant CITY and LAPD and acted under color of state law.

57.     Plaintiff M.B. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with her father, DECEDENT.

58.     Plaintiff L.D. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with his father, DECEDENT.

59.     DECEDENT had a cognizable interest under the Due Process Clause of Fourteenth Amendment of the United States Constitution to be free from state

actions that deprive him of life, liberty, or property in such a manner as to shock the conscience.

60.    The aforementioned actions of DEFENDANT OFFICERS, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

61.    As a direct and proximate result of these actions, DECEDENT experienced pain and suffering and eventually died.  Defendants DEFENDANT OFFICERS thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with DE ANDA.

62.    As a direct and proximate cause of the acts of DEFENDANT OFFICERS, Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

63.    As a result of their misconduct, Defendants are liable for Plaintiffs, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

64.    The conduct of DEFENDANT OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

65.    Plaintiffs bring this claim individually and as successors-in-interest to DECEDENT and seek both survival and wrongful death damages for the violation of their rights.  Plaintiffs also seek attorney's fees and costs under this claim.

1

**FOURTH CLAIM FOR RELIEF**

2

**Municipal Liability – Ratification (42 U.S.C. § 1983)**

3

(Against Defendants CITY and DOES 8-10)

4      66.     Plaintiffs repeat and re-allege each and every allegation in the

5   foregoing paragraphs of this Complaint with the same force and effect as if fully set

6   forth herein.

7      67.     At all relevant times, DEFENDANT OFFICERS were acting under

8   color of state law.

9      68.     The acts of Defendants DEFENDANT OFFICERS, including JOSE

10   ARTEAGA MAYAN and KASSANDRA RODRIGUEZ as described above,

11   including using lethal force against DECEDENT, deprived DECEDENT of his

12   rights under the United States Constitution.

13      69.     Upon information and belief, a final policymaker for CITY, acting

14   under color of law, who had final policymaking authority concerning the acts of

15   DOE OFFICERS, ratified (or will ratify) DEFENDANT OFFICERS' acts and the

16   bases for them.  Upon information and belief, the final policymaker knew of and

17   specifically approved of (or will specifically approve of) DEFENDANT

18   OFFICER's acts, which include use of excessive force against Plaintiff as well as

19   the unreasonable detention and arrest of DECEDENT and denial of medical care.

20      70.     Upon information and belief, a final policymaker for CITY has

21   determined (or will determine) that the acts of DEFENDANT OFFICERS were

22   "within policy."

23      71.     By reason of the aforementioned acts and omissions, Plaintiff has

24   suffered loss of the love, companionship, affection, comfort, care, society, training,

25   guidance, and past and future support of DECEDENT.  The aforementioned acts and

26   omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life,

27   and death.

28

72.     Accordingly, DEFENDANT OFFICERS and DOES 8-10 each are liable to Plaintiffs and DECEDENT for compensatory damages under 42 U.S.C. § 1983.

73.     Plaintiffs M.B. and L.D. bring this claim as individuals and as successors-in-interest to the DECEDENT, and seek survival damages, including pre-death pain and suffering, loss of life, loss of enjoyment of life, and wrongful death damages under this claim. Plaintiffs also seek punitive damages, costs, and attorney's fees under this claim.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

(Against Defendants CITY and DOES 8-10)

74.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

75.     At all relevant times, DEFENDANT OFFICERS were acting under color of state law.

76.     The acts of DEFENDANT OFFICERS deprived DECEDENT of his rights under the United States Constitution.

77.     The training policies of Defendant CITY were not adequate to train its officers to handle the usual and recurring situations with which they must deal.

78.     Defendant CITY was deliberately indifferent to the obvious consequences of its failure to train its police officers adequately.  Specifically, CITY failed to adequately train DEFENDANT OFFICERS with respect to detentions and arrests, tactics, use of less-lethal options, and the use of deadly force, including determining whether the use of deadly force is reasonable and appropriate under the circumstances.

