**HYDEE FELDSTEIN SOTO**, City Attorney (SBN 106866)
**DENISE C. MILLS**, Chief Deputy City Attorney (SBN 191992)
**KATHLEEN KENEALY,** Chief Assistant City Attorney (SBN 212289)
**CORY M. BRENTE**, Senior Assistant City Attorney (SBN 115453)
**CHRISTIAN R. BOJORQUEZ,** Deputy City Attorney (SBN 192872)
200 N. Main Street, 6th Floor, City Hall East
Los Angeles, California 90012
Tel: (213) 978-7023   |   Fax:  (213) 978-8785
Email: christian.bojorquez@lacity.org

*Attorneys for Defendant* CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.B., by and through her Guardian ad litem, Nayelli Bautista and L.D., by and L.D., by and through his Guardian ad litem, Jasmin Trinidad, individually and as successors in interest to Carlos De Anda, deceased,<br><br>  Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, JOSE ARTEAGA MAYAN; KASSANDRA RODRIGUEZ; and DOES 1-10, Inclusive,<br><br>  Defendants. | **Case No. 2:24-cv-07642 SVW (SSC)**<br>*Assigned to Hon. Stephen V. Wilson; Ctrm 10A*<br>*Mag. Stephanie Christensen; Ctrm 790 (Roybal)*<br><br>**DECLARATION OF JOSE ARTEAGA MAYEN IN SUPPORT OF DEFENDANT CITY OF LOS ANGELES AND NAMED, BUT UNSERVED, DEFENDANTS JOSE ARTEAGA MAYEN AND KASSANDRA RODRIGUEZ' MOTION FOR SUMMARY JUDGMENT** |

///

///

///

///

///

///

1

# DECLARATION OF JOSE ARTEAGA MAYEN

I, JOSE ARTEAGA MAYEN, declare:

1. I am employed by the City of Los Angeles as a Los Angeles Police Officer and was working in my official capacity on September 13, 2023. I was one of two (2) Officers that used deadly force on that day and I am providing this Declaration in support of a Motion for Summary Judgment in the matter of *M.B. v. City of Los Angeles, et al.*, Case No. 2:24-cv-07642 SVW (SSCx). I make this Declaration in support of Defendants City of Los Angeles and named, but unserved, Defendants' Motion for Summary Judgment. I have personal knowledge of the facts stated herein and if called upon as a witness I would and could competently testify thereto. I make this declaration based upon my own personal knowledge, except upon those matters stated upon information and belief, and if called upon I would competently testify under penalty of perjury as follows:

2. On September 13, 2023, I was assigned as a Patrol Officer to the Los Angeles Police Department Olympic Division. I was wearing a Body-Worn Video which was activated and recording during the incident involving decedent Carlos De Anda and I was dressed in a full LAPD uniform. Attached herein as Exhibit 5 is a true, correct, authentic and accurate copy of my personal Body-Worn Video (hereinafter Exhibit 5: "Mayen BWV") from September 13, 2023 involving decedent Carlos De Anda (hereinafter "De Anda"). Attached herein as Exhibit 5-A is a true, correct, authentic and accurate copy of my personal BWV from September 13, 2023 involving De Anda that was slowed down.

3. At approximately 8:28pm on September 13, 2023, I was working with a partner, Officer Matthew Morse, and we were the first LAPD Unit to arrive at the incident location on New Hampshire involving De Anda.

4. At the time I arrived at scene, the southern gate to the parking lot (where De Anda eventually was located in & located mid-block on the East side of the 1200 block of New Hampshire Ave, hereinafter "parking lot") was closed. This can be seen on the

right side (East) of my BWV (Exhibit 5) as I walk northbound along New Hampshire at 20:28:53 – 20:28:58.

5.  As I walked northbound on New Hampshire, I observed De Anda on the east side of the street, adjacent to a parking lot, and communicated my observations to Officer Morse. I then observed De Anda enter the parking lot through a gap in the fence line. At that point I stated, "Hey! Hey!" but received no response from De Anda.

6.  I attempted to verbally communicate with De Anda in hopes to de-escalate the situation involving De Anda. I have had training on de-escalation, such as our PATROL (Acronym) which stands for: 1) Planning; 2) Assessment; 3) Time; 4) Redeployment - Containment; 5) Other Resources; and 6) Lines of Communication, as well as mental evaluation training & academy training, but ultimately the situation is dictated on the willingness of De Anda to cooperate with officers. Ultimately, I was trying to relate to De Anda as a human being and trying to be considerate of his circumstances.

