**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
 *dalekgalipo@yahoo.com*
Marcel F. Sincich, Esq (SBN 319508)
 *msincich@galipolaw.com*
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.B., by and through her Guardian *ad litem*, Nayelli Bautista; and L.D., by and through his Guardian *ad litem*, Jasmin Trinidad, individually and as successors in interest to CARLOS DE ANDA, deceased,<br><br>          Plaintiffs,<br><br>     vs.<br><br>CITY OF LOS ANGELES; JOSE ARTEAGA MAYAN; KASSANDRA RODRIGUEZ; and DOES 1-10, inclusive,<br><br>          Defendants. | Case No. 2:24-cv-07642-SVW-SSC<br><br>Assigned to:<br>Hon. District Judge Stephen V. Wilson<br>Hon. Mag. Judge Stephanie S. Christensen<br><br>**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT**<br><br>[*Filed concurrently with* Plaintiffs' Opposition to Defendants' Motions for Summary Judgment; Memorandum of Points and Authorities in support thereof; Plaintiffs' Objections to Evidence Presented in Defendants' Separate Statements; Declaration of Marcel F. Sincich and exhibits thereto; Declaration of Roger Clark]<br><br>Date:       April 28, 2025<br>Time: 1:30 p.m.<br>CTRM      10A |

## PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Pursuant to Local Rule 56-2, Plaintiffs M.B., by and through her Guardian *ad litem*, Nayelli Bautista; and L.D., by and through his Guardian *ad litem*, Jasmin Trinidad, individually and as successors in interest to CARLOS DE ANDA, deceased, respectfully submit their Statement of Genuine Disputes.

Please take notice that the citations to page numbers to Plaintiffs' Supporting Evidence below references to the page of the original document prior to being cut down to the cited pages only (i.e., not the bates label number, not the pdf page number, and not the CM/ECF generated number in blue), unless otherwise identified on the slip sheet.

DATED:  March 31, 2025         **LAW OFFICES OF DALE K. GALIPO**


*/s/      Marcel F. Sincich*
Dale K. Galipo, Esq.
Marcel F. Sincich, Esq.
*Attorney for Plaintiffs*

## PLAINTIFFS' STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' MATERIAL FACTS

Issue 1: Officer Rodriguez's and Officer Mayen's Use of Deadly Force Was Objectively Reasonable Under the Totality of the Circumstances.

