**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
 *dalekgalipo@yahoo.com*
Marcel F. Sincich, Esq (SBN 319508)
 *msincich@galipolaw.com*
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| M.B., by and through her Guardian *ad litem*, Nayelli Bautista; and L.D., by and through his Guardian *ad litem*, Jasmin Trinidad, individually and as successors in interest to CARLOS DE ANDA, deceased,<br><br>            Plaintiffs,<br><br>    vs.<br><br>CITY OF LOS ANGELES; JOSE ARTEAGA MAYAN; KASSANDRA RODRIGUEZ; and DOES 1-10, inclusive,<br><br>            Defendants. | Case No. 2:24-cv-07642-SVW-SSC<br><br>Assigned to:<br>Hon. District Judge Stephen V. Wilson<br>Hon. Mag. Judge Stephanie S. Christensen<br><br>**PLAINTIFFS' ADDITIONAL MATERIAL FACTS**<br><br>[*Filed concurrently with* Plaintiffs' Opposition to Defendants' Motions for Summary Judgment, Memorandum of Points and Authorities in support thereof; Plaintiffs' Additional Material Facts; Plaintiffs' Objections to Evidence Presented in Defendants' Separate Statements; Declaration of Marcel F. Sincich and exhibits thereto; Michaelidis; Declaration of Roger Clark]<br><br>Date:     April 28, 2025<br>Time:    1:30 p.m.<br>Ctrm:   10A |

## PLAINTIFFS' STATEMENT ADDITIONAL MATERIAL FACTS

Pursuant to Local Rule 56-2, Plaintiffs M.B., by and through her Guardian *ad litem*, Nayelli Bautista; and L.D., by and through his Guardian *ad litem*, Jasmin Trinidad, individually and as successors in interest to CARLOS DE ANDA, deceased, respectfully submit their Plaintiffs' Additional Material Facts.

Please take notice that the citations to page numbers to Plaintiffs' Supporting Evidence below references to the page of the original document prior to being cut down to the cited pages only (i.e., not the bates label number, not the pdf page number, and not the CM/ECF generated number in blue), unless otherwise identified on the slip sheet.

DATED:  March 31, 2025          **LAW OFFICES OF DALE K. GALIPO**

_____/s/___ *Marcel F. Sincich*_____
Dale K. Galipo, Esq.
Marcel F. Sincich, Esq.
*Attorney for Plaintiffs*

## PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

**Issue No. 1:  Officers Were Not Responding to a Violent Crime, Knew Decedent Was Suffering a Mental Health Crisis, Had No Plan; and Escalated the Situation:**

