**HYDEE FELDSTEIN SOTO**, City Attorney (SBN 106866)
**DENISE C. MILLS**, Chief Deputy City Attorney (SBN 191992)
**KATHLEEN KENEALY**, Chief Assistant City Attorney
**CORY M. BRENTE**, Senior Assistant City Attorney (SBN 115453)
**CHRISTIAN R. BOJORQUEZ**, Deputy City Attorney (SBN 192872)
200 N. Main Street, 6th Floor, City Hall East, Los Angeles, California 90012
Tel: (213) 978-7023 | Fax: (213) 978-8785 | Email: christian.bojorquez@lacity.org

*Attorneys for Defendant* CITY OF LOS ANGELES, et al.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| M.B., by and through her Guardian ad litem, Nayelli Bautista and L.D., by and L.D., by and through his Guardian ad litem, Jasmin Trinidad, individually and as successors in interest to Carlos De Anda, deceased,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, JOSE ARTEAGA MAYAN; KASSANDRA RODRIGUEZ; and DOES 1-10, Inclusive,<br><br>　　　　　　Defendants. | Case No. 2:24-cv-07642 SVW (SSC)<br>*Hon. Stephen V. Wilson, Ctrm 10A (First Street)*<br>*Mag. Stephanie Christensen, Ctrm 790 (Roybal)*<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　April 28, 2025<br>Time:　1:30 p.m.<br>Court:　10A (First Street) |

### **DEFENDANTS' REPLY**

"By asking police to serve and protect us, we citizens agree to comply with their instructions and cooperate with their investigations. Unfortunately, not all of us hold up our end of the bargain. As a result, officers face an ever-present risk that routine police work will suddenly become dangerous." *Mattos v. Agaran*, 661 F.3d 433, 453 (9th Cir. 2011) (en banc) (Kozinski, C.J., concurring and dissenting in part). Thus, "[a] reasonable officer need not await the glint of steel before taking self-protective action; by then, it is often … too late to take safety precautions." *Estate of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (internal quotation marks omitted). But even though "[d]etached reflection cannot be demanded in the presence of an uplifted knife," *Brown v. United States*, 256 U.S. 335, 343 (1921), that is precisely the standard urged by Plaintiffs here.

## I. THE USE OF FORCE WAS OBJECTIVELY REASONABLE

As detailed in Defendants' summary judgment motion, and demonstrated by the accompanying body worn video, Officer Rodriguez and Officer Mayen, when faced with a knife-wielding man who charged at the officers with a 10-inch blade after ignoring their repeated attempts to de-escalate the situation, as well as their multiple commands to drop the knife, responded in an objectively reasonable manner. Consequently, the officers' conduct did not constitute a Fourth Amendment or substantive due process violation. Alternatively, the officers are entitled to qualified immunity. Nevertheless, Plaintiffs contend that the officers' use of force was excessive under *Graham v. Connor*, 490 U.S. 386, 395 (1989) because, according to Plaintiffs, De Anda did not pose an immediate threat of death or serious bodily injury to any person at the time of the shooting. Oppo at ECF p. 17. However, the officers acted swiftly and appropriately in response to the lethal threat posed by a suicidal, knife-wielding man who was advancing towards them. Officers are not required to sacrifice their lives in response to an irrational, suicidal individual who is armed, advancing, and refusing commands to drop the knife. They are authorized to use lethal force to defend themselves from an imminent threat such as De Anda posed.

Where such measures become necessary, they are analyzed under the Fourth Amendment's "reasonableness" standard. *Smith v. City of Hemet,* 394 F.3d 689, 700 (9th Cir. 2005). The reasonableness of an officer's use of force is judged from the perspective of a reasonable officer on the scene, not with the 20/20 vision of hindsight. The question is whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting them. *Graham,* 490 U.S. at 396-97. But "[t]he Constitution is not blind to the fact that police officers are often forced to make split-second judgments." *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 612 (2015). As the Supreme Court has noted: "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection." *Heien v. North Carolina*, 574 U.S. 54, 61 (2014); see *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996) ("[N]o court can expect

any human being to remain passive in the face of an active threat on his or her life … the Fourth Amendment does not require omniscience. Before employing deadly force, the police must have sound reason to believe that the suspect poses a serious threat to their safety or the safety of others. Officers need not be absolutely sure, however, of the nature of the threat or the suspect's intent to cause them harm—the Constitution does not require that certitude precede the act of self-protection").