79.    The failure of Defendant CITY to provide adequate training caused the deprivation of the DECEDENT's rights by DEFENDANT OFFICERS; that is, CITY's failure to train is so closely related to the deprivation of DECEDENT's rights as to be the moving force that caused the ultimate injury.

80.    The following are only a few examples of cases where the involved officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that Defendant CITY failed to adequately train its officers, more specifically the failure to train with regard to the use of force:

a.    In *Contreras v. City of Los Angeles*, case number 2:11-cv-01480-SVW (SHx), a unanimous jury award for Mr. Contreras after finding that the involved LAPD officers used excessive and unreasonable force when they shot Mr. Contreras, who was unarmed.

b.    In *P.C., et al. v. City of Los Angeles*, case number CV 07-3413 PLA, a unanimous jury award for plaintiffs after finding that the involved LAPD officers' use of deadly force was excessive and unreasonable.

c.    In *Herrera, et al. v. City of Los Angeles, et al.*, case number 16-cv-02719-DSF (SHx), a unanimous jury award for plaintiffs after finding that the involved LAPD officer used excessive force against Ruben Herrera when he shot him.

d.    In *Mears, et al. v. City of Los Angeles, et al.*, case number 2:15-cv-08441-JAK-AJW, a unanimous jury found Monell liability on the part of the City for failure to properly train its LAPD officers and found that the involved officers' use of deadly force was excessive and unreasonable.

e.    In *Hernandez, et al. v. City of Los Angeles, et al.*, case number 2:16-cv-02689, a unanimous jury found that two LAPD officers used

1  excessive and unreasonable force and restraint against Alex Jimenez, who

2  was unarmed.

3       f.    In *L.D., et al. v. City of Los Angeles*, case number 2:16-cv-

4  04626-PSG, a unanimous jury found that officers used excessive and

5  unreasonable force against Cesar Frias, including the use of tasers, bean bag

6  shotguns, and ultimately deadly force.

7       g.    In *Navas, et al. v. City of Los Angeles, et al.*, case number CV15-

8  09515 SVW (JCx), the LAPD officer's use of deadly force against Sergio

9  Navas was excessive and unreasonable.

10      h.    In *Medina v. City of Los Angeles*, case number CV 06-4926-

11  CBM (Ex), Plaintiff alleged that the involved LAPD officers used excessive

12  and unreasonable force when they kept Mr. Medina (the decedent) down in a

13  prone position while he was handcuffed and hobbled and placed weight on his

14  back and pressure on his neck for an extended period of time.  The medical

15  examiner in that case confirmed that Mr. Medina died as a result of restraint

16  asphyxia.  A unanimous jury returned a verdict in Plaintiff's favor, finding

17  that the use of force was excessive and unreasonable.  In that case, the

18  involved officers were not disciplined or retrained for their use of force, and

19  the CITY found that the officer's conduct was justified and did not violate

20  any CITY policy.

21      i.    In *Cano, et al. v. City of Los Angeles*, case number 2:15-cv-

22  00333-JAK-E, the family of an unarmed man (David Martinez), who was shot

23  and killed by LAPD Rampart officers, alleged that the force used by the

24  officers was excessive and unreasonable.  Police reports confirmed that Mr.

25  Martinez was unarmed at the time of the shooting. In that case, the involved

26  officers were not disciplined or retrained for their use of deadly force, and the

27

28

CITY found that the shooting was justified and did not violate any CITY policy.

81.    By reason of the aforementioned acts and omissions, Plaintiff has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

82.    Accordingly, DEFENDANT OFFICERS and DOES 8-10 each are liable to Plaintiffs M.B. and L.D. and DECEDENT for compensatory damages under 42 U.S.C. § 1983.