7.  I observed De Anda reach down and he armed himself with a knife at 8:29:37pm. I have seen the original knife and I am aware of the lengths on the knife: 1) total length of De Anda's knife was 15 inches with a 10-inch blade.

8.  At approximately 8:29:40pm on September 23, 2023, the following LAPD Broadcast was made by my partner Officer Morse: "53, we need a backup. He re-armed himself with a knife." "53, let's set up a containment perimeter. So, I want a unit at Vermont and Pico; New Hampshire and Pico; Vermont and 12th; and New Hampshire and 10th…12th. He is still walking around the parking lot still."

9.  I initiated communication with De Anda in an attempt to develop a rapport with De Anda and de-escalate the situation De Anda found himself in. This communication continued throughout the incident up until the shooting. De Anda was advised to drop the knife several times by me in Spanish and De Anda also stated in Spanish "I don't want to live" during the incident. I am a native Spanish Speaker and I am fluent in the Spanish language. As a result of my communications with De Anda in

3

1  Spanish, I was asked to create an English translation of what my BMV captured (Exhibit
2  5) of my communications with De Anda in Spanish.  I completed that task by creating
3  Exhibit 8.  Attached herein as Exhibit 8 is a true, accurate and correct copy of the
4  transcription I made of my BWV (Exhibit 5) regarding my communications with De
5  Anda on September 13, 2023.

6       10.    During my conversation with De Anda, De Anda stated "I don't want to
7  live."  After hearing this statement and believing De Anda wanted to potentially commit
8  suicide, I advised Officer Morse and thereafter continued to inquire of De Anda as to
9  why De Anda does not want to live.

10      11.    At approximately 8:33:23pm, Defendant Rodriguez and her partner Officer
11  Hernandez arrive at the incident location.  Upon her arrival, I recognized that the
12  southern gate to the parking lot was open as Defendant Rodriguez had entered past the
13  fence line.  I had no involvement with the gate, nor did Officer Morse, as that southern
14  gate was closed upon my arrival.  No one from the LAPD made a request for that gate to
15  be opened.

16      12.    Despite my continued attempts to de-escalate by trying to relate to De Anda
17  as a human being and trying to be considerate, De Anda terminated any ability to
18  continue communications with me by advancing towards the southern gate where
19  Defendant Rodriguez and her patrol vehicle were located.  I thereafter observed De
20  Anda suddenly stop and he appeared to move to his left while still armed with the knife.

21      13.    At all times involved in this incident, from the time De Anda picked up the
22  knife early in this incident, until after all shots were fired by myself and Defendant
23  Rodriguez, De Anda was in possession of the knife, including after the shooting wherein
24  the weapon was still in the possession of De Anda as Officer Morse approaches him and
25  removes it from De Anda.

26      14.    After I observed De Anda terminate communicating with me as he can be
27  seen advancing to the southern gate, I tracked De Anda southbound along the east
28  sidewalk, while providing orders to De Anda to stop and to "put the knife down."  After

about 6 seconds, De Anda eventually stopped for approximately 3 seconds and I did not fire at that time. I did not fire my weapon when De Anda first stopped because De Anda did not pose an imminent threat of death or serious bodily injury at that time. It wasn't until De Anda, while still armed, began to advance again from a distance of approximately 20 – 25 feet which caused me to fire my weapon a total of two (2) times to stop the imminent threat of serious bodily injury and/or death that De Anda posed.

15. I had less than one (1) second to react to De Anda's advancement towards Defendant Rodriguez and myself in deciding whether to fire or not. I fired a total of two (2) shots, assessing as I fired each shot, while perceiving that De Anda still posed an imminent threat (while armed) of serious bodily injury and/or death and I stopped firing after my second (2nd) shot, where I acknowledged that the threat De Anda posed had stopped.

16. Based upon the actions of De Anda, coupled with the totality of the circumstances, I believed De Anda was possibly under the influence of drugs and wanted to die when I had contact with him on September 13, 2023.

17. My BWV (Exhibit 5) and (Exhibit 5-A) are essentially the "best evidence" in this case, as it captured in real time the events which led up to the tragic shooting of De Anda. Those BWVs provide the "best evidence" of how De Anda posed an imminent threat of serious bodily injury and/or death which caused me to fire a total of two (2) shots to stop the threat he posed to myself, my fellow officer and citizens in the area.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct and that this Declaration was executed this 14, day of March, 2025, in the City and County of Los Angeles, California.

_____
JOSE ARTEAGA MAYAN, Declarant