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| **1.** On September 13, 2023, at approximately 18:14 hours, a Communications Division (hereinafter "CD") Emergency Board Operator (hereinafter "EBO") received a 911 call from Rosa Maria Fuentes De Leon, a Spanish speaker, who requested a police response to 1133 South Vermont Avenue. De Leon reported that the suspect, later identified as Carlos De Anda (hereinafter referred to as "De Anda"), had taken a knife from her fruit stand and was last seen walking south on Vermont Avenue, toward Pico Boulevard. De Leon described De Anda as a male, 30-35 years of age, wearing a brown and white shirt, and orange shorts.<br><br>Moving Party's Evidence:<br>Exhibit 1: LAPD Communications 911 Call;<br>Exhibit 1-A: English Translation of 911 Call from Spanish speaker and caller Rosa Maria Fuentes De Leon with EBO (hereinafter "911 Call Translation"). | **Disputed** as inadmissible information unknown, irrelevant to the analysis. **PAMF Nos**. 62-65. **Clark Decl**. ¶7 – Defendant Officers were not responding to a violent crime.<br><br>**Objections**:<br>**FRE 402, 403: Information Unknown, Inadmissible, Irrelevant, Unduly Prejudicial, Confuses the Issues, and is Misleading.** Fact is not supported by admissible evidence. Fed. Rules of Civ. Proc. 56(c)(2). In determining whether an officer's use of force was reasonable under the Fourth Amendment, courts and juries consider only the information known to the officers at the time of the use of force. *Tennessee v. Garner*, 471 U.S. 1, 26 (1985) ("The clarity of hindsight cannot provide the standard for judging the reasonableness of police decisions made in uncertain and often dangerous circumstances."); *Glenn v. Washington Cnty.*, 673 F.3d at 873 n.8 (9th Cir. 2011) ("We cannot consider evidence of which the officers were unaware—the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways.").<br>**Local Rule 56-1: Not a material fact**. A fact is "material" if its proof or disproof |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| | is essential to an element of a plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). With the restriction of hindsight evidence, this information unknown to Officer Morales is immaterial. *Glenn v. Washington County*, 673 F.3d 864, 873 n.8 (9th Cir. 2011). |
| **2.** At approximately 20:06 hours, CD received a 911 call from Cruz, who requested a police response to 1235 New Hampshire Avenue. Cruz reported that there was a male, later identified as De Anda, across the street from her residence holding a sharp, shiny object in his hand and was threatening people with the object.<br><br>Moving Party's Evidence:<br>Exhibit 2: LAPD Communications 911 Call. | **Disputed** as inadmissible information unknown, irrelevant to the analysis. **PAMF Nos**. 62-65.<br>**Clark Decl**. ¶7 – Defendant Officers were not responding to a violent crime.<br><br>**Objections**:<br>**FRE 402, 403: Information Unknown, Inadmissible, Irrelevant, Unduly Prejudicial, Confuses the Issues, and is Misleading.** Fact is not supported by admissible evidence. Fed. Rules of Civ. Proc. 56(c)(2). Information known excluded. *Tennessee v. Garner*, 471 U.S. 1, 26 (1985); *Glenn v. Washington Cnty.*, 673 F.3d at 873 n.8 (9th Cir. 2011).<br>**Local Rule 56-1: Not a material fact**. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Glenn v. Washington County*, 673 F.3d 864, 873 n.8 (2011). |
| **3.** At approximately 20:08pm on September 23, 2023, the following LAPD Broadcast was made: "Any Olympic Unit, 415 Man in the Korean Church parking lot across from 1235 South New Hampshire. Tall male, red shorts, has a possible edged weapon in | **Undisputed** that this call came out as alleged and needed to be investigated.<br>**PAMF Nos**. 62-65.<br>**Clark Decl**. ¶7 – Defendant Officers were not responding to a violent crime. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| his hand. Code-Two, Incident 4317, RD 2056." <br><br> <u>Moving Party's Evidence:</u> <br> Exhibit 3: LAPD Communications Division - Olympic Division Audio Base Frequency. | |
| 4.  At approximately 8:13pm on September 23, 2023, the following LAPD Broadcast was made: "Any Olympic Unit, 415 Man with a knife, 2531 West Pico, at the church parking lot. Male Hispanic transient, 20's, two-toned, dark blue upper white bottom, pink shorts, vandalizing vehicle's window, holding a knife, threw rocks at patrons. Code-Two, Incident 4334, RD 2056." <br><br> <u>Moving Party's Evidence:</u> <br> Exhibit 4: LAPD Communications Division - Olympic Division Audio Base Frequency. | **Undisputed** that this call came out as alleged and needed to be investigated. <br><br> **Disputed** to the extent that the allegation that the subject "threw rocks at patrons," whether the subject was "transient," or the description of what whether the subject was wearing is inadmissible information unknown, and irrelevant to the analysis. <br><br> <u>Opposing Party's Evidence:</u> <br> **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 70:10-16 – when asked what he knew from the initial call, Officer Mayen responded, "a '415 man with a knife,' which means he was disturbing the peace. He was armed with a knife and vandalizing vehicles." 74:10-14 – Further, Officer Mayen had no information that the subject had ever injured anyone. <br><br> **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 32:18-23 – when asked what information she got from the original call, Officer Rodriguez responded, "it wasn't my call. I just responded to an officer backup. But I did hear previously the call came out, or at least one of them, that there was a man armed with a knife." 35:18-21 – |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| | Further, Officer Rodriguez had no information that the subject had ever harmed anyone.<br>**Exh. N, Ring Video**, Sincich Decl ¶15, at 00:00-01:00.<br>**PAMF Nos**. 62-65.<br>**Clark Decl**. ¶7 – Defendant Officers were not responding to a violent crime.<br><br>**Objections**:<br>**FRE 402, 403: Information Unknown, Inadmissible, Irrelevant, Unduly Prejudicial, Confuses the Issues, and is Misleading.** *Tennessee v. Garner*, 471 U.S. 1, 26 (1985); *Glenn v. Washington Cnty*., 673 F.3d at 873 n.8 (9th Cir. 2011). |
| **5.**     Named Defendants LAPD Officers Jose Arteaga Mayen (hereinafter "Named Defendant Mayen"), and named Defendant Kassandra Rodriguez (hereinafter "Named Defendant Rodriguez"), as well as LAPD Officer Morse were wearing Body-Worn Videos which were activated and recording during the incident and were in full uniform.<br><br>Moving Party's Evidence:<br>Declaration of Named Defendant Jose Mayen (hereinafter "Mayen Dec."), at ¶ 2;<br>Declaration of Named Defendant Kassandra Rodriguez (hereinafter "Rodriguez Dec."), at ¶ 2;<br>Declaration of Officer Morse (hereinafter "Morse Dec."), at ¶ 2. | **Undisputed**. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| **6.**     At approximately 8:28 p.m., Named Defendant Mayen and his partner Officer Morse were the first LAPD Unit to arrive at the incident location.<br><br>Moving Party's Evidence:<br>Exhibit 5: Named Defendant Mayen's Body-Worn Video (hereinafter "Mayen BWV") at 20:28:37;<br>Mayen Dec., at ¶ 3. | **Undisputed** for the purposes of this opposition.<br><br>**Objections**:<br>Vague and ambiguous as to "incident." Insufficient support and does not establish the facts alleged: the BWC videos do not prove that the Defendant Officers were the first to arrive. |
| **7.**     At the time Named Defendant Mayen arrived at scene, the southern gate to the parking located mid-block on New Hampshire Avenue, between Pico Boulevard and 12th Street, was closed, which can be seen on the right side (East) of his BWV as he walks northbound along New Hampshire.<br><br>Moving Party's Evidence:<br>Exhibit 5: Mayen BWV at 20:28:53 thru 20:28:58;<br>Mayen Dec. at ¶ 4. | **Undisputed** for the purposes of this opposition. |
| **8.**     Named Defendant Mayan observed De Anda on the east side of the street, adjacent to a parking lot, and communicated his observations with his partner Officer Morse. Named Defendant Mayen then observed De Anda enter the parking lot through a gap in the fence line. Named Defendant Mayen yelled, "Hey! Hey!" but received no response from De Anda.<br><br>Moving Party's Evidence:<br>Exhibit 5: Mayen BWV at 20:29:24; | **Disputed** that no response was given by De Anda, otherwise undisputed for the purposes of this opposition.<br><br>**Objections**:<br>Insufficient support and does not establish the facts alleged. Vague and ambiguous as to "response." |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| Mayen Dec. at ¶ 5. | |
| **9.**    Named Defendant Mayen attempts to communicate with De Anda in hopes to de-escalate the situation involving De Anda.<br><br>Moving Party's Evidence:<br>Exhibit 5: Mayen BWV at 20:29:24;<br>Mayen Dec. at ¶ 6. | **Disputed** to the extent that Officer Mayen hoped to de-escalate the situation. Fact is not supported by admissible evidence. An officer's subjective intent or motivation is irrelevant to the analysis. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). |
| **10.**    De Anda reaches down and arms himself with a knife at 8:29:37 p.m. De Anda's knife is a total of 15 inches with a 10-inch blade.<br><br>Moving Party's Evidence:<br>Exhibit 5: Mayen BWV at 20:29:37;<br>Exhibit 6: Photos of Knife; Mayen Dec. at ¶ 7. | **Undisputed** for the purposes of this opposition. |
| **11.**    At approximately 8:29:40 pm on September 23, 2023, the following LAPD Broadcast was made by Officer Morse: "53, we need a backup. He re-armed himself with a knife." "53, let's set up a containment perimeter. So, I want a unit at Vermont and Pico; New Hampshire and Pico; Vermont and 12th; and New Hampshire and 10th…12th. He is still walking around the parking lot still.<br><br>Moving Party's Evidence:<br>Exhibit 7: LAPD Communications Division - Olympic Division Audio Base Frequency;<br>Morse Dec. at ¶ 8. | **Undisputed** that the officers involved had De Anda in a contained perimeter long before the deadly force was used. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| **12.**     Named Defendant Mayen initiated communication with De Anda in an attempt to develop a rapport with De Anda and de-escalate the situation De Anda had created. This communication continued throughout the incident up until the shooting. De Anda was advised to drop the knife several times and De Anda also stated "I don't want to live" during the incident. Exhibit 8 is incorporated herein by reference, as if fully set forth herein and is attached herein as "Exhibit 8: English Translation of Named Defendant Mayen's original communications with De Anda in Spanish" as depicted in Exhibit 5: Mayen BWV: 20:29:24 – 20:35:55. Exhibit 8 sets forth the entirety of communications between Named Defendant Mayen and De Anza and was translated by Named Defendant Mayen as a true, accurate, correct and authentic translation.<br><br>Moving Party's Evidence:<br>Exhibit 8: English Translation of Named Defendant Mayen's original communications with De Anda in Spanish (hereinafter "Mayan Translation");<br>Exhibit 5 Mayen BWV at 20:29:24 – 20:35:55; Mayan Dec. at ¶ 9. | **Disputed**. Facts not supported by admissible evidence including (i) whether an attempt to develop a rapport; (ii) whether an attempt to de-escalate; (iii) whether De Anda created the situation; and (iv) whether the communication was continuous throughout and up to the shooting. An officer's subjective intent or motivation is irrelevant to the analysis. *See Graham v. Connor*, 490 U.S. 386, 397 (1989).