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 1: Officers Were Not Responding to a Violent Crime, Knew Decedent Was Suffering a Mental Health Crisis, Had No Plan; and Escalated the Situation** | |
| **62.**     Defendant Officers were not responding to a violent crime. | **Clark Decl**. ¶7.<br><br>**Exh. N, Ring Video**, Sincich Decl ¶15, at 00:00-01:00. |
| **63.**     The call was alleging a 415-man (i.e., disturbing the peace) armed with a knife vandalizing vehicles; a property crime that could be a misdemeanor. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 72:13-20.<br><br>**Exh. B, Mayen Statement**, Sincich Decl ¶3, at 201:23-25.<br><br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 33:18-34:17. |
| **64.**     Officer Mayen admitted that it is not a crime to be a "415 man" and not a crime to have a knife in a parking lot. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 71:13-20. |
| **65.**     This incident occurred in an empty parking lot, with no cars and no pedestrians. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 8:12-15, 70:10-16, 95:16-17, 96:21-22.<br><br>**Exh. B, Mayen Statement**, Sincich Decl ¶3, at 225:19-20. |
| **66.**     Officers used their spotlights and the light from a helicopter to illuminate De Anda during the incident. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 12:14-13:2.<br><br>**Exh. D, Rodriguez Statement**, Sincich Decl ¶5, at 325:12-23 – positioned the vehicle so that the spotlights illuminated De Anda. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 1: Officers Were Not Responding to a Violent Crime, Knew Decedent Was Suffering a Mental Health Crisis, Had No Plan; and Escalated the Situation** | |
| **67.** Officer Mayen illuminated De Anda with his flashlight and did not see a knife on him or on his person. | **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 203:19-21. |
| **68.** However, Officer Mayen saw De Anda walk to the middle of the parking lot and pick up a knife off the ground after about 1-2 minutes. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 97:3-12. **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 203:22-24. |
| **69.** Then Officer Morse immediately called for backup. | **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 203:25-204:2. |
| **70.** Officers established a perimeter and contained De Anda in the parking lot. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 84:18-23. **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 204:3-4. |
| **71.** Officer Mayen began to make verbal contact with him, screaming at De Anda. | **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 204:8-19. |
| **72.** Officer Mayen knew De Anda could have been suffering from a mental health crisis. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 66:1-7, 69:3-8, 69:14-17, 70:2-9, 70:22-71:1– knew De Anda was possibly suicidal, and that based on De Anda's apparent symptoms, that De Anda could have been suffering a mental health crisis. 65:3-9 – De Anda was rambling with inconsistent statements. **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 205:14-18 – heard De Anda say, "I just want to kill myself"; 206:1-2 – and that he wanted to kill himself because people think he is crazy. 219:17 – heard De Anda mumbling. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 1: Officers Were Not Responding to a Violent Crime, Knew Decedent Was Suffering a Mental Health Crisis, Had No Plan; and Escalated the Situation** ||
| | **Clark Decl**. ¶8. |
| 73.    In response, Officer Mayen told Officer Morse to call for the mental health unit. | **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 205:19-20. |
| 74.    Officer Mayen did not know if the mental health unit was ever requested. | **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 224:11-13. |
| 75.    Officer Rodriguez had mental illness training with the Mental Evaluation Unit on how to de-escalate situations. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 20:19-21:10. |
| 76.    From her training, Officer Rodriguez knew that persons potentially suffering from a mental illness are not in complete control of their actions and thought processes. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 21:20-22:17. |
| 77.    At the time of the incident, Officer Mayen was a probationally officer with only 10 months' experience. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 31:24-32:2, 53:11-13. |
| 78.    Yet, Officer Mayen led the communication with De Anda. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 98:7-10. |
| 79.    Further, Officer Rodriguez did not consider the possibility that De Anda was experiencing a mental health crisis because she did not evaluate him and had no dialogue with him. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 23:7-24:2. |
| 80.    Officer Rodriguez did observe De Anda acting erratic but did not contact the mental health unit and did not know if it was ever contacted. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 16:10-12, 29:6-16.<br><br>**Exh. D, Rodriguez Statement**, Sincich Decl ¶5, at 335:21-23. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 1: Officers Were Not Responding to a Violent Crime, Knew Decedent Was Suffering a Mental Health Crisis, Had No Plan; and Escalated the Situation** | |
| **81.**  At this point, Officer Mayan already knew that other officers had arrived and created the perimeter surrounding the parking lot. | **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 206:4-6. |
| **82.**  When Officer Mayen was attempting to communicate with De Anda, offices had time, distance, and cover, and no one's life was in danger. | **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 222:17-20. |
| **83.**  Then, Officer Mayen saw De Anda distracted by officers attempting to enter the north-side parking lot, so Officer Mayen told the officers, "Hey, back up, back up. Stand by." | **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 206:13, 19-21. |
| **84.**  Officer Rodriguez admitted that it would be unsafe to go inside the parking lot, yet went inside the fence, inside the parking lot. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 81:23-25.<br><br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 56:10-12. |
| **85.**  Officer Mayen saw Officer Rodriguez enter the parking lot gate on the south side and had to call Officer Rodriguez out of the parking lot, saying, "No, no. Back up. Backup. Do not enter the parking structure." | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 82:2-3.<br><br>**Exh. B, Mayen Statement**, Sincich Decl ¶3, at 206:25-207:2, 207:7-10. |
| **86.**  Officer Mayen learned that the parking lot gate was open by observing Officer Rodriguez inside the parking lot. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 81:2-5. 81:18-25. |
| **87.**  By reasonable inference, Officer Mayen knew that officers entering the parking lot escalated the situation. | **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 207:16-18. |
| **88.**  Prior to arriving on scene, officers knew they may be confronting a person with a knife but had no plan. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 76:18-77:9 – knew that he may |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 1: Officers Were Not Responding to a Violent Crime, Knew Decedent Was Suffering a Mental Health Crisis, Had No Plan; and Escalated the Situation** ||
| | be confronting a person armed with a knife. |
| | **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 244:1-5 – there was never a discussion about what officers were going to do to take De Anda into custody. |
| | **Exh. D, Rodriguez Statement**, Sincich Decl ¶5, at 351:24-352:7 – according to Officer Rodriguez, Officer Morse was in command and control of the incident but provided her with no direction. |

**Issue No. 2:  Defendants' Use of Excessive Deadly Force Against De Anda Despite Reasonable Alternatives and Without Warning:**