Any calculus of reasonableness must allow for the fact that officers must make these split-second judgments "in circumstances that are tense, uncertain, and rapidly evolving." *Graham,* 490 U.S. at 396-97; see *Ryburn v. Huff*, 565 U.S. 469, 475-77 (2012) (urging caution "about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation"). A suspect armed with a knife while advancing on a fully uniformed officer who is holding a weapon and shouting commands to drop the knife is a paradigmatic example of a "tense, uncertain, and rapidly evolving" situation. See *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994).

Furthermore, "[a] reasonable use of deadly force encompasses a range of conduct, and the availability of a less intrusive alternative will not render conduct unreasonable." *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010); see *Estate of Serrano v. Trieu*, 2016 WL 1089225, at *7-8 (N.D. Cal. March 21, 2016) (rejecting argument that officer could have used Taser or pepper spray instead of deadly force); *Sheehan*, 575 U.S. at 615 (plaintiff could not establish Fourth Amendment violation "based merely on bad tactics that result in a deadly confrontation that could have been avoided") (citation omitted).[1] California courts are in accord. See *J.A.L. v. Santos*, 724 Fed. App'x. 531, 534 (9th Cir. 2018) (even if officers knew suspect was likely impaired, they were faced with a man carrying a large blade in a populated area who repeatedly refused to comply with their

---

[1] The Seventh Circuit has aptly described this concept. "There is no precedent in this Circuit (or any other) which says that the Constitution requires law enforcement officers to use all feasible alternatives to avoid a situation where deadly force can justifiably be used. There are, however, cases which support the assertion that, where deadly force is otherwise justified under the Constitution, there is no constitutional duty to use non-deadly alternatives first." *Plakas v. Drinski*, 19 F.3d 1143, 1148 (7th Cir. 1994).

commands and California law does not require officers to choose the most reasonable action or the conduct least likely to cause harm).

Additionally, while officers may "not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed," *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997), "where a suspect *threatens* an officer with a weapon such as a gun or a knife, the officer is justified in using deadly force." *Smith*, 394 F.3d at 704 (emphasis added) (collecting cases). Indeed, if a person is armed, or reasonably suspected of being armed, "a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." *George v. Morris,* 736 F.3d 829, 838 (9th Cir. 2013). Thus, the key issue "is whether a reasonable jury would necessarily find that [the officer] perceived an immediate threat of death or serious physical injury at the time" they used deadly force. *Gonzalez v. City of Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014). "Courts applying these principles have consistently found officers' use of deadly force reasonable when a suspect is approaching the officers with a deadly weapon." *Watkins v. City of San Jose*, 2017 WL 1739159, at *8 (N.D. Cal. May 4, 2017).

While courts may consider whether a person is emotionally disturbed in determining what level of force is reasonable, they have never ruled that officers are obligated to put themselves in danger so long as the person threatening them is mentally ill. Such a conclusion would be illogical, especially given the admonition in *Bryan v. MacPherson*, 630 F.3d 805, 829 (9th Cir. 2010) that courts should not "create two tracks of excessive force analysis, one for the mentally ill and one for serious criminals." That is not to say officers should be blind to a suspect's mental illness, but the inquiry still centers on the reasonableness of the officers' actions. See *Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011); *Gregory v. County of Maui,* 523 F.3d 1103, 1108 (9th Cir. 2008) (even if suspect was emotionally disturbed at time of incident, and officers should have recognized this, officers' response to threat plaintiff posed—confronting him verbally before attempting to disarm and restrain him—was objectively reasonable).