83.    Plaintiffs M.B. and L.D. bring this claim as individuals and as successors-in-interest to the DECEDENT, and seek survival damages, including pre-death pain and suffering, loss of life, loss of enjoyment of life, and wrongful death damages under this claim. Plaintiffs also seek punitive damages, costs, and attorney's fees under this claim.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)

(Against Defendants CITY and DOES 8-10)

84.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

85.    At all relevant times, DEFENDANT OFFICERS were acting under color of state law.

86.    When Defendants JOSE ARTEAGA MAYAN and KASSANDRA RODRIGUEZ shot and killed DECEDENT, and denied him timely medical attention, they acted pursuant to an expressly adopted official policy/ies or a longstanding practice(s) or custom of the Defendant CITY respectively.

87.    On information and belief, DEFENDANT OFFICERS were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of lethal force against DECEDENT.

88.    Defendants CITY and DOES 8-10, together with other CITY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)    Using excessive force, including excessive deadly force;

(b)    Providing inadequate training regarding the use of deadly force;

(c)    Employing and retaining as officers individuals whom Defendant CITY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

(d)    Inadequately supervising, training, controlling, assigning, and disciplining CITY police officers, and other personnel, whom Defendant CITY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(e)    Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by CITY police officers;

(f)    Failing to adequately discipline CITY police officers for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

      (g)   Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional;

      (h)   Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved;

      (i)   Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing;

      (j)   Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in shootings of unarmed people.

89.    Defendants CITY and DOES 8-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiffs and other individuals similarly situated.

90.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, CITY and DOES 8-10 acted with intentional, reckless, and callous disregard for the life and constitutional rights of Plaintiff and DECEDENT.  Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants CITY and DOES 8-10 were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiffs and DECEDENT.

91.     The following are a few examples of Defendants CITY'S unconstitutional customs, practices and policies, and continued misconduct:

a.     In *Contreras v. City of Los Angeles*, case number 2:11-cv-01480-SVW (SHx), a unanimous jury award for Mr. Contreras after finding that the involved LAPD officers used excessive and unreasonable force when they shot Mr. Contreras, who was unarmed.

b.     In *P.C., et al. v. City of Los Angeles*, case number CV 07-3413 PLA, a unanimous jury award for plaintiffs after finding that the involved LAPD officers' use of deadly force was excessive and unreasonable.

c.     In *Herrera, et al. v. City of Los Angeles, et al*., case number 16-cv-02719-DSF (SHx), a unanimous jury award for plaintiffs where a LAPD officer used excessive force.

d.     In *Mears, et al. v. City of Los Angeles*, et al., case number 2:15-cv-08441-JAK-AJW, a unanimous jury found *Monell* liability on the part of the City for failure to properly train its LAPD officers and found that the involved officers' use of deadly force was excessive and unreasonable.

e.     In *Hernandez, et al. v. City of Los Angeles*, et al., case number 2:16-cv-02689, a unanimous jury found that two LAPD officers used excessive unreasonable force and restraint against Alex Jimenez, who was unarmed.

f.      In *L.D., et al. v. City of Los Angeles*, case number 2:16-cv-04626-PSG, a unanimous jury found that officers used excessive and unreasonable force against Cesar Frias, including the use of tasers and bean bag shotguns.

g.      In *Navas, et al. v. City of Los Angeles, et al.*, case number CV15-09515 SVW(JCx), the City determined that the LAPD officer's use of deadly force against Sergio Navas was excessive and unreasonable and outside City policy.

h.      In *Medina v. City of Los Angeles*, case number CV 06-4926-CBM (Ex), plaintiff alleged that the involved LAPD officers used excessive and unreasonable force when they kept Mr. Medina (the decedent) down in a prone position while he was handcuffed and hobbled and placed weight on his back and pressure on his neck for an extended period of time. The medical examiner in that case confirmed that Mr. Medina died as a result of restraint asphyxia. A unanimous jury returned a verdict in plaintiff's favor, finding that the use of force was excessive and unreasonable. In that case, the involved officers were not disciplined or retrained for their use of force, and the CITY found that the officer's conduct was justified and did not violate any CITY policy.

i.      In *Cano, et al. v. City of Los Angeles*, case number 2:15-cv-00333-JAK-E, the family of an unarmed man (David Martinez), who was shot and killed by LAPD Rampart officers, alleged that the force used by the officers was excessive and unreasonable. Police reports confirmed that Mr. Martinez was unarmed at the time of the shooting. In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

92.     By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of their father, DECEDENT. The

1  aforementioned acts and omissions also caused DECEDENT's pain and suffering,
2  loss of enjoyment of life, and death.