<br>Opposing Party's Evidence:<br>**Exh. J, Mayen BWC**, Sincich Decl ¶11, at 20:29:00 – 20:35:56.<br>**Exh. K, Screenshots of Mayen BWC**, Sincich Decl ¶12, at 1-11.<br>**Exh. L, Rodriquez BWC**, Sincich Decl ¶13, at 20:32-00 – 20:35:56.<br>**Exh. M, Screenshots of Rodriquez BWC**, Sincich Decl ¶12, at 1-22.<br>**PAMF Nos**. 72-74.<br>**Clark Decl**. ¶8 – Defendant Officers should have known that Mr. De Anda was potentially suffering from a mental health crisis.<br><br>**Objections**:<br>Argumentative, not facts.<br>Exhibit 8, an uncertified translation and transcription has no foundation, nor a declaration that it sets forth the entirety of the communications between Officer Mayen and De Anda.<br>Vague and ambiguous.<br>Lacks foundation.<br>Compound. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| **13.** During Named Defendant Mayen's communication with De Anda, De Anda stated "I don't want to live." Named Defendant Mayen advises his partner and thereafter attempts to inquire of De Anda as to why De Anda does not want to live.<br><br>Moving Party's Evidence:<br>Exhibit 8: Mayen Translation at page 4, 20:33:27;<br>Exhibit 5: Mayen BWV at 20:33:23 thru 20:34:20;<br>Mayen Dec. at ¶ 10. | **Objections**:<br>Exhibit 8, an uncertified translation and transcription has no foundation, nor a declaration that it sets forth the entirety of the communications between Officer Mayen and De Anda.<br>Compound.<br>Lacks foundation.<br>Vague and ambiguous as to what Defendants claim Mayen advised his partner. |
| **14.** At approximately 8:33:23 p.m., Named Defendant Rodriguez and her partner Officer Hernandez arrive at the incident location. Upon her arrival, the southern gate is now open. Named Defendant Mayen, Named Defendant Rodriguez, nor their partners opened the gate, nor did anyone from the LAPD make that request.<br><br>Moving Party's Evidence:<br>Exhibit 9: Named Defendant Rodriguez' Body-Worn Video (hereinafter Rodriguez BWV at 20:34:15;<br>Rodriguez Dec. at ¶ 4;<br>Mayen Dec at ¶ 11;<br>Deposition of Named Defendant Mayen (hereinafter "Mayen Depo") at page 8, lines 16-22; page 80:25 – 81:5;<br>Deposition of Named Defendant Rodriguez (hereinafter "Rodriguez Depo") at page 31, lines 14-18;<br>Morse Dec. at ¶ 3. | **Disputed** to the extent that "nor their partners opened the gate, nor did anyone from the LAPD made that request." This is not and cannot be established by the Rodriguez BWC nor the Defendants' declarations. Officers Morse and Hernandez do not submit a declaration to support whether they were involved, nor do any of the other approximately 10 officers who responded to the scene. Otherwise, undisputed for the purposes of this opposition.<br>Opposing Party's Evidence:<br>**Exh. E, Correspondence**, Sincich Decl ¶6, at 14 – according to the City, witness Ro opened the gate with a key fob after Officers Morse and Mayen arrived on scene and after seeing De Anda enter the parking lot. Nevertheless, Officer Morse broadcasted that the perimeter was set and De Anda was contained in the parking lot. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
|  | **Undisputed** that Defendant Officers had a lack of situational awareness to know when and how the gate opened, failed to control the scene, and failed to communicate that the gate was open with each other.<br><br>**Objections:**<br>Exhibit 8, an uncertified translation and transcription has no foundation, nor a declaration that it sets forth the entirety of the communications between Officer Mayen and De Anda.<br>Compound.<br>Vague and ambiguous. |
| 15.    Named Defendant Rodriguez positions herself by the southern gate and holds her position while Named Defendant Mayen continues attempts to speak with De Anda.<br><br>Moving Party's Evidence:<br>Exhibit 9: Rodriguez BWV at 20:34:24 thru 20:35:48.<br>Rodriguez Depo: page 14:22-25. | **Disputed** to the extent that these facts are not supported by evidence. Officer Rodriguez's BWC does not establish whether Officer Mayen was attempting to communicate with De Anda. Further, her deposition merely states, *at the time of arrival* – not when positioned near the gate – both Officers Morse and Mayen were trying to communicate with De Anda.<br>Opposing Party's Evidence:<br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 14:22-25.<br><br>**Undisputed** that this portion of the video shows Officer Rodriguez entering the parking lot.<br><br>**Objections:**<br>Compound.<br>Vague and ambiguous as to where Officer Rodriguez was positioned. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| | |
| **16.** Despite Named Defendant Mayen's continued attempts to de-escalate by trying to relate to De Anda as a human being and trying to be considerate, De Anda terminated any ability to continue communications with Officers by advancing towards the southern gate where Named Defendant Rodriguez and her patrol vehicle were located. De Anda suddenly stopped and appeared to hop to his left while armed with the knife. | **Disputed** that Officer Mayen was attempting to de-escalate the situation; disputed that Officer Mayen was trying to relate to De Anda; disputed that Officer Mayen was trying to be considerate; disputed that De Anda terminated the ability to continue communications; and disputed that De Anda advanced towards Officer Rodriguez and her partner. These "facts" are not established by Defendants' evidence and/or contradicted by the BWC videos. |
| Moving Party's Evidence:<br>Exhibit 5: Mayen BWV at 20:35:47 thru 20:35:55;<br>Mayen Dec. at ¶ 12.;<br>Exhibit 8: Mayen Translation. | Opposing Party's Evidence:<br>**Exh. J, Mayen BWC**, Sincich Decl ¶11, at 20:29-00 – 20:35:56.<br>**Exh. K, Screenshots of Mayen BWC**, Sincich Decl ¶12, at 1-11.<br>**Exh. L, Rodriquez BWC**, Sincich Decl ¶13, at 20:32-00 – 20:35:56.<br>**Exh. M, Screenshots of Rodriguez BWC**, Sincich Decl ¶12, at 1-22.<br>**PAMF Nos**. 72-74.<br>**Clark Decl**. ¶8 – Defendant Officers should have known that Mr. De Anda was potentially suffering from a mental health crisis.<br><br>**Undisputed** that De Anda moved towards the southern gate and that De Anda stopped.<br><br>**Objections**:<br>Argumentative.<br>Compound. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| | Vague and ambiguous as to where Officer Rodriguez and her partner were positioned. |
| **17.** Named Defendant Mayen had training on de-escalating, such as PATROL (Acronym) and mental evaluation training & Academy training, but the situation is dictated on the willingness of De Anda to cooperate with officers.<br><br>Moving Party's Evidence:<br>Mayen Dec. at ¶ 6. | **Disputed** regarding Officer Mayen's alleged training. Officer Mayen's declaration includes information he omitted from any response to investigators' questions and at deposition. His declaration does not establish that he received any training prior to the incident.<br>Opposing Party's Evidence:<br>**Exh. A, Mayen Depo**, Sincich Decl ¶2, at 66:8-70:9, 78:5-79:5, 92:5-95:4 – when asked several questions to test Officer Mayen's training regarding de-escalation and mental evaluation, Officer Mayen either refused to answer the questions, or had such insufficient training he could not answer the questions. Officer Mayen is admittedly no expert on deciding whether a person is mentally ill; and cannot identify basic symptoms of mental illness.<br><br>**Disputed** that the man suffering a mental health crisis dictated the situation over several allegedly trained officers; or that he was capable of cooperation as if not suffering from a mental health crisis.<br>Opposing Party's Evidence:<br>**Exh. G, POST LD 20**, Sincich Decl ¶8, at 2-7: officers are trained to Plas so that they can identify roles and responsibilities, create contingencies, have options and resources available, |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
|  | and utilize time. 2-9: officers are trained that tactical repositioning is used as descalation and has an effect on time. **Disputed** insofar as Defendant Officers have inadequate training. <u>Opposing Party's Evidence:</u> See **PAMF** Nos. 169-182. **Clark Decl** ¶15-16. **Objections**: Argumentative. Compound. Vague and ambiguous, stating that Officer Mayen had some unknown training establishes nothing. |
| **18.** Named Defendant Rodriguez observed De Anda's advancement and when he stopped, Named Defendant Rodriguez did not fire her weapon because De Anda did not pose an imminent threat of death or serious bodily injury at that time. It wasn't until De Anda, while still armed, began to advance again from a distance of approximately 20 – 25 feet which caused her to fire her weapon to prevent De Anda from killing her or hurting others, as he presented an imminent threat of serious bodily injury and/or death at that time to both Officers, herself and citizens behind her. It was something Named Defendant Rodriguez recalls because De Anda's eyes seemed evil and aggressive, especially while running at her with a knife. This engagement from De Anda's initial | **Disputed** that De Anda advanced from a distance of 20-25 feet. De Anda was approximately 28-30 feet from officers when the use of deadly force began. <u>Opposing Party's Evidence:</u> **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 42:13-24 – Officer Rodriguez claimed at deposition that De Anda was approximately 25 feet from her at the time of her first shot, 21-23 feet away at the time of her second shot, and 19 feet away at that time of her third shot. **Exh. E, Correspondence**, Sincich Decl ¶6, at 25 – even the City determined that Officer Rodruguez was 28 feet away from De Anda at the time of her first shot. **Exh. I, Scene Photos**, Sincich Decl ¶10, at 1-5. **Exh. P, BOPC OIS Report**, Sincich Decl ¶17, at 8 – Officer Rodriguez fired |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| advancement to the time she fired her first shot was eight (8) seconds.<br><br>Moving Party's Evidence:<br>Exhibit 9: Rodriguez BWV at 20:35:47 thru 20:35:55; see also,<br>Exhibit 9-A: Demonstrative "Slow Motion & Zoomed" Clip of Exhibit 9 (hereinafter "Exhibit 9-A");<br>Rodriguez Depo at page 10:12 – 22; page 11:3 - page 12:1; page 52: 19-24; page 60:15 – page 61:1; page 36:22 - page 37:5; page 12:3 - 11;<br>Mayen Depo at 128:19 – 130:1;<br>Rodriguez Dec. at ¶ 6. | one round at subject from approximately 28 feet away.  At 21 – Officer Rodriguez fired three rounds from 28 feet to 23 feet from De Anda.<br>**Exh. Q, Distance Demonstrative**, Sincich Decl ¶18 – a reasonable jury could determine that Officer Rodruguez was 28-30 feet away from De Anda at the time of her first shot.<br><br>**Disputed** regarding the argument that De Anda advanced toward Officer Rodriguez.<br>Opposing Party's Evidence:<br>**Exh. A, Mayen Depo**, Sincich Decl ¶2, at 96:13-14 – Officer Mayen saw De Anda run towards the exit where the gate was open.<br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 74:12-14 – when Officer Rodriguez states that De Anda was advancing towards her, she means he was advancing towards the opening in the gate.  