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 2: Defendants' Use of Excessive Deadly Force Against De Anda Without Warning Despite Reasonable Alternatives** ||
| *Defendants had cover and/or access to cover and chose not to use it* ||
| **89.**    The Defendant Officers had multiple options for cover at the time of their use of deadly force. | **Exh. I, Scene Photos**, Sincich Decl ¶10, at 1-5. **Clark Decl**. ¶9. |
| **90.**    When confronting a person potentially armed with a knife, officers are trained to consider taking cover. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 77:10-19. |
| **91.**    Cover is important because it provides officers with time and distance from the subject and an opportunity to verbally de-escalate the situation. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 77:20-23. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 2: Defendants' Use of Excessive Deadly Force Against De Anda Without Warning Despite Reasonable Alternatives** | |
| **92.** If cover is available, officers should take it. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 79:17-20. |
| **93.** There were civilian vehicles parked on both sides of the streets that could have been used as cover. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 79:1-80:5.<br><br>**Exh. B, Mayen Statement**, Sincich Decl ¶3, at 202:18-21.<br><br>**Exh. I, Scene Photos**, Sincich Decl ¶10, at 1-5.<br><br>**Exh. N, Ring Video**, Sincich Decl ¶15, at 00:00-01:00. |
| **94.** Officers were using the parking lot fence atop a 3-foot wall as cover. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 80:5-7.<br><br>**Exh. B, Mayen Statement**, Sincich Decl ¶3, at 203:12-17.<br><br>**Exh. I, Scene Photos**, Sincich Decl ¶10, at 1-5. |
| **95.** The officers used the fence and the wall as cover and had several cars as options to redeploy behind as cover if needed. | **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 205:5-8. |
| **96.** At the south gate, Officer Rodriguez placed her vehicle, with ballistic panels, south of the apron facing east so that it could be utilized as cover if needed. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 55:1-8.<br><br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 31:5-12.<br><br>**Exh. I, Scene Photos**, Sincich Decl ¶10, at 1-5. |
| **97.** Officer Rodriguez specifically positioned her patrol vehicle in a manner so that if De Anda came running towards officers, and they had no cover, the officer would have the vehicle close by to use as cover. | **Exh. D, Rodriguez Statement**, Sincich Decl ¶5, at 314:2-5. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 2: Defendants' Use of Excessive Deadly Force Against De Anda Without Warning Despite Reasonable Alternatives** | |
| **98.** There were officer vehicles just behind the officers when they used force. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 55:1-8. |
| **99.** Officer Mayen admitted to investigators that officers could have redeployed behind vehicles that were right next to the curb. However, Officer Mayen did not redeploy behind cover because Officer Rodriguez did not redeploy behind cover. | **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 238:20-239:6.<br><br>**Exh. I, Scene Photos**, Sincich Decl ¶10, at 1-5. |
| **100.** Officer Rodriguez left the cover of her vehicle because she saw Officers Morse and Mayen at the fence and wanted to be in line with them. | **Exh. D, Rodriguez Statement**, Sincich Decl ¶5, at 326:7-18. |
| *Defendants gave no warning despite it being feasible to do so.* | |
| **101.** The Defendant Officers Rodriguez and Mayen did not give a warning prior to using deadly force. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 128:19-22.<br><br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 14:10-15.<br><br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 14:4-9 – only command she gave was drop the knife.<br><br>**Clark Decl**. ¶10. |
| **102.** No officer gave a warning prior to the use of deadly force. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 15:6-17. |
| *Defendants had time and opportunity to use reasonable alternatives.* | |
| **103.** Officer Mayen used deadly force approximately seven to eight minutes after arriving on scene. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 8:5-9, 14:2-15, 91:3-10, 98:2-6.<br><br>**Exh. J, Mayen BWC**, Sincich Decl ¶11, at 20:28:00 – 20:35:56. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 2: Defendants' Use of Excessive Deadly Force Against De Anda Without Warning Despite Reasonable Alternatives** ||
| **104.** Officer Rodriguez was on scene for 4-5 minutes prior to using deadly force. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 14:16-21. |
| | **Exh. L, Rodriquez BWC**, Sincich Decl ¶13, at 20:31-00 – 20:35:56. |
| **105.** According to Officer Mayen, after 7 minutes, De Anda ran for about 13 seconds, and stopped for 3 seconds prior to the officer-involved shooting. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 91:3-10. |
| **106.** Defendants admit that they fired within a fraction of a second of De Anda in a stopped position. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 91:3-10. |
| | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 12:12-23. |
| | **Exh. J, Mayen BWC**, Sincich Decl ¶11, at 20:35-47 – approximately time that De Anda starts moving toward gate to 20:35:56 – approximate time of first shot. |
| | **Exh. K, Screenshots of Mayen BWC**, Sincich Decl ¶12, at 1-11. |
| | **Exh. L, Rodriquez BWC**, Sincich Decl ¶13, at 20:35-47 – approximately time that De Anda starts moving toward gate to 20:35:56 – approximate time of first shot. |
| | **Exh. M, Screenshots of Rodriguez BWC**, Sincich Decl ¶12, at 1-22. |