A.     **The *Graham* Factors**

An analysis of the *Graham* factors demonstrates the reasonableness of the officers' conduct. See *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014) (en banc) (factors relevant to assessing whether an officer's use of force was objectively reasonable include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempt to evade arrest by flight). With respect to the first factor, charging a police officer with an edged weapon and refusing commands to drop a deadly weapon are crimes. See Cal. Penal Code §§ 417(a), 148(a). In fact, "[e]very person who ... in the presence of any other person, draws or exhibits any deadly weapon [including a knife] ... in a rude, angry, or threatening manner ... is guilty of a misdemeanor." Just as brandishing a knife in front of the officers in a threatening manner is a crime, any attempt to strike, maim, or seriously harm the officers would constitute attempted assault of a peace officer and attempted assault with a deadly weapon. See Cal. Pen. Code §§ 663-664, 217.1, 240. De Anda also failed to obey commands when officers ordered him to drop his weapon. Failing to heed an officer's commands is considered resisting arrest and is a crime. See Cal. Pen. Code § 148(a).[2] Thus, there can be no dispute that De Anda committed at least one, if not several crimes. Consequently, this *Graham* factor has been met.

---

[2] Officers may reasonably perceive a heightened risk of serious physical harm when a suspect disobeys their orders in a way that signals active resistance. See *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1020 (9th Cir. 2015) (disobedience of officer commands is significant factor in excessive force analysis); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1104 (9th Cir. 2013) (same). Other circuits are in accord. See *Billingsley v. City of Omaha,* 277 F.3d 990, 993-94 (8th Cir. 2002) (suspect did not halt after being ordered to stop multiple times); *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997) (suspect ignored orders to get on ground); *Anderson v. Russell*, 247 F.3d 125, 130 (4th Cir. 2001) (suspect disobeyed officer's orders by lowering his hands). De Anada's visible agitation would have only added to the officers' perception of danger. See *Smith v. County of Butte*, 2017 WL 1540315 (E.D. Cal. April 28, 2017) (granting summary judgment in favor of officers where suspect was acting erratically and repeatedly told to drop his weapon and get on the ground); see also *Loch v. City of Litchfield*, 837 F.Supp.2d 1032, 1040 (D. Minn. 2011), aff'd by 689 F.3d 961 (8th Cir. 2012) ("Adding to the perceived danger … is the fact that [the suspect] was intoxicated and agitated"). In light of De Anda's behavior, "there was no reason for the officers to believe that [De Anda] would act rationally." *Lal v. California*, 746 F.3d 1112, 1118-19 (9th Cir. 2014).

De Anda also posed an immediate threat. As noted in Defendants' motion, numerous courts have held that lethal force used against a knife-wielding suspect was lawful and objectively reasonable conduct. See *Estate of Toribio v. City of Santa Rosa*, 381 F.Supp.3d 1179, 1189 (N.D. Cal. 2019) (no Fourth Amendment violation even where officer might have mistakenly assumed subject was charging him); *Blanford v. Sacramento County*, 406 F.3d 1110, 1116 (9th Cir. 2005) (officers reasonably believed subject posed a serious danger where subject refused to heed commands and was armed with an edged weapon). Although the government has less interest in using force when police are summoned to protect a mentally ill offender from himself, the government has an *increased* interest in the use of force when, as in this case, the police warned the suspect they would employ force and the suspect still refused to comply. See *Marquez v. City of Phoenix*, 693 F.3d 1167, 1175 (9th Cir. 2012).[3] Here, multiple 911 callers alerted LAPD that De Anda had a knife while out in public and was threatening people with it. Officers initiated communication with De Anda in an attempt to develop a rapport with him and de-escalate a situation that De Anda had created while under the influence of methamphetamine. The officers' communication and de-escalation attempts continued throughout the incident. De Anda was ordered to drop the 10-inch knife several times but refused to do so while stating "I don't want to live." It wasn't until De Anda began to advance from a distance of approximately 20-25 feet, while still armed, that officers fired their weapons to prevent him from hurting or killing nearby officers or the public.[4]

---

[3] Despite Plaintiffs' contention to the contrary, see Oppo at ECF p. 19, the officers' warnings were clear. See *Estate of Serrano,* 2016 WL 1089225, at *8; *Hill v. Bay Area Rapid Transit District*, 2013 WL 5272957, at *6 (N.D. Cal. 2013) (where officer had his gun pointed at decedent at time officer ordered decedent to drop his knife, "the consequences of a failure to comply with the command should have been clear").

[4] This distance can be closed quickly. See *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1261 n.1 (10th Cir. 2008) (noting officer training manual instructs that knife-wielding persons within 21 feet pose imminent threat to officers based on time in which the distance can be closed in an attack); *Chavez v. Las Vegas Metro. Police Dep't*, 2014 WL 374444, at *8 (D. Nev. 2014) (same); see also *Watkins,* 2017 WL 1739159, at *10 (observing that "[n]othing in the record indicates that a suspect with a knife *outside* the 21-foot distance does not pose an imminent risk of harm") (emphasis added).