3       93.    Accordingly, DEFENDANT OFFICERS and DOES 8-10 each are
4  liable to Plaintiffs and DECEDENT for compensatory damages under 42 U.S.C. §
5  1983.

6       94.    Plaintiffs M.B. and L.D. bring this claim as individuals and as
7  successors-in-interest to the DECEDENT, and seek survival damages, including
8  pre-death pain and suffering, loss of life, loss of enjoyment of life, and wrongful
9  death damages under this claim. Plaintiffs also seek punitive damages, costs, and
10 attorney's fees under this claim.

11

12              **SEVENTH CLAIM FOR RELIEF**
13              **Battery (Wrongful Death)**
14              (Against All Defendants)

15      95.    Plaintiffs repeat and re-allege each and every allegation in the
16 foregoing paragraphs of this Complaint with the same force and effect as if fully set
17 forth herein.

18      96.    At all relevant times, DEFENDANT OFFICERS were working as
19 police officers for LAPD and was acting within the course and scope of their duties
20 as a police officer for the CITY.

21      97.    DEFENDANTS JOSE ARGETA MAYAN and KASSANDRA
22 RODRIGUEZwhile working as officers for the LAPD, and acting within the course
23 and scope of their duties, intentionally shot DECEDENT multiple times and used
24 unreasonable and excessive force against him.  As a result of the actions of
25 DEFENDANTS JOSE ARGETA MAYAN and KASSANDRA RODRIGUEZ,
26 DECEDENT ultimately died from his injuries.  DEFENDANTS JOSE ARGETA
27 MAYAN and KASSANDRA RODRIGUEZ had no legal justification for using

28

force against DECEDENT, and their use of force while carrying out their duties as police officers was an unreasonable and non-privileged use of force.

98.     As a direct and proximate result of the conduct of DEFENDANT OFFICERS as alleged above, DECEDENT sustained injuries and died from his injuries and also lost his earning capacity.

99.     The CITY is vicariously liable for the wrongful acts of DEFENDANT OFFICERS and DOES 8-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

100.   The conduct of DEFENDANT OFFICERS and DOES 8-10 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of DECEDENT, entitling Plaintiff, as successor-in-interest to DECEDENT, to an award of exemplary and punitive damages, which Plaintiff seeks under this claim.

101.   Plaintiffs M.B. and L.D. bring this claim as individuals and as successors-in-interest to DECEDENT. Plaintiffs seek survival damages and wrongful death damages, including pre-death pain and suffering, under this claim.

## EIGHTTH CLAIM FOR RELIEF

### Negligence (Wrongful Death)

#### (Against all Defendants)

102.   Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

103.   The actions and inactions of Defendants were negligent and reckless, including but not limited to:

(a)    DEFENDANT OFFICERS' failure to properly and adequately assess the need to detain, arrest, and use force and/or deadly force against Plaintiff;

(b)    DEFENDANT OFFICERS' negligent tactics and handling of the situation with Plaintiff, including pre-force negligence;

(c)    DEFENDANT OFFICERS' negligent detention, arrest, and use of force, against Plaintiff;

(d)    DEFENDANT OFFICERS' failure to provide prompt medical care to Plaintiff,

(e)    the CITY's failure to properly train and supervise employees, both professional and non-professional, including DEFENDANT OFFICERS;

(f)    the CITY's failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT and Plaintiffs.

104.    As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT ultimately died. Also as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs suffered emotional distress and mental anguish.  Plaintiffs also has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. The CITY is vicariously liable for the wrongful acts of DEFENDANT OFFICERS and DOES 8-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

105.   Plaintiffs M.B. and L.D. bring this claim as individuals and as successors-in-interest to DECEDENT. Plaintiffs seek survival damages and wrongful death damages, including pre-death pain and suffering, under this claim.