At 74:20-24 – before Officer Rodriguez started to move south, De Anda was moving towards the opening of the gate.  At 74:25-75:3 - After Officer Rodriguez saw De Anda running towards the gate, Officer Rodriguez started moving south.<br>**Exh. E, Correspondence**, Sincich Decl ¶6, at 28 – De Anda was not moving towards Officers Rodriguez or Mayen.<br><br>**Disputed** regarding the argument that De Anda caused Officer Rodriguez to fire.<br>Opposing Party's Evidence:<br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 9:2-7 – Officer Rodriguez |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| | intentionally pulled the trigger for each shot, intending to strike De Anda.<br><br>**Disputed** regarding the argument that De Anda was going to kill Officer Rodriguez or hurt others.<br>Opposing Party's Evidence:<br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 40:14-20 – Officer Rodriguez did not know what was going through De Anda's mind, therefore did not know what he was going to do.<br>Based on De Anda prior movements, distance, speed of movement including stopping, direction of travel, position of the knife, and lack of verbal threats, a reasonable jury could find that De Anda's "apparent intent" *was not* to kill an officer or harm a person, but to get away. See **PAMF Nos**. 89-162.<br><br>**Disputed** regarding the argument that De Anda was an imminent threat of serious bodily injury and/or death at the time to any person including Officers and citizens.<br>Opposing Party's Evidence:<br>See **PAMF Nos**. 89-162 – De Anda was not an immediate threat of death or serious bodily injury at the time of the shots.<br>**Clark Decl** ¶12-13.<br><br>**Disputed** that Officer Rodriguez recalls De Anda's eyes appearing evil or aggressive.<br>Opposing Party's Evidence:<br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 61:2-4 - Officer Rodriguez never |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| | told detectives that De Anda had an evil look in his eyes. At 61:9-22 - Officer Rodriguez never told detectives that Decedent made eye contact with her. At 62:13-15 – Officer Rodriguez gave her statement to investigators 4-5 hours after the incident. At 60:15-61:1 – this memory was generated for the first time at deposition. |
| | **Exh. D, Rodriguez Statement**, Sincich Decl ¶5, at 325:4-6 - Officer Rodriguez could not tell the De Anda's demeanor. At 335:14-16 – Officer Rodriguez told investigators that she did not remember seeing any sort of facial expressions on De Anda. |
| | **Disputed** that De Anda was running at the time of the shots. |
| | Opposing Party's Evidence: |
| | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 58:1-3 – Officer Rodriguez confirmed that De Anda was jogging. At 12:12-23 – Officer Rodriguez admitted that after running, De Anda stopped, and within a fragment of a second, she fired her first round. |
| | **Exh. D, Rodriguez Statement**, Sincich Decl ¶5, at 335:9-10 – Officer Rodriguez told investigators that De Anda was jogging. |
| | **Exh. I, Scene Photos**, Sincich Decl ¶10, at 1-5. |
| | **Exh. L, Rodriquez BWC**, Sincich Decl ¶13, at 20:35:54-20:35:57 – De Anda was not running. |
| | **Exh. M, Screenshots of Rodriguez BWC**, Sincich Decl ¶12, at 1-22. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| | **Disputed** that it was 8 seconds from De Anda first advancing to Officer Rodriguez's first shot. |
| | Opposing Party's Evidence: |
| | **Exh. J, Mayen BWC**, Sincich Decl ¶11, at 20:35-47 – approximately time that De Anda starts moving toward gate to 20:35:56 – approximate time of first shot.  Approximately 9 seconds. |
| | **Exh. K, Screenshots of Mayen BWC**, Sincich Decl ¶12, at 1-11. |
| | **Exh. L, Rodriquez BWC**, Sincich Decl ¶13, at 20:35-47 – approximately time that De Anda starts moving toward gate to 20:35:56 – approximate time of first shot.  Approximately 9 seconds. |
| | **Exh. M, Screenshots of Rodriguez BWC**, Sincich Decl ¶12, at 1-22. |
| | **Exh. E, Correspondence**, Sincich Decl ¶6, at 27 – further, there was additionally over a second from the first shot to the last shot. |
| | |
| | **Undisputed** that Officer Rodriguez had at least eight (8) seconds to assess the situation, de-escalate by tactical repositioning, create space, distance, and time, get behind cover, give a warning, and attempt less-lethal force. |
| | |
| | **Objections**: |
| | Argumentative. |
| | Compound. |
| | Assumes facts. |
| | Calls for speculation, lacks foundation. |
| | Calls for legal conclusion. |
| | Calls for expert opinion. |
| | Vague and ambiguous. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| **19.**     Named Defendant Rodriguez had less than one (1) second to react to De Anda's advancement towards her in deciding when to fire her weapon. Named Defendant Rodriguez fired a total of three (3) shots, assessing as she fired each shot while perceiving that De Anda still posed an imminent threat (while armed) of serious bodily injury and/or death and she stopped firing after her third (3rd) shot, where she acknowledged that the threat De Anda posed had stopped.<br><br>Moving Party's Evidence:<br>Exhibit 9: Rodriguez BWV at 20:35:55 – 20:35:58;<br>Rodriguez Dec. at ¶ 7;<br>Rodriguez Depo at page 13:13 – page 14:3; page 39:8-11; see also, Exhibit 9-A. | **Disputed** that Officer Rodriguez had less than one (1) second to react to De Anda.<br>Opposing Party's Evidence:<br>**Exh. A, Mayen Depo**, Sincich Decl ¶2, at 8:5-9, 14:2-15, 91:3-10, 98:2-6 - about 6-7 minutes after Officer Mayen's first contact to De Anda starting to run from the east wall, and about 7-8 minutes from arrival to his use of deadly force.<br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 14:16-21 – Officer Rodriguez was on scene for 4-5 minutes prior to using deadly force.<br>**Exh. J, Mayen BWC**, Sincich Decl ¶11, at 20:35-47 – approximately time that De Anda starts moving toward gate to 20:35:56 – approximate time of first shot.  Approximately 9 seconds.<br>**Exh. K, Screenshots of Mayen BWC**, Sincich Decl ¶12, at 1-11.<br>**Exh. L, Rodriquez BWC**, Sincich Decl ¶13, at 20:35-47 – approximately time that De Anda starts moving toward to 20:35:56 – approximate time of first shot.  Approximately 9 seconds.<br>**Exh. M, Screenshots of Rodriguez BWC**, Sincich Decl ¶12, at 1-22.<br>**Exh. E, Correspondence**, Sincich Decl ¶6, at 27 – further, there was additionally over a second from the first shot to the last shot.<br><br>**Disputed** that De Anda was advancing towards Officer Rodriguez. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| | Opposing Party's Evidence: |
| | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 96:13-14 – Officer Mayen saw De Anda run towards the exit where the gate was open. |
| | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 74:12-14 – when Officer Rodriguez states that De Anda was advancing towards her, she means he was advancing towards the opening in the gate.  At 74:20-24 – before Officer Rodriguez started to move south, De Anda was moving towards the opening of the gate.  At 74:25-75:3 - After Officer Rodriguez saw De Anda running towards the gate, Officer Rodriguez started moving south. |
| | **Exh. E, Correspondence**, Sincich Decl ¶6, at 28 – De Anda was not moving towards Officer Rodriguez. |
| | **Exh. I, Scene Photos**, Sincich Decl ¶10, at 1-5. |
| | **Disputed** that De Anda was an imminent threat of serious bodily injury and/or death. |
| | Opposing Party's Evidence: |
| | Based on De Anda prior movements, distance, speed of movement including stopping, direction of travel, position of the knife, and lack of verbal threats, a reasonable jury could find that De Anda's "apparent intent" was not to kill an officer or harm a person, but to get away. See **PAMF Nos**. 89-162 – De Anda was not an immediate threat of death or serious bodily injury at the time of the shots. |
| | **Clark Decl** ¶12-13. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| | **Undisputed** that Officer Rodriguez fired three (3) shots at De Anda.<br><br>**Objections**:<br>Argumentative.<br>Compound.<br>Vague and ambiguous. |
| **20.** Clip of named Defendant Rodriguez's BWV captures De Anda in possession of the knife prior to and throughout the shooting by both named Defendants Rodriguez and Mayen, including after the shooting wherein the weapon is still in the possession of De Anda as Officer Morse approaches De Anda and removes it from him.<br><br>Moving Party's Evidence:<br>Exhibit 10: Clip of Rodriguez BWV – Shooting to Recovery of Knife (hereinafter "Rodriguez BWV – Recovery Knife") at 20:35:46 thru 20:36:49; See also,<br>Exhibit 10-A: Demonstrative "Slow Motion" Clip of Exhibit 10 (hereinafter "Exhibit 10-A);<br>Rodriguez Dec. at ¶s 8-9. | **Disputed** that De Anda was still in possession of a weapon or that the knife was removed "from him."<br>Opposing Party's Evidence:<br>**Exh. J, Mayen BWC**, Sincich Decl ¶11, at 20:35:56 – 20:36:45.<br>**Exh. L, Rodriquez BWC**, Sincich Decl ¶13, at 20:35-47 – 20:36:45.<br><br>**Undisputed** that Officer Rodriguez fired three (3) shots at De Anda.<br><br>**Objections**:<br>Argumentative.<br>Compound.<br>Vague and ambiguous. |
| **21.** Named Defendant Rodriguez provided the following statements to De Anda before she fired her weapon: "Hey, get, Put the, Put the Knife Down, Put the Knife Down, Put the" (1st Shot Fired).<br><br>Moving Party's Evidence: | **Undisputed** that Officer Rodriguez did not provide a warning prior to her use of deadly force.<br>**Undisputed** that Officer Rodriguez had time and opportunity to provide a warning prior to her use of deadly force given that she was able to make these statements before she fired her weapon. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| Exhibit 9: Rodriguez BWV at 20:35:48 thru 20:35:55; Rodriguez Dec. at ¶9. | **Undisputed** that Officer Rodriguez's statements were simultaneous with Officer Mayen's statements to De Anda prior to the shots fire. **Undisputed**.<br><br>**Objections**:<br>Argumentative.<br>Vague and ambiguous. |