| **107.** Officer Rodriguez admitted that De Anda's speed of movement was important to her analysis. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 10:23-25. |
| **108.** Officer Mayen stated that De Anda "was still standing," not running, after he fired his first shot. | **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 234:20-22. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
| --- | --- |
| **Issue No. 2: Defendants' Use of Excessive Deadly Force Against De Anda Without Warning Despite Reasonable Alternatives** | |
| **109.**  After stopping, De Anda took a few steps to the side, away from the Defendant Officers, both south and east), then in the process of taking about one slow step, the Officers used deadly force. | **Exh. E, LAPD Correspondence**, Sincich Decl. ¶6, at 28. **Exh. J, Mayen BWC**, Sincich Decl ¶11, at 20:35-47 – 20:35:56. **Exh. K, Screenshots of Mayen BWC**, Sincich Decl ¶12, at 1-11. **Exh. L, Rodriquez BWC**, Sincich Decl ¶13, at 20:35-47 – 20:35:56. **Exh. M, Screenshots of Rodriguez BWC**, Sincich Decl ¶12, at 1-22. **Exh. O, Cell Phone Video**, Sincich Decl ¶16, at 00:00 – 00:06. |
| *Defendants had several reasonable alternatives and failed to attempt them.* | |
| **110.**  Knowing the subject may be armed with a knife, the officers armed themselves with less lethal force options. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 77:23-9. |
| **111.**  Officer Mayen admitted to investigators, "[w]e could have considered using less lethal." | **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 238:7-14. |
| **112.**  Officer Rodriguez was armed with OC spray and a Taser and had a 40 mm launder in the vehicle. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 25:16-22. |
| **113.**  Officer Mayen had another 40 mm launcher available in his unit. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 90:3-5. |
| **114.**  Officer Mayen was equipped with a Taser and pepper spray. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 55:21-24. |
| **115.**  Officers Rodriguez and Mayen knew that the Taser could cause neuromuscular incapacitation for 5 seconds to allow officers to take the subject into custody. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 56:9-17, 57:14-20, 57:22-58:6. **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 63:10-12, 65:16-18. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 2: Defendants' Use of Excessive Deadly Force Against De Anda Without Warning Despite Reasonable Alternatives** | |
| **116.** Officer Morse was equipped with the 40 millimeter, less lethal launcher, just to Officer Mayen's left at the time of the force. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 28:2-6, 28:10-13. |
| **117.** During the use of force, Officer Hernandez was just to the right of the Defendant Officers with a 40 mm launcher. | **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 209:4-5.<br><br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 72:9-11 – Officer Rodriguez directed her partner to be equipped with less-lethal force.<br><br>**Exh. D, Rodriguez Statement**, Sincich Decl ¶5, at 329:1 – Officer Rodriguez knew her partner was equipped with less lethal. |
| **118.** Officer Rodriguez knew that an airship was requested and arrived prior to the use of force. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 28:3-10. |
| **119.** Officer Mayen admits that one option was for officers to re-deploy behind the civilian vehicles. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 80:15-17. |
| **120.** When Officer Rodriguez arrived she considered bringing less lethal and admitted that she "should have voiced it sooner but [] I didn't." | **Exh. D, Rodriguez Statement**, Sincich Decl ¶5, at 320:11-16. |
| **121.** Officer Rodriguez never considered moving the vehicle onto the apron to block the gate. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 31:19-21.<br><br>**Exh. I, Scene Photos**, Sincich Decl ¶10, at 1-5. |
| **122.** No officer attempted less lethal force during the incident despite officers being armed with less lethal force. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 27:20-25.<br><br>**Clark Decl**. ¶11. |
| *Defendants used deadly force against Mr. De Anda.* | |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 2: Defendants' Use of Excessive Deadly Force Against De Anda Without Warning Despite Reasonable Alternatives** | |
| **123.**    Officer Mayen used deadly force when he fired two hollow-point rounds from his 9-millimeter pistol, designed to open and spread after hitting their target. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 7:23-8:4, 11:19-12:2, 53:16-54:8, 54:16-20. |
| **124.**    Officer Mayen aimed center mass, intentionally pressed the trigger for each shot, assessed between his shots, and intended that his shots strike De Anda. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 24:8-9, 25:1-7, 25:19-25, 26:1-9, 26:12-16. |
| **125.**    Officer Rodriguez used deadly force when she fired 3 rounds from her 9 mm pistol, aiming center mass, intentionally pulled the trigger for each shot, assessed between each round, and intended to strike De Anda. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 7:2-16, 8:18-22, 9:2-7, 9:12-13. |
| **126.**    Officers are trained to assess between rounds to determine if the subject is a deadly threat, including whether still advancing. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 9:15-10:4. |
| **127.**    However, Officer Rodriguez told investigators that she did not assess between her second and third round. | **Exh. D, Rodriguez Statement**, Sincich Decl ¶5, at 342:3-6. |
| **128.**    At the time of firing her second round, Officer Rodriguez did not know how De Anda was holding the knife. | **Exh. D, Rodriguez Statement**, Sincich Decl ¶5, at 341:20-24. |