Thus, in light of the circumstances in this case, the officers' use of force was reasonable. Although the officers may have been in *more* danger had they waited for De Anda to advance closer to them, the pace of his advance and failure to follow commands to drop the knife indicate that the officers had probable cause to believe that the suspect posed a significant threat of death or serious physical injury to the officers. See *Henrich*, 39 F.3d at 914. Consequently, this *Graham* factor has been met. See *Watkins*, 2017 WL 1739159, at *10 ("The officers were faced with a decision to stop a quickly advancing suspect who, in a manner of seconds, could have caused death or significant bodily injury to either or both officers. The Court does not find it unreasonable that the officers deployed deadly force to stop that suspect's advance"); *Hart v. Redwood City*, 99 F.4th 543, 553 (9th Cir. 2024) ("[I]f Hart had merely possessed a knife, the use of deadly force would not have been justified here. Likewise, Hart's failure to comply with the officers' commands, standing alone, would not have justified it. But Hart failed to comply with the officers' commands to drop the knife and instead rapidly approached them while wielding it. These facts, together, made Hart an immediate threat to the officers and justified Officer Gomez's use of deadly force"); see also *Martinez v. County of Los Angeles*, 47 Cal.App.4th 334, 345 (1996) (holding that officers "justifiably and reasonably" shot knife-wielding man who kept advancing toward them despite several warnings to stop, even though he walked slowly and did not lunge at the officers).[5]

### B. Qualified Immunity

Plaintiffs contend that the officers are not entitled to qualified immunity because there are disputed issues of material fact, Oppo at ECF p. 21, and at the time of the shooting, it was clearly established that officers may not use deadly force against a person who is armed but cannot reasonably be perceived to be taking any "furtive, harrowing, or threatening" actions, especially when less-lethal options are available. Oppo at ECF p.

---

[5] Because the officers' use of force does not violate the Fourth Amendment, it cannot shock the conscious in violation of the Fourteenth Amendment. See *Tennison v. City and Cnty. of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009). Thus, Plaintiffs' substantive due process claim must fail as well.

22. Neither contention precludes qualified immunity here. As noted in Defendants' motion, the officers' body worn videos are the best evidence in this case. These videos captured, in real time, the events leading up to De Anda's shooting and provide the clearest picture of the imminent and potentially lethal threat De Anda posed to the officers and nearby members of the public. The officers' videos alone present the uncontroverted facts necessary for this Court to grant Defendants' requested relief.[6]

Furthermore, under the qualified immunity analysis, it was immaterial what degree of threat De Anda posed, as the Fourth Amendment "does not require the court to determine whether an officer was in actual, imminent danger of serious injury, but rather, whether the officer reasonably believed that the suspect posed a threat of serious harm to the officer or to others." *Harris v. Serpas*, 745 F.3d 767, 773 (5th Cir. 2014) (internal quotation marks and brackets omitted); see also *Bowles v. City of Porterville,* 571 Fed. App'x 538, 540-41 (9th Cir. 2014) (applying "reasonable belief" standard to find no Fourth Amendment violation when officer reasonably, but mistakenly, believed suspect's cologne bottle was a weapon). "The objective reasonableness test will not be met if, on an objective basis, it is obvious that no reasonably competent officer would have concluded in that moment that … use of deadly force was necessary." *Estate of O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003) (internal citation and quotation marks omitted). This test is met even if "officers of reasonable competence could disagree on the legality of the defendant's actions." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Here, even if the officers were mistaken on an issue of fact—such as whether De Anda was actually going to stab the officers with his knife, how quickly De Anda could reach the officers, or whether the officers had room to maneuver out of the way of a potential strike—they are entitled to qualified immunity. See *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to

---

[6]   The officers' deposition testimony can fill any gap in the record. Thus, this Court need not assume De Anda "was moving slowly, not towards officers, holding the knife in a non-threatening manner, over 28 feet away from officers[.]" Oppo at ECF p. 22.