### NINTH CLAIM FOR RELIEF

**Violation of Cal. Civil Code § 52.1 (Bane Act)**

(Against All Defendants)

106.   Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

107.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.  An intent to violate a person's civil rights can be inferred by a reckless disregard for the person's civil rights.

108.   On information and believe, DEFENDANTOFFICERS, while working for CITY and acting within the course and scope of their duties as police officers, intentionally committed and attempted to commit acts of violence against DECEDENT and also acted with a reckless disregard for DECEDENT's civil rights, including by shooting him without justification or excuse, and by denying him necessary medical care.

109.   When DEFENDANTS JOSE ARTEAGA MAYAN and KASSANDRA RODRIGUEZ shot DECEDENT, they interfered with his civil rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws, to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

110. On information and belief, DEFENDANTS JOSE ARTEAGA MAYAN and KASSANDRA RODRIGUEZ intentionally and spitefully committed the above acts to discourage DECEDENT from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights, which he was and is fully entitled to enjoy.

111. On information and belief, DECEDENT reasonably believed and understood that the violent acts committed by DEFENDANTS JOSE ARTEAGA MAYAN and KASSANDRA RODRIGUEZ were intended to discourage him from exercising the above civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

112. DEFENDANTS JOSE ARTEAGA MAYAN and KASSANDRA RODRIGUEZ intentionally and successfully interfered with the above civil rights of DECEDENT, including his right to be free from excessive force, and acted with a reckless disregard for these rights.

113. The conduct of Defendants was a substantial factor in causing DECEDENT's harms, losses, injuries, and damages.

114. The CITY is vicariously liable for the wrongful acts of DEFENDANT OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

115. Defendants DOES 8-10 are vicariously liable under California law and the doctrine of *respondeat superior*.

116. DEFENDANT OFFICERS' conduct was malicious, wanton, oppressive, and accomplished with a conscious disregard for DECEDENT's rights, justifying an award of exemplary and punitive damages as to DEFENDANTS JOSE ARTEAGA MAYAN and KASSANDRA RODRIGUEZ.

117.   Plaintiffs M.B. and L.D. bring this claim as successors-in-interest to DECEDENT and seeks survival damages, including emotional distress, loss of life, and loss of enjoyment of life under this claim. Plaintiffs also seeks treble damages, punitive damages, attorney's fees, and costs under this claim.

///
///
///
///
///
///

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs M.B. and L.D., by and through their respective guardians *ad litem*, request entry of judgment in their favor and against Defendants the CITY of Los Angeles, JOSE ARTEAGA MAYAN and KASSANDRA RODRIGUEZ and DOES 1-10, inclusive, as follows:

A.    For compensatory damages in whatever other amount may be proven at trial, including both survival damages and wrongful death damages under federal and state law;

B.    For funeral and burial expenses, and loss of financial support;

C.    For punitive damages against the individual defendants in an amount to be proven at trial;

D.    For statutory damages;

E.    For treble damages pursuant to California Civil Code Sections 52, 52.1;

F.    For interest;

G.    For reasonable attorneys' fees, including litigation expenses;

H.    For costs of suit; and

I.    For such further other relief as the Court may deem just, proper, and appropriate.

DATED:  January 14, 2025          LAW OFFICES OF DALE K. GALIPO


By _____*s/ Dale K. Galipo*_____
          Dale K. Galipo
          Shannon J. Leap
          Attorneys for Plaintiffs

[PROPOSED] FIRST AMENDED COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury.

DATED:  January 14, 2025          LAW OFFICES OF DALE K. GALIPO


By _____*s/ Dale K. Galipo*_____
Dale K. Galipo
Shannon J. Leap
Attorneys for Plaintiffs

[PROPOSED] FIRST AMENDED COMPLAINT FOR DAMAGES