| **22.**    With respect to Named Defendant Mayen, he observed De Anda terminate communicating with him when De Anda can be seen advancing to the southern gate. Named Defendant Mayen tracked De Anda southbound along the east sidewalk, while providing orders to stop and to "put the knife down." After about 6 seconds, De Anda eventually stopped for approximately 3 seconds and Named Defendant Mayen did not fire at that time. Named Defendant Mayen did not fire his weapon because De Anda did not pose an imminent threat of death or serious bodily injury when he first stopped. It wasn't until De Anda, while still armed, began to advance again from a distance of approximately 20 – 25 feet which caused him to fire his weapon two (2) times to stop the imminent threat of serious bodily injury and/or death that De Anda posed.<br><br>Moving Party's Evidence:<br>Exhibit 5: Mayen BWV at 20:35:47 thru 20:35:57; See also,<br>Exhibit 5-A: Demonstrative "Slow Motion" Clip of Exhibit 5 (hereinafter | **Disputed** that Officer Mayen "observed" De Anda terminate communicating with him.<br>Opposing Party's Evidence:<br>**Exh. J, Mayen BWC**, Sincich Decl ¶11, at 20:29:00 – 20:35:56.<br><br>**Disputed** that De Anda advanced from a distance of 20-25 feet.  Even under Officer Mayen's updated testimony, De Anda did not advance *from* 20 feet. De Anda was approximately 28-30 feet from officers when the use of deadly force began.<br>Opposing Party's Evidence:<br>**Exh. A, Mayen Depo**, Sincich Decl ¶2, at 22:20-23:3 – De Anda was 23-24 feet away at the time of the first shot, and 20-21 feet away at the time of the second shot.<br>**Exh. E, Correspondence**, Sincich Decl ¶6, at 25 – even the City determined that Officer Mayen was 25 feet away from De Anda at the time of her first shot.<br>**Exh. I, Scene Photos**, Sincich Decl ¶10, at 1-5.<br>**Exh. P, BOPC OIS Report**, Sincich Decl ¶17, at 8, 22 – Officer Mayen |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| "Exhibit 5-A") at 20:35:47 thru 20:35:57;<br>Mayen Depo: 125:20 – 126:22; 127:8 – 128:18; 11:19-23; 15:3-21; 48:3-21; 83:18 – 84:4; 24:2 – 25:18;<br>Mayen Dec at ¶ 14. | fired his first round at subject from approximately 25 feet away and fired his second round from a decreasing distance of 23 feet.<br>**Exh. Q, Distance Demonstrative**, Sincich Decl ¶18 – a reasonable jury could determine that Officer Mayen was 28-30 feet away from De Anda at the time of his first shot.<br><br>**Disputed** regarding the argument that De Anda caused Officer Mayen to fire.<br>Opposing Party's Evidence:<br>**Exh. A, Mayen Depo**, Sincich Decl ¶2, at 25:1-4, 26:7-9 – Officer Mayen intentionally pressed the trigger for each shot.  25:5-7, 26:7-9 – Officer Mayen intended for each shot to strike De Anda.  24:8-9, 25:19-25 – Officer Mayen aimed for each shot.  26:5-6 – Officer Mayen assessed between shots.<br><br>**Disputed** regarding the argument that De Anda was an imminent threat of serious bodily injury and/or death at the time to any person including Officers and citizens.<br>Opposing Party's Evidence:<br>Based on De Anda prior movements, distance, speed of movement including stopping, direction of travel, position of the knife, and lack of verbal threats, a reasonable jury could find that De Anda's "apparent intent" was not to kill an officer or harm a person, but to get away. See **PAMF Nos**. 89-162 – De Anda was not an immediate threat of death or serious bodily injury at the time of the shots. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| | Clark Decl ¶12-13.<br><br>**Undisputed** that De Anda moved toward the southern gate, not an officer.<br><br>**Objections**:<br>Not supported by evidence.<br>Argumentative.<br>Compound.<br>Vague and ambiguous.<br>Assumes facts.<br>Calls for speculation, lacks foundation.<br>Calls for expert opinion. |
| **23.** Named Defendant Mayen had less than one (1) second to react to De Anda's advancement towards named Defendant Rodriguez and himself in deciding whether to fire or not. Named Defendant Mayen fired a total of two (2) shots, assessing as he fired each shot while perceiving that De Anda still posed an imminent threat (while armed) of serious bodily injury and/or death and he stopped firing after his second (2nd) shot, where he acknowledged that the threat De Anda posed had stopped.<br><br>Moving Party's Evidence:<br>Exhibit 5: Mayen BWV at 20:35:55 thru 20:35:58;<br>Mayen Depo: 24:2 – 25:18; 26:5-18;<br>Mayen Dec at ¶ 14;<br>Exhibit 9: Rodriguez BWV at 20:35:55 thru 20:35:58;<br>Rodriguez Depo at page 39:8-11; see also,<br>Exhibit 9-A. | **Disputed** that Officer Mayen had less than one (1) second to react to De Anda.<br>Opposing Party's Evidence:<br>**Exh. A, Mayen Depo**, Sincich Decl ¶2, at 8:5-9, 14:2-15, 91:3-10, 98:2-6 - about 6-7 minutes after Officer Mayen's first contact to De Anda starting to run from the east wall, and about 7-8 minutes from arrival to his use of deadly force.<br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 14:16-21 – Officer Rodriguez was on scene for 4-5 minutes prior to using deadly force.<br>**Exh. J, Mayen BWC**, Sincich Decl ¶11, at 20:35-47 – approximately time that De Anda starts moving toward gate to 20:35:56 – approximate time of first shot. Approximately 9 seconds.<br>**Exh. K, Screenshots of Mayen BWC**, Sincich Decl ¶12, at 1-11.<br>**Exh. L, Rodriquez BWC**, Sincich Decl ¶13, at 20:35-47 – approximately time that De Anda starts moving toward to |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| | 20:35:56 – approximate time of first shot.  Approximately 9 seconds. **Exh. E, Correspondence**, Sincich Decl ¶6, at 27 – further, there was additionally over a second from the first shot to the last shot. |
| | **Disputed** that De Anda was advancing towards Officers Rodriguez and Mayen. <u>Opposing Party's Evidence:</u> **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 96:13-14 – Officer Mayen saw De Anda run towards the exit where the gate was open. **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 74:12-14 – when Officer Rodriguez states that De Anda was advancing towards her, she means he was advancing towards the opening in the gate.  74:20-24 – before Officer Rodriguez started to move south, De Anda was moving towards the opening of the gate.  74:25-75:3 - After Officer Rodriguez saw De Anda running towards the gate, Officer Rodriguez started moving south. **Exh. E, Correspondence**, Sincich Decl ¶6, at 28 – De Anda was not moving towards Officer Rodriguez. |
| | **Disputed** that De Anda was an imminent threat of serious bodily injury and/or death. <u>Opposing Party's Evidence:</u> Based on De Anda prior movements, distance, speed of movement including stopping, direction of travel, position of the knife, and lack of verbal threats, a |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| | reasonable jury could find that De Anda's "apparent intent" was not to kill an officer or harm a person, but to get away. See **PAMF Nos**. 89-162 – De Anda was not an immediate threat of death or serious bodily injury at the time of the shots. **Clark Decl** ¶12-13. <br><br> **Undisputed** that Officer Mayen fired two (2) shots at De Anda. <br><br> **Objections**: <br> Argumentative. <br> Compound. <br> Vague and ambiguous. |
| **24.**   Based upon the actions of De Anda, coupled with the totality of the circumstances, named Defendant Mayen believed De Anda was possibly under the influence of drugs and wanted to die. After the Los Angeles County Coroner's Office conducted a Toxicology Screen of De Anda, it revealed De Anda was positive for Methamphetamine. <br><br> Moving Party's Evidence: <br> Mayen Depo: 65:3-17; 69:3-17; <br> Exhibit 8: Mayen Translation at page 4, 20:33:27 – 20:34:14; <br> Exhibit 5 Mayen BWV at 20:33:27 – 20:34:14; <br> Exhibit 11: Los Angeles County Coroner's Office Toxicology Report De Anza (hereinafter "Exhibit 11: Tox Report"). | **Disputed** as inadmissible information unknown, irrelevant to the analysis. <br> Opposing Party's Evidence: <br> **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 40:1-7 – besides being armed with a knife and closing the distance, the only other fact that was relevant to Officer Mayen to his decision to use deadly force was that he had information that De Anda may want to kill himself. <br> **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 65:3-13 – Officer Mayen "had no knowledge if he had taken any narcotics at the time." <br> **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 67:17-18 – not an expert in narcotics. <br> **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 73:17-22 – Officer Mayen "did not have [] any type of information that said that he was under the influence." <br> **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 70:10-16 – Officer Mayen did not |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| | receive any information from the initial call related to drugs. **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 70:22-71:1 – prior to his use of deadly force, Officer Mayen learned no additional information about De Anda.<br><br>**Undisputed** that De Anda was suffering from a mental health crisis.<br>**Undisputed** that Officer Rodriguez had no information about the Toxicology Report prior to his use of deadly force.<br><br>**Objections**:<br><u>FRE 402, 403</u>: **Information Unknown, Inadmissible, Irrelevant, Unduly Prejudicial, Confuses the Issues, and is Misleading.** Fact is not supported by admissible evidence. Fed. Rules of Civ. Proc. 56(c)(2). *Tennessee v. Garner*, 471 U.S. 1, 26 (1985); *Glenn v. Washington Cnty.*, 673 F.3d at 873 n.8 (9th Cir. 2011).<br><u>Local Rule 56-1</u>: **Not a material fact**. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). *Glenn v. Washington County*, 673 F.3d 864, 873 n.8 (9th Cir. 2011).<br>Argumentative.<br>Compound.<br>Assumes facts.<br>Vague and ambiguous. |
| **25.**     The BWVs of named Defendant Mayen (Exhibit 5 & 5-A), named Defendant Rodriguez (Exhibit 9 & 9-A & Exhibit 10 & 10-a) and Officer Morse's (Exhibit 12) are hereby incorporated herein by reference, as if | **Disputed** as this is not a "fact" this is argument.<br><br>**Objections**:<br>Argumentative.<br>Compound. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| set forth fully herein based upon the fact that they are essentially the "best evidence' in this case. These BWVs captured, in real time, the events which led up to the tragic shooting of De Anda These BWVs provide the "best evidence" of how De Anda posed an imminent threat of serious bodily injury and/or death which caused named Defendants Mayen and Rodriguez to fire a total of five (5) shots to stop the threat De Anda posed to the officers and citizens in the area. Even in the event, Plaintiff claims there are "disputed" facts above which are based almost entirely on the BWVs, these BWVs, alone, present the uncontroverted (undisputed) facts necessary for this Court to grant the requested relief.<br><br>Moving Party's Evidence:<br>Exhibit 5 - Mayen BWV; Exhibit 5-A - Mayen BWV (Slow Motion 0.4x);<br>Exhibit 9 - Rodriguez BWV; Exhibit 9-A - Rodriguez BWV Clip (Zoom & Slow Motion 0.4x speed);<br>Exhibit 10 - Rodriguez BWV – Shooting to Recovery of Knife;<br>Exhibit 10-A - Rodriguez BWV Clip – Shooting to Recovery of Knife (Slow Motion 0.4x speed);<br>Exhibit 12 - Morse BWV. | Assumes facts.<br>Vague and ambiguous.<br>Calls for speculation.<br>Lacks foundation.<br>Calls for legal conclusion.<br>Calls for expert opinion.<br><br>**Disputed** that De Anda was an imminent threat of serious bodily injury and/or death. De Anda was not an immediate threat of death or serious bodily injury, and did not cause the Defendant Officers to shoot and kill him.<br>Opposing Party's Evidence:<br>Based on De Anda prior movements, distance, speed of movement including stopping, direction of travel, position of the knife, and lack of verbal threats, a reasonable jury could find that De Anda's "apparent intent" was not to kill an officer or harm a person, but to get away. See **PAMF Nos**. 89-162 – De Anda was not an immediate threat of death or serious bodily injury at the time of the shots.<br>**Clark Decl** ¶12-13.<br>**Exh. A, Mayen Depo**, Sincich Decl ¶2, at 25:1-4, 26:7-9 – Officer Mayen intentionally pressed the trigger for each shot. 25:5-7, 26:7-9 – Officer Mayen intended for each shot to strike De Anda. 24:8-9, 25:19-25 – Officer Mayen aimed for each shot. 26:5-6 – Officer Mayen assessed between shots.<br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 9:2-7 – Officer Rodriguez intentionally pulled the trigger for each shot, intending to strike De Anda. |