### Issue No. 3: De Anda Was Not An Immediate Threat Of Death Or Serious Bodily Injury:

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 3: De Anda was Not an Immediate Threat of Death or Serious Bodily Injury** | |
| *Mr. De Anda did not attack, brandish, or threaten officers with a knife* | |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 3: De Anda was Not an Immediate Threat of Death or Serious Bodily Injury** ||
| **129.**   De Anda was not an immediate threat of death or serious bodily injury at the time. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 50:15-51:1 – in order to use deadly force, there must be specific threat of death or serious bodily injury.<br><br>**Exh. I, Scene Photos**, Sincich Decl ¶10, at 1-5.<br><br>**Exh. J, Mayen BWC**, Sincich Decl ¶11, at 20:35-40 – 20:36:00.<br><br>**Exh. K, Screenshots of Mayen BWC**, Sincich Decl ¶12, at 1-11.<br><br>**Exh. L, Rodriquez BWC**, Sincich Decl ¶13, at 20:35-40 – 20:36:00.<br><br>**Exh. M, Screenshots of Rodriguez BWC**, Sincich Decl ¶12, at 1-22.<br><br>**Exh. N, Ring Video**, Sincich Decl ¶15, at 00:00-01:00.<br><br>**Exh. O, Cell Phone Video**, Sincich Decl ¶16, at 00:00 – 00:06.<br><br>**Clark Decl.** ¶12-13. |
| **130.**   Prior to his use of deadly force, officers had no information that De Anda had ever physically injured anybody in the past. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 74:10-14.<br><br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 24:9-17, 32:18-23, 35:18-36:5. |
| **131.**   Officers never saw De Anda physically injure anybody, including himself. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 40:10-16, 74:20-22.<br><br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 34:21-23. |
| **132.**   De Anda never attempted to slash, stab, or swing a knife at anyone. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 16:19-22, 17:15-18:4. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 3: De Anda was Not an Immediate Threat of Death or Serious Bodily Injury** | |
| | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 36:15-19, 37:24-25. |
| | **Exh. J, Mayen BWC**, Sincich Decl ¶11, at 20:35-40 – 20:36:00. |
| | **Exh. K, Screenshots of Mayen BWC**, Sincich Decl ¶12, at 1-11. |
| | **Exh. L, Rodriquez BWC**, Sincich Decl ¶13, at 20:35-40 – 20:36:00. |
| | **Exh. M, Screenshots of Rodriguez BWC**, Sincich Decl ¶12, at 1-22. |
| | **Exh. O, Cell Phone Video**, Sincich Decl ¶16, at 00:00 – 00:06. |
| **133.**   Prior to his use of deadly force, officers had no information that De Anda had ever verbally threatened anybody. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 75:1-4. |
| | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 24:9-17, 32:18-23, 35:18-36:5. |
| **134.**   Officers never heard De Anda verbally threaten anybody. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 95:12-14. |
| | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 24:4-8. |
| **135.**   Officers had never met De Anda before. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 72:22-24. |
| | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 35:18-36:5. |
| **136.**   De Anda did not attempt to jump over a fence or run towards any civilian. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 96:1-13, 96:18-20. |
| **137.**   There were no civilians within 200 feet of the incident location. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 35:4-12. |
| | **Exh. D, Rodriguez Statement**, Sincich Decl ¶5, at 321:7-22. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 3: De Anda was Not an Immediate Threat of Death or Serious Bodily Injury** ||
| **138.**  De Anda was contained. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 27:24-28:2. |
| **139.**  Officer Mayen was about 30 feet from De Anda when he first saw him walking away from officers. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 98:11-16.<br><br>**Exh. B, Mayen Statement**, Sincich Decl ¶3, at 203:4-5. |
| **140.**  De Anda walked eastbound to the back of the parking lot, about 100 feet away from offices. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 98:17-99:2.<br><br>**Exh. B, Mayen Statement**, Sincich Decl ¶3, at 204:6-7. |
| **141.**  De Anda began pacing back and forth. | **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 206:8. |
| **142.**  Both Defendants admit that De Anda moved towards the exit where the gate was open. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 96:13-14.<br><br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 74:12-14.<br><br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 71:12-20 – the City diagram accurately reflects the positions of the officers and De Anda during the shots.<br><br>**Exh. E, Correspondence**, Sincich Decl ¶6, at 28 – De Anda was not moving towards Officers Rodriguez or Mayen. |
| **143.**  De Anda was moving towards the opening of the gate before Officer Rodriguez moved south to block him. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 74:20-75:3. |