8

make reasonable but mistaken judgments"). After attempts to de-escalate, De Anda ran toward a police vehicle and, despite observing uniformed and armed officers, ran directly toward the officers while armed and while refusing to comply with several commands to drop the knife. It was not until De Anda was within 20-25 feet that the first lethal shot was fired and the final shot was fired when De Anda was a few feet from the officers. Officer Mayen had six minutes and 22 seconds from his initial verbal contact with De Anda until De Anda started running towards the officers. Officer Rodriguez had one minute and 29 seconds from her initial position observing De Anda until De Anda started running towards her and her partner Officer Hernandez. At this point, De Anda abruptly stopped. After three to four seconds, De Anda advanced, knife in hand, towards Officer Rodriguez and Officer Mayen, even though he had various avenues of escape. Thus, in a fraction of a second, the officers were forced to use deadly force in a tense, uncertain, and rapidly evolving situation in order to stop De Anda's knife-wielding attack—a confrontation De Anda began when he rapidly advanced towards the officers.

Based on these undisputed facts, there can be no question that the officers were entitled to use lethal force to defend their lives and the lives of others. See *Hart,* 99 F.4th at 550 (reversing district court denial of qualified immunity and noting: "Officer Gomez's decision to fire was based on Hart's failure to comply with commands, his approach, and his possession of a lethal weapon. Plaintiffs' asserted factual disputes do not eliminate any of these core, undisputed circumstances. These undisputed facts are what led Officer Gomez to reasonably believe that Hart posed an immediate threat to both himself and his partner"); *Blanford v. Sacramento County*, 406 F.3d 1110, 1116 (9th Cir. 2005) (concluding that it was objectively reasonable for an officer to view an individual carrying a sword, attempting to enter a home, and failing to comply with verbal commands as an immediate threat, despite later determining that the individual lived in that home and did not hear the officer's commands because he wore headphones).

Plaintiffs' reliance on *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001) is misplaced. See Oppo at ECF pp. 18-19. In *Deorle*, Mrs. Deorle called 911 when her

1  husband began acting erratically and banging the walls of their home. *Id*. at 1276. A
2  special response team was called and observed Deorle for 30-40 minutes, during which
3  time although Deorle was verbally abusive to the officers, he generally complied with all
4  directives whenever he had anything in his hands, had not committed any crimes as he
5  was in his own home, and had never physically touched anyone. *Id*. at 1276-77. Ignoring
6  orders of on-site commanders, and without waiting for enroute crisis negotiators, Officer
7  Rutherford fired a bean bag at Deorle without warning, after Deorle had just complied
8  with Rutherford's commands, causing serious injury. *Id*. at 1277-78. Here, unlike *Deorle*,
9  officers did not have the luxury of waiting 30-40 minutes to observe De Anda, who was
10 already advancing towards them, knife in hand. And, here, unlike *Deorle*, De Anda
11 repeatedly refused commands to drop his weapon.

12       Plaintiffs' reliance on *Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018)
13 is similarly misplaced. See Oppo at ECF pp. 19-20, 26-27. Although the suspect in *Vos*
14 had been acting erratically prior to the officers' arrival, no officer believed Vos was
15 holding a gun and the officers had about 20 minutes from when they arrived until Vos
16 ran at them. *Id*. at 1032. Additionally, and perhaps most significantly, the officers in *Vos*
17 had the suspect surrounded and contained, with ample lesser alternative uses of force
18 available and waiting to be deployed, including a 40mm projectile launcher and a canine
19 unit. The fact that the officers had 20 minutes to develop and implement a tactical plan
20 with less-lethal alternatives, but chose not to use those alternatives, especially in light of
21 video evidence that did not conclusively demonstrate Vos was an imminent threat,
22 demonstrated the officers' unreasonableness in that case. *Id*. at 1032-33. Even with these
23 facts, because the officers may have made a mistake in their use of lethal force, the court
24 found the officers were entitled to qualified immunity. *Id*. at 1035-36.