Issue 2: Officer Rodriguez and Officer Mayen Are Entitled to Qualified Immunity.

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| **26.** Undisputed Material Fact Nos. 1 through 25 are incorporated and reasserted herein by reference, as if set forth fully and completely herein.<br><br>Moving Party's Evidence:<br>See Evidence in support of Fact Nos. 1 through 25. | **Disputed.** This is not a fact. Plaintiffs incorporate by reference all objections and responses above.<br><br>**Clark Decl** ¶14.<br>**PAMF Nos.** 62-168, 173-177. |

Issue 3: Officer Rodriguez and Officer Mayen's Actions did not Rise to a Level Which Shocks the Conscience

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| **27.** Undisputed Material Fact Nos. 1 through 25 are incorporated and reasserted herein by reference, as if set forth fully and completely herein.<br><br>Moving Party's Evidence:<br>See Evidence in support of Fact Nos. 1 through 25. | **Disputed.** This is not a fact. Plaintiffs incorporate by reference all objections and responses above.<br><br>**Clark Decl** ¶12-14.<br>**PAMF Nos.** 62-168. |

Issue 4: Plaintiffs have failed to Prove any *Monell* Violations

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| **28.** Undisputed Material Fact Nos. 1 through 25 are incorporated and reasserted herein by reference, as if set forth fully and completely herein.<br><br>Moving Party's Evidence:<br>See Evidence in support of Fact Nos. 1 through 25. | **Disputed.** This is not a fact. Plaintiffs incorporate by reference all objections and responses above.<br><br>**Clark Decl** ¶7-16.<br>**PAMF Nos.** 62-187. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
|  |  |

Issue 5: Plaintiffs Have No Evidence of Inadequate Training

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| **29.**   Undisputed Material Fact Nos. 1 through 25 are incorporated and reasserted herein by reference, as if set forth fully and completely herein.<br><br>Moving Party's Evidence:<br>See Evidence in support of Fact Nos. 1 through 25. | **Disputed.** This is not a fact. Plaintiffs incorporate by reference all objections and responses above.<br><br>**Clark Decl** ¶7-16.<br>**PAMF Nos.** 62-187. |