| **144.**  Officer Rodriguez was on the apron, 3 feet south and 3 feet west of the gate, when she used deadly force. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 53:10-24, 69:2-12. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 3: De Anda was Not an Immediate Threat of Death or Serious Bodily Injury** | |
| **145.** Using the fence as cover, Officer Mayen ran southbound, toward Officer Rodriguez prior to using deadly force. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 21:5-10. |
| | **Exh. B, Mayen Statement**, Sincich Decl ¶3, at 208:13-15. |
| **146.** De Anda never made a furtive or threatening movement with the knife. | **Exh. J, Mayen BWC**, Sincich Decl ¶11, at 20:35-47 – 20:35:56. |
| | **Exh. K, Screenshots of Mayen BWC**, Sincich Decl ¶12, at 1-11. |
| | **Exh. L, Rodriquez BWC**, Sincich Decl ¶13, at 20:35-47 – 20:35:56. |
| | **Exh. M, Screenshots of Rodriguez BWC**, Sincich Decl ¶12, at 1-22. |
| | **Exh. O, Cell Phone Video**, Sincich Decl ¶16, at 00:00 – 00:06. |
| *Defendants were at least 28 feet away from Mr. De Anda when they opened fire.* | |
| **147.** When confronting a person armed with a knife, it is important for officers to maintain a distance. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 83:5-10. |
| **148.** Distance gives officers time to use other resources and de-escalate the situation. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 51:3-9. |
| **149.** Officers are trained to attempt to create distance and time. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 55:3-5. |
| **150.** Both officers admit that their use of deadly force is contingent on De Anda's distance. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 39:7-20. |
| | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 48:2-9, 48:20-24. |
| **151.** Officer Mayen admitted that if a person is 20 feet away, they are too far to swing the knife at anyone or stab anyone. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 16:1-5, 20:12-14. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 3: De Anda was Not an Immediate Threat of Death or Serious Bodily Injury** | |
| **152.**   Officer Rodriguez admitted that De Anda was not an imminent threat when he stopped 25 feet away. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 51:10-14, 52:19-22. |
| **153.**   According to Officer Rodriguez, the City diagram accurately reflects the positions of the officers and De Anda during the shots. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 71:12-20. |
| **154.**   The City determined that Officer Rodruguez was approximately 28 feet away from De Anda at the time of her first shot. | **Exh. E, Correspondence**, Sincich Decl ¶6, at 25. |
| **155.**   Nevertheless, Defendant Officers were approximately 28-30 feet away from De Anda at the time the deadly force began. | **Exh. I, Scene Photos**, Sincich Decl ¶10, at 1-5.<br><br>**Exh. Q, Distance Demonstrative**, Sincich Decl ¶18 – a reasonable jury could determine that the Defendant Officers were 28-30 feet away from De Anda at the time of her first shot.<br><br>**Clark Decl.** ¶12. |
| *Officers had superior numbers and capabilities against the lesser Mr. De Anda.* | |
| **156.**   De Anda was seen as 5'6" and 150 pounds and alone in the parking lot. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 75:6-9, 95:16-17. |
| **157.**   Officer Mayen was 5'7" and 150 pounds, equipped with OC spray, a Taser, flashlight, baton, and ballistic vest. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 54:21-25, 75:13-21.<br><br>**Exh. E, LAPD Correspondence**, Sincich Decl. ¶6, at 7. |
| **158.**   Officer Rodriguez was 5'2" and 145 pounds, with nearly 4-years' experience, equipped with OC spray, a Taser, flashlight, baton, and ballistic vest. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 26:3-4.<br><br>**Exh. E, LAPD Correspondence**, Sincich Decl. ¶6, at 12. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 3: De Anda was Not an Immediate Threat of Death or Serious Bodily Injury** | |
| **159.** Officer Morse was 5'7" and 220 pounds, with 27 years' experience, equipped with OC spray, a Taser, flashlight, baton, and ballistic vest. | **Exh. E, LAPD Correspondence**, Sincich Decl. ¶6, at 7. |
| **160.** Officer Henandez was 5'9" and 190 pounds, equipped with OC spray, a Taser, flashlight, baton, and ballistic vest. | **Exh. E, LAPD Correspondence**, Sincich Decl. ¶6, at 12. |
| **161.** Backup was called about 5 minutes prior to the use of force and officers could hear backup arriving. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 88:2-12, 89:7-11. |
| **162.** There were four officers in the immediate area at the time of the force, including Officers Mayen, Rodriguez, Morse, and Hernandez. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 29:19-22, 30:1-6. |
| **163.** A total of 14 officers responded to this incident. | **Exh. D, Rodriguez Statement**, Sincich Decl ¶5, at 318:1-9. <br><br> **Exh. E, Correspondence**, Sincich Decl ¶6, at 6-7, 11-12. |