25       Lastly, the declaration submitted by Plaintiffs' expert, see Dkt. 53-3, cannot create
26 a triable issue of material fact. The fact that an expert disagrees with an officer's actions
27 does not render the actions unreasonable. See *Reynolds v. County of San Diego*, 84 F.3d
28 1162, 1170 (9th Cir. 1995) (holding that expert testimony did not raise triable issue of

material fact on excessive force claim), overruled on another ground in *Acri v. Varian Associates, Inc.,* 114 F.3d 999 (9th Cir. 1997); *Martinez*, 47 Cal.App.4th at 348 (rejecting declaration from plaintiff's expert for "inappropriately drawing legal conclusions concerning such matters as the objective reasonableness of the deputies' conduct"); *Brown v. Ransweiler*, 171 Cal.App.4th 516, 530 (2009) (finding that several opinions offered by plaintiff's expert Roger Clark "appeared to be based on conjecture, rather than on actual evidence" and were not binding). In other words, Plaintiffs cannot avoid summary judgment "by simply producing an expert's report that an officer's conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless." *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 548 (9th Cir. 2010). Rather, this Court must decide as a matter of law whether a reasonable officer could have believed his conduct was justified. See *Billington v. Smith*, 292 F.3d 1177, 1188-99 (9th Cir. 2002), abrogated on other grounds by *County of Los Angeles v. Mendez*, 581 U.S. 420 (2017).

No evidence in this case supports the inference that, from the perspective of a reasonable officer on the scene, retreat was required or desirable. See *Brown*, 171 Cal.App.4th at 537 (expert's suggestion that officers could have attempted some other means of apprehending plaintiff was "pure conjecture" and did not show that officers' actual response was unreasonable); *Reed v. Hoy*, 909 F.2d 324, 331 (9th Cir. 1989) (imposing duty to retreat would "be inconsistent with police officers' duty to the public"), overruled on other grounds by *Virginia v. Moore*, 553 U.S. 164 (2008). While it is easy, with the benefit of hindsight, to suggest how the officers might have responded differently, the fact that they were making these decisions in real time and in response to rapidly changing circumstances must be considered when determining the reasonableness of their actions. See *Brown*, 171 Cal.App.4th at 537. Indeed, it is unreasonable to require officers in the field "to engage in the sort of complex calculus that would be necessary to determine the 'best' or most effective and least dangerous method of handling an immediate and dangerous situation, particularly when officers are forced to make split-second decisions under tense and often perilous conditions." *Id*. at 538.

## II. THERE IS NO *MONELL* LIABILITY

A *Monell* claim can be based on unconstitutional custom, practice, or policy; failure to train; and ratification. *Rodriguez v. Cnty. Of Los Angeles*, 891 F.3d 776, 802-03 (9th Cir. 2018). Nevertheless, the City cannot be held liable under *Monell* unless an officer has committed an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Johnson v. City of Seattle*, 474 F.3d 634, 638 (9th Cir. 2007) (government entities can be held liable under § 1983 only "if there is, at minimum, an underlying constitutional tort"). As detailed above, there were no underlying constitutional violations here. Furthermore, under a failure to train theory, Plaintiffs must show the City was on actual or constructive notice that its failure would likely result in the violation of constitutional rights. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). But Plaintiffs have not identified any specific failure or omission from the LAPD training program that they believe facilitated the officers' allegedly unconstitutional behavior. Nor do they describe specific incidents of prior conduct allegedly similar to the officers' conduct on September 13, 2023 such that the City was on notice of the obvious need for new or additional training. Although "single-incident" failure to train liability may be imposed where the unconstitutional consequences of this failure are so obvious that plaintiff need not show a pre-existing pattern of violations, *Connick v. Thompson*, 563 U.S. 51, 64 (2011), there is no evidence of that here. Lastly, to prove ratification, Plaintiffs must show "authorized policymakers approved a subordinate's decision and the basis for it." *Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999). There is no evidence of that here and the "mere failure to overrule a subordinate's actions, without more, is

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

12

insufficient" to establish liability under § 1983. *Sheehan v. City and County of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014).

DATED: April 14, 2025

HYDEE FELDSTEIN SOTO, City Attorney
DENISE C. MILLS, Chief Deputy City Attorney
KATHLEEN KENEALY, Chief Assistant City Attorney
CORY M. BRENTE, Senior Assistant City Attorney

By: /s/ *Christian R. Bojorquez*
CHRISTIAN R. BOJORQUEZ, Deputy City Attorney
*Attorneys for Defendants* CITY OF LOS ANGELES, JOSE ARTEAGA MAYEN, and KASSANDRA RODRIGUEZ