Issue 6: No Evidence Exists to Support a Failure to Provide Medical Care

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| **30.**   Undisputed Material Fact Nos. 5 through 6 are incorporated and reasserted herein by reference, as if set forth fully and completely herein.<br><br>Moving Party's Evidence:<br>See Evidence in support of Fact Nos. 5 through 6. | **Disputed.** This is not a fact. Plaintiffs incorporate by reference all objections and responses to DUMF 5-6 above. |
| **31.**   LAPD Officer Matthew Morse (hereinafter "Officer Morse") broadcasts shots fired and requests a rescue ambulance (hereinafter "RA") to scene. Requests rescue team for the suspect. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| <u>Moving Party's Evidence:</u><br>Exhibit 12: Named Defendant Morse's Body-Worn Video (hereinafter "Morse BWV") at 20:36:10;<br>Morse Dec., at ¶ 2. | |
| **32.** Officer Morse requests officers to glove up.<br><br><u>Moving Party's Evidence:</u><br>Exhibit 12: Morse BWV at 20:36:18. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **33.** Officer Morse advises officers that the suspect still has the knife 'on there.'<br><br><u>Moving Party's Evidence:</u><br>Exhibit 12: Morse BWV at 20:36:29. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **34.** Officer Morse instructs officers that he will get the knife out the way.<br><br><u>Moving Party's Evidence:</u><br>Exhibit 12: Morse BWV at 20:36:32. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **35.** Officer Morse states "we got to help this guy."<br><br><u>Moving Party's Evidence:</u><br>Exhibit 12: Morse BWV at 20:36:39. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **36.** Officer Morse again states he will get the knife and "you guys start working on him."<br><br><u>Moving Party's Evidence:</u><br>Exhibit 12: Morse BWV at 20:36:40. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **37.** Officer Morse removes knife from suspect. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| <u>Moving Party's Evidence</u>: Exhibit 12: Morse BWV at 20:36:41. | claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **38.** Officers first place hands on suspect.<br><br><u>Moving Party's Evidence</u>: Exhibit 12: Morse BWV at 20:36:47. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **39.** Officers turn suspect over.<br><br><u>Moving Party's Evidence</u>: Exhibit 12: Morse BWV at 20:36:52. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **40.** Officer Morse asks if anyone knows where suspect was hit. Female officer indicates "head, head."<br><br><u>Moving Party's Evidence</u>: Exhibit 12: Morse BWV at 20:36:54. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **41.** Officer seen placing handcuff on suspect.<br><br><u>Moving Party's Evidence</u>: Exhibit 12: Morse BWV at 20:37:01. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **42.** Officer Morse asks if any officer has 'first aid or something that can put pressure on his head.'<br><br><u>Moving Party's Evidence</u>: Exhibit 12: Morse BWV at 20:37:13. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **43.** Officer Morse tells female officer she can cut off his shirt and put pressure on the wound. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| Moving Party's Evidence: Exhibit 12: Morse BWV at 20:37:26. | motion. Therefore, disputed for the purposes of this opposition. |
| **44.** Female officers seen cutting DeAnda's shirt off.<br><br>Moving Party's Evidence: Exhibit 12: Morse BWV at 20:37:35. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **45.** Officer Morse broadcasts suspect is in custody. RA is cleared to come in.<br><br>Moving Party's Evidence: Exhibit 12: Morse BWV at 20:37:36. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **46.** Female officer begins to apply pressure to suspect's head with a cloth.<br><br>Moving Party's Evidence: Exhibit 12: Morse BWV at 20:37:48. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **47.** Female officer suggests putting suspect on his side and then they proceed to do so.<br><br>Moving Party's Evidence: Exhibit 12: Morse BWV at 20:37:51. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **48.** DeAnda is placed on his side with pressure applied to head.<br><br>Moving Party's Evidence: Exhibit 12: Morse BWV at 20:38:00. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **49.** DeAnda is placed on his back.<br><br>Moving Party's Evidence: Exhibit 12: Morse BWV at 20:38:56. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| **50.** Officer Morse asks if police vehicles can be moved to make room for the RA.<br><br>Moving Party's Evidence:<br>Exhibit 12: Morse BWV at 20:39:00. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **51.** Officer Morse gives instructions to have vehicles moved to give access to RA.<br><br>Moving Party's Evidence:<br>Exhibit 12: Morse BWV at 20:39:05. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **52.** Female officer seen looking for pulse on suspect. Officer Morse advises that if there is a pulse, no need for CPR - "heartbeat, no CPR."<br><br>Moving Party's Evidence:<br>Exhibit 12: Morse BWV at 20:39:21. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **53.** Officer Morse instructs to keep pressure on the wound.<br><br>Moving Party's Evidence:<br>Exhibit 12: Morse BWV at 20:39:28. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **54.** Handcuff is removed. Female officer indicates DeAnda is moving.<br><br>Moving Party's Evidence:<br>Exhibit 12: Morse BWV at 20:40:00. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **55.** Officer Morse says 'let's keep playing it like we hope he is going to survive, we're gonna try to keep him alive.'<br><br>Moving Party's Evidence: | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
| Exhibit 12: Morse BWV at 20:40:06. | |
| **56.** Female officer advises DeAnda still has a pulse.<br><br>Moving Party's Evidence:<br>Exhibit 12: Morse BWV at 20:40:13. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **57.** Officer Morse says they are three blocks from the RA.<br><br>Moving Party's Evidence:<br>Exhibit 12: Morse BWV at 20:40:26. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **58.** All the while female officer seen with finger on pulse of suspect.<br><br>Moving Party's Evidence:<br>Exhibit 12: Morse BWV at 20:39:21-20:35:58. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **59.** Officer Morse says 'come on guys, come on guys' – speaking out loud looking for the paramedics.<br><br>Moving Party's Evidence:<br>Exhibit 12: Morse BWV at 20:41:58. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **60.** Officer Morse indicates it is clear for the RA.<br><br>Moving Party's Evidence:<br>Exhibit 12: Morse BWV at 20:42:24. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |
| **61.** RA Paramedics arrive and are seen walking up to the scene of incident.<br><br>Moving Party's Evidence:<br>Exhibit 12: Morse BWV at 20:42:25. | Irrelevant and Immaterial given that Plaintiffs' prior denial of medical care claim is not subject to the present motion. Therefore, disputed for the purposes of this opposition. |

| Defendant Morales' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response to Cited Fact and Supporting Evidence |
|---|---|
|  |  |

/ / /

/ / /

**PLAINTIFFS' RESPONSES TO DEFENDANTS' CONCLUSIONS OF LAW**

Plaintiffs' Response to Defendants' Conclusion of Law No. 1:

Defendants are incorrect. Rule 56 is not applicable based on a mere "indication" of a lack of disputes. Much more; Defendants must "show[] that there is no genuine dispute as to any material facts." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Defendants have failed to do so, especially when viewing the evidence, and all reasonable inferences therefrom, in the light most favorable to Plaintiffs. At summary judgment, a court's function is not to weigh the evidence, make credibility determinations, or determine the truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Even circumstantial evidence is sufficient to create a triable issue. *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992). Further, the reasonableness of an officer's belief "is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of law.'" *Brosseau v. Haugen*, 543 U.S. 194, 206 (2004) (Stevens J., dissenting); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003). Here, credibility determinations must be made at trial.

In ruling on summary judgment, the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 875 (9th Cir. 1987).

Importantly, in a deadly force case such as this, where De Anda cannot testify, the Court must carefully examine all evidence to determine whether the officer's story is internally consistent and consistent with known facts. *Gonzalez v. City of Anaheim*, 747 F.3d 789, 794-95 (9th Cir. 2014). The Court must examine circumstantial evidence that would tend to discredit the officer's story, all to "ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person shot dead—is unable to testify." *Id.*; *see Brosseau*, 543 U.S. at 206 (Stevens J., dissenting) (the reasonableness of an officer's belief "...is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of law'..."); *Anderson*, 483 U.S. at 641; *Wilkins*, 350 F.3d at 956. Given that the Defendant Officers present a skewed interpretation of evidence, it is especially important for the Court to view all reasonable inferences in Plaintiffs' favor in its careful examination.

Where there is video, the Court must view the facts depicted by the video in the light most favorable to Plaintiffs. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018). The factfinder may even draw divergent conclusions from the video. *See S.R. Nehad v. Browder*, 929 F.3d 1125, 1132-39 (9th Cir. 2019) (disputed issues preclude summary judgment in excessive force action even though the evidence included video).

Plaintiffs' Response to Defendants' Conclusion of Law No. 2:

The Court must consider "the type and amount of force," *Seidner v. de Vries*, 39 F.4th 591, 596 (9th Cir. 2022). "Some uses of force can be quantified categorically. The best example is shooting a firearm, which by definition is 'deadly force': force that 'creates a substantial risk of causing death or serious bodily injury.'" *Id.* Therefore, the most important issue is whether the Defendant Officers had probable cause to believe that De Anda posed an immediate and significant

threat of death or serious physical injury to the officers or others. *See Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005); *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1126 (9th Cir. 2021) ("Under federal law, deadly force can be reasonable only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." (quotation marks and citations omitted)); *see also Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017) ("use of deadly force against a non-threatening suspect is unreasonable" (citing *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985)); *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Officers' actions are not judged with the 20/20 vision of hindsight, but nevertheless, not all errors in perception or judgment are reasonable. *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011).