**Issue No. 4:  Defendants Knew The Law Was Clearly Established:**

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 4: Defendants' Knew the Law was Clearly Established** | |
| **164.** Knowing the law was clearly established that officers could not use deadly force under these circumstances, Defendants first told investigators that De Anda was less than half the distance he really was from them in order to justify their shots and still attempt to shorten the distance between De Anda and themselves despite the City's investigation and | **PAMF Nos.** 165-167 below. <br><br> **Exh. H, Use of Force Directive**, Sincich Decl ¶9, at 1, 2, 4, 6, 7. <br><br> **Clark Decl.** ¶14. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 4: Defendants' Knew the Law was Clearly Established** ||
| their own scene visits to take measurements. | |
| **165.**   The Defendant Officers know that they cannot use deadly force merely for seeing a knife in a subject's hand. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 36:7-13 – admits that officers may not use deadly force against a person merely for having a knife in their hand.<br><br>**Exh. A, Mayen Depo**, Sincich Decl ¶2, at 32:20-33:13 – has encountered 20-30 subjects with a knife in their hand. 31:1-3, 31:13-15– had never used deadly force before.<br><br>**Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 19:2-14 – Officer Rodriguez has had experience with over a hundred subjects who were armed with a knife.  16:22-23 – had never been in an officer-involved shooting before.<br><br>**Exh. H, Use of Force Directive**, Sincich Decl ¶9, at 1, 2, 4, 6, 7. |
| **166.**   If a person is merely not complying with commands, officers may only use less lethal force to de-escalate the situation. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 36:21-37:5.<br><br>**Exh. H, Use of Force Directive**, Sincich Decl ¶9, at 1, 2, 4, 6, 7. |
| **167.**   In explanation of his excessive use of deadly force, Officer Mayen told investigators that he was only 10 feet away from De Anda when he fired his first shot and 8 feet away at the time of his second shot. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 13:20-22, 21:11-14, 21:18-22:4, 23:10-20, 43:17-20.<br><br>**Exh. B, Mayen Statement**, Sincich Decl ¶3, at 234:3-6, 245:6-8. |
| **168.**   Likewise, Officer Rodriguez estimated that the distance from De Anda to her at the time of her first shot was from the end of the table to the | **Exh. D, Rodriguez Statement**, Sincich Decl ¶5, at 338:5-9, 338:22-339:7. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 4: Defendants' Knew the Law was Clearly Established** ||
| investigator, which investigators measured and determined to be 12 feet. | **Exh. E, Correspondence**, Sincich Decl ¶6, at 25. |
| **169.** Defendants' still incorrect but updated measurements presently provided are based on their scene visit three days prior to the deposition. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 43:21-23, 44:4-10, 45:4-6, 49:5-9. <br><br> **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 43:14-19, 44:14-20. <br><br> **Exh. Q, Distance Demonstrative**, Sincich Decl ¶18 – a reasonable jury could determine that Officer Rodruguez was 28-30 feet away from De Anda at the time of her first shot. <br><br> **Clark Decl.** ¶12. |