Plaintiffs' Response to Defendants' Conclusion of Law No. 3:

The Defendants Officers' actions were excessive and unreasonable. Nevertheless, they are not entitled to qualified immunity or any other form of unidentified immunity. First, disputed issues of material fact preclude granting qualified immunity on summary judgment. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995); *Glenn*, 673 F.3d at 870, fn. 7 (citing *Espinosa v. Cty. & Cnty of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010)); *Cunningham v. City of Wenatchee*, 345 F.3d 802, 809 (9th Cir. 2003); *Santos*, 287 F.3d at 855, n.12 (declining to decide the qualified immunity issue "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom"); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1109 (9th Cir. 1997) (no qualified immunity where there are triable issues of fact); *Brosseau*, 543 U.S. at 206, (Stevens J., dissenting) (the reasonableness of an officer's belief is a quintessential fact question for the jury, not

a question as a matter of law); *Anderson*, 483 U.S. at 641; *Wilkins*, 350 F.3d at 956 ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate).

To determine that the law was clearly established, the Court need not look to a case with identical or even "materially similar" facts. *Hope v. Pelzer*, 536 U.S. 730, 739-41, 754 (2002); *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136-37 (9th Cir. 2003); *see also Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004). Further, the Supreme Court "has firmly rejected the notion that 'an official action is protected by qualified immunity unless the very action in question has previously been held unlawful.'" *Lopez*, 871 F.3d at 1018; *Brosseau*, 543 U.S. at 206 (Stevens, J., dissenting) ("The Court's search for relevant case law applying the *Garner* standard to materially similar facts is both unnecessary and ill advised.") (quoting *Anderson*, 483 U.S. at 640). In fact, even "[c]losely analogous preexisting case law is not required to show that a right was clearly established." *White v. Lee*, 227 F.3d 1214, 1238 (9th Cir. 2000). "Otherwise, [officials] would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct." *Deorle*, 272 F.3d at 1285. In other words, there may be no published cases with facts exactly like these because of the obviousness of the illegality. *See Sorrels v. McKee*, 290 F.3d 965, 970 (9th Cir. 2002); *K.H. Through Murphy v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990) ("The easiest cases do not even arise. There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages liability because no previous case had found liability in those circumstances."). Accordingly, the "standard is one of fair warning: where the contours of the right have been defined with sufficient specificity that a state official

had fair warning that her conduct deprived a victim of his rights, she is not entitled to qualified immunity." *Haugen v. Brosseau*, 339 F.3d 857, 873 (9th Cir. 2003); *see also Hope*, 536 U.S. at 740 n.10. Qualified immunity "focuses on the objective legal reasonableness of an official's acts," as the Court "provides no license to lawless conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). "Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action." *Id.*

Finally, qualified immunity does not apply to municipalities. *See Brandon v. Holt*, 469 U.S. 464, 473 (1985); *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995).

///

///

Plaintiffs' Response to Defendants' Conclusion of Law No. 4:

Much like the analysis under the Fourth Amendment is fact-specific, the Court's inquiry into the Fourteenth Amendment is also dependent on the facts and analyzed under the totality of the circumstances. *See Wilkinson v. Torres*, 610 F.3d 546, 551, 554 (9th Cir. 2010); *see also Porter v. Osborn*, 546 F.3d 1131, 1137, 1141 (9th Cir. 2008) (recognizing the "principled distinction between police chase cases and the much less obvious … roadside investigation." … And similarly "tested by an appraisal of the totality of the facts").

Plaintiffs' Response to Defendants' Conclusion of Law No. 5:

"Ordinarily, ratification is a question for the jury." *Christie v. Iopa*, 176 F.3d 1231, 1238-39 (9th Cir. 1999) (*citing Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995).) The requisite elements to establish a Section 1983 claim against the City based on Ratification includes: (1) the officers acted under color of state law;

(2) the acts and/or failures to act of the officers deprived Plaintiffs and/or Decedent of a right under the laws of the United States and/or United States Constitution; (3) an alleged final policymaker acted under color of state law; (4) the final policymaker had authority from the City concerning the acts and failures to acts and/or failures to act; and (5) the policymaker knew of and made a deliberate choice to approve the officers' acts and/or failures to act. See Ninth Circuit Model Jury Instructions, No. 9.7; *see also Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 885 (9th Cir. 2022); *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004); and *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). It is well recognized that the Chief of Police is a final policymaker for the City on police matters. *See Larez v. City of Los Angeles*, 946 F.2d 630, 646-647 (9th Cir. 1991). Of note, causation is not an element of Ratification – obviously, the ratification occurs after the underlying Constitutional violation. The ratification doctrine's causation element is distinct from *Monell* liability generally. It endorses a subordinate's conduct causing the injury. *See Tubar v. Clift*, No. C05-1154-JCC, 2008 WL 5142932, at *5 (W.D. Wash. Dec. 5, 2008). A "plaintiff need only show a causal link between the subordinate's conduct and the constitutional injury." *Id.* (quoting *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) (ratification occurs where an official adopts and approves of "the acts of others who caused the constitutional violation").)

Further, the requisite elements to establish a Section 1983 claim against the City based on Failure to Train includes: (1) the acts and/or failures to act of the officers deprived Plaintiffs and/or Decedent of a right under the laws of the United States and/or United States Constitution; (2) the officers acted under color of state law; (3) the training policies of the City were not adequate to train officers to handle the usual and recurring situations with which they much deal; (4) the City was deliberately indifferent to the substantial risk or obvious consequences of its failure to train; and (5) the failure of the City played a substantial part in bringing about

Plaintiffs and/or Decedent's injury or damage. See Ninth Circuit Model Jury Instructions, No. 9.8; *see also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); and *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153-54 (9th Cir. 2021).

Defendants' Notice of Motion pertains to City liability for its failure to adequately train and ratification. (Doc. 42, Mot. at ii-iii.) It also points out that during the parties' conference of counsel, Plaintiffs dropped the *Monell* claim for unconstitutional custom, practice, or policy. (*Id.*) Nevertheless, Defendants argue for judgment on the "custom, policy or practice" claim in Section E. (*Id.* at 17-18.) Defendants do not move on Plaintiffs' claim for ratification. Defendants may not receive summary judgment on Plaintiffs' ratification claim because it was not identified in their motion, and Defendants did not show there is no genuine dispute as to any material fact on that claim. Rule 56 (a), (c), (e). Further, Defendant's reliance on *Trevino v. Gates*, 99 F.3d 911(9th Cir. 1996) is misplaced because it does not address a failure to train claim.

Defendants do not make any argument nor address any independent reason for summary judgment on Plaintiffs' *Monell* claim for ratification; thus, it requires no opposition. *See Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.4 (9th Cir. 1996); *Novato Fire Prot. Dist. v. United States*, 181 F.3d 1135, 1142 (9th Cir. 1999). Furthermore, qualified immunity does not apply to municipal liability. *See Brandon v. Holt*, 469 U.S. 464, 473 (1985); *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995).

Plaintiffs' Response to Defendants' Conclusion of Law No. 6:

Further, the requisite elements to establish a Section 1983 claim against the City based on Failure to Train includes: (1) the acts and/or failures to act of the officers deprived Plaintiffs and/or Decedent of a right under the laws of the United States and/or United States Constitution; (2) the officers acted under color of state

law; (3) the training policies of the City were not adequate to train officers to handle the usual and recurring situations with which they much deal; (4) the City was deliberately indifferent to the substantial risk or obvious consequences of its failure to train; and (5) the failure of the City played a substantial part in bringing about Plaintiffs and/or Decedent's injury or damage. See Ninth Circuit Model Jury Instructions, No. 9.8; *see also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); and *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153-54 (9th Cir. 2021).

DATED:  March 31, 2025                    **LAW OFFICES OF DALE K. GALIPO**


                                          _____*/s/*____*Marcel F. Sincich*_____
                                          Dale K. Galipo, Esq.
                                          Marcel F. Sincich, Esq.
                                          *Attorney for Plaintiffs*