**Issue No. 5:  City Of Los Angeles Liability:**

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 5: City of Los Angeles Liability** ||
| **170.** Defendant Officers had insufficient training to handle the situation. | **Exh. E, Correspondence**, Sincich Decl ¶6, at 1, 2, 44-66. <br><br> **Exh. F, BOPC Results**, Sincich Decl ¶6, at 1. <br><br> **Exh. H, Use of Force Directive**, Sincich Decl ¶9, at 1, 2, 4, 6, 7. <br><br> **Exh. P, BOPC OIS Report**, Sincich Decl ¶17, at 1-23. <br><br> **Clark Decl.** ¶15. |
| **171.** Defendant Officers violated City Policy and basic officer training. | **Exh. E, Correspondence**, Sincich Decl ¶6, at 44-66. <br><br> **Exh. H, Use of Force Directive**, Sincich Decl ¶9, at 1, 2, 4, 6, 7. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 5: City of Los Angeles Liability** ||
|  | **Exh. P, BOPC OIS Report**, Sincich Decl ¶17, at 1-23. |
|  | **Clark Decl.** ¶15. |
|  | **PAMF Nos.** 62-161. |
| **172.**   Defendant City has ratified this officer-involved shooting. | **Exh. E, Correspondence**, Sincich Decl ¶6, at 1-66. |
|  | **Exh. F, BOPC Results**, Sincich Decl ¶6, at 1. |
|  | **Exh. P, BOPC OIS Report**, Sincich Decl ¶17, at 1-23. |
|  | **Clark Decl.** ¶16. |
| **173.**   Every officer must be Peace Officer Standards and Training ("POST") certified and trained. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 52:13-24. |
|  | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 18:5-8. |
| **174.**   The training and law was clearly established at the time of the incident that officers ay not use deadly force unless *necessary* to defend against an imminent threat of death or serious bodily injury. | **Exh. G, POST LD 20**, Sincich Decl ¶8, at 4-4 – citing Penal Code Section 835a(c)(1)(A). |
|  | **Exh. E, Correspondence**, Sincich Decl ¶6, at 57-58. |
|  | **Exh. H, Use of Force Directive**, Sincich Decl ¶9, at 1, 2, 4. |
|  | **Exh. P, BOPC OIS Report**, Sincich Decl ¶17, at 12-14. |
|  | **Clark Decl.** ¶14. |
| **175.**   Officers also know that for there to be an imminent threat to use deadly force, the subject must have the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury. | **Exh. G, POST LD 20**, Sincich Decl ¶8, at 4-7 – citing Penal Code Section 835a(e)(2). |
|  | **Exh. E, Correspondence**, Sincich Decl ¶6, at 57-58. |
|  | **Exh. H, Use of Force Directive**, Sincich Decl ¶9, at 4, 6, 7. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 5: City of Los Angeles Liability** ||
|  | **Exh. P, BOPC OIS Report**, Sincich Decl ¶17, at 12-14. **Clark Decl.** ¶14. |
| **176.**  Further, officers know that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed. | **Exh. G, POST LD 20**, Sincich Decl ¶8, at 4-7. **Exh. H, Use of Force Directive**, Sincich Decl ¶9, at 6, 7. **Exh. P, BOPC OIS Report**, Sincich Decl ¶17, at 13. **Clark Decl.** ¶14. |
| **177.**  Finally, officers know that the totality of the circumstances includes the conduct of the officer leading up to the use of deadly force. | **Exh. G, POST LD 20**, Sincich Decl ¶8, at 4-7. **Exh. H, Use of Force Directive**, Sincich Decl ¶9, at 7. **Exh. P, BOPC OIS Report**, Sincich Decl ¶17, at 12. **Clark Decl.** ¶14. |
| **178.**  Officers Rogriguez and Hernandez did not broadcast or indicate on their Mobile Digital Computer that they were at the scene. | **Exh. E, Correspondence**, Sincich Decl ¶6, at 13. |
| **179.**  Officer Mayen admitted that in tactical situations it is important for every officer to know what is going on. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 84:24-85:4. |
| **180.**  Officer Rodriguez did not know where her partner was at the time of the shots. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 72:5-7. |
| **181.**  Officer Mayen claims he did not know where Officers Hernandez or Rodruguez were at the time of his use of deadly force. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 21:1-3, 30:7-10. |
| **182.**  Officer Rodriguez never told her partners that the gate was open. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 31:14-17. |

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **Issue No. 5: City of Los Angeles Liability** ||
| **183.** Officer Mayen never told Officer Rodriguez that De Anda was potentially suicidal. | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 32:14-33:17. |
| **184.** According to Officer Rodriguez, it does not matter if De Anda was 12 or 25 feet away, "distance doesn't really matter." | **Exh. C, Rodriguez Depo**, Sincich Decl ¶4, at 49:4-9, 50:5-9. |
| **185.** By reasonable inference, Officer Mayen did not know whether or not symptoms such as rambling, ranting, inconsistent statements, and walking back and forth were consistent with a person suffering from a mental health crisis. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 66:13-23. |
| **186.** Officer Mayen admitted to going through training and receiving information on possible symptoms of mental health. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 67:19-25. |
| **187.** By reasonable inference, Officer Mayen indicated that the training he received regarding person in a mental health crisis was not effective and not realistic to what officers see in the field. | **Exh. A, Mayen Depo**, Sincich Decl ¶2, at 68:8-24. |