UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# JS-6

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | | N/A |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| N/A | | N/A |

**Proceedings:**   ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [42]

## I.    Introduction

Before the Court is Defendants City of Los Angeles, Jose Arteaga Mayen, and Kassandra Rodriguez's motion for summary judgment. ECF No. 42. For the following reasons, Defendants' motion is GRANTED.

## II.    Background[1]

On September 13, 2023, at around 8 p.m., the Los Angeles Police Department ("LAPD") received reports that a man armed with a knife was acting erratically. Def. Undisputed Material Facts ("DUMF") ¶¶ 1-4; Plaintiffs' Additional Material Facts ("PAMF") ¶¶ 62-63. The man, who would later be identified as Carlos De Anda (hereinafter, "De Anda"), was described on the LAPD broadcast as a "male Hispanic

---

[1] Normally, on summary judgment, the Court views the facts in the light most favorable to the non-moving party, which is Plaintiffs in this case. But when video footage of the events at issue are available, as is the case here, the Court will "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

:

| Initials of Preparer | PMC |
|---|---|

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

transient, 20's two-toned, dark blue upper white bottom, pink shorts, vandalizing vehicle's window, holding a knife, threw rocks at patrons." DUMF ¶ 4.

At 8:28 p.m., Defendant Officer Jose Mayen and Officer Matthew Morse arrived at a parking lot located mid-block on New Hampshire Avenue, between Pico Boulevard and 12th street. *Id.* ¶ 7. Both officers were wearing Body-Worn Videos which were activated and recording during the incident. *Id.* ¶ 5. Officer Mayen was armed with a standard-issue firearm, OC spray, and a taser. PAMF ¶ 111. He had a "40 mm launcher," a less lethal option than his standard firearm, in his vehicle. *Id.* ¶ 113. Officer Morse was armed with a 40 mm less lethal launcher. *Id.* ¶ 115.

The officers, who were positioned on the sidewalk on the other side of the parking lot's fence, observed De Anda enter the parking lot. DUMF ¶ 8. At 8:29:37 p.m., the officers observed De Anda reach down and arm himself with a knife. *Id.* ¶ 10. The knife was a total of 15 inches long with a 10-inch blade. *Id.* ¶ 10. Officer Mayen tried to communicate with De Anda. *Id.* ¶ 12. De Anda stated multiple times that he did not want to live. *Id.* ¶ 13. Officer Mayen then told Officer Morse to call for a mental health unit. PAMF ¶ 73.

At 8:33:23 p.m., Defendant Officer Kassandra Rodriguez and her partner Officer Cristian Hernandez, who were both wearing Body-Worn Video, arrived at the parking lot. DUMF ¶ 14. Officer Rodriguez was armed with a standard-issue firearm, OC spray, and a taser. PAMF ¶ 112. Like Officer Mayen, she had a 40 mm less lethal launcher in her vehicle. *Id.* Officer Hernandez, like Officer Morse, was armed with a 40 mm less lethal launcher. *Id.* ¶ 117.

Officers Rodriguez and Hernandez positioned themselves by the southern gate of the parking lot, which was open. DUMF ¶ 15. At this time, Officer Mayen was positioned north of Officer Rodriguez on New Hampshire Ave, in between the parking lot's southern and northern gates. Officer Mayen Body Worn Video ("Mayen BWV") 20:35:35-35:40. Officer Morse was positioned with Officer Mayen, just slightly to the North (farther away from the Southern gate than Officer Mayen). Below is a satellite view of the parking lot and the north and south gates.

:

| Initials of Preparer | PMC |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |



The two "M"'s mark Officers Morse and Mayen's approximate positions. The "R" and "H" mark Officers Rodriguez and Hernandez's approximate positions. And the "DA" marks De Anda's approximate position.

De Anda, who was inside of the parking lot, started advancing quickly towards the lot's southern gate where Officer Rodriguez was positioned. *Id.* at 20:35:40-35:50. As De Anda ran towards the southern

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

gate from inside the parking lot, Officer Mayen also ran south down the sidewalk towards Officer Rodriguez's position. *Id.* As he ran, he yelled at De Anda, in Spanish, to stop advancing.[2] *Id.*

Officer Rodriguez watched De Anda run towards her position at the Southern Gate. Officer Rodriguez Body Worn Video ("Rodriguez BWV") 20:35:40-35:50, Def. Mot. for Summ. J. Ex. 9. Rodriguez could see that De Anda was holding a knife in his right hand. *Id.* She drew her firearm and aimed it at De Anda. *Id.*

De Anda stopped 25-30 feet in front of Officer Rodriguez's position at the southern gate. Rodriguez BWV at 20:35:50-35:55. When De Anda stopped running, Officer Mayen stopped as well. Mayen BWV at 20:35:53. This positioned Officer Mayen to the north of Officer Rodriguez's position. *Id.* Because he had not yet reached the gate, the parking lot's fence stood in between Officer Mayen and De Anda. *Id.*

Over the next 3-4 seconds, De Anda started to walk back and forth, perpendicular to Rodriguez's position. Rodriguez BWV at 20:35:50-35:55. Rodriguez could see that he was looking in her direction and holding the knife in his right hand by his side. *Id.* Rodriguez twice shouted at De Anda to "put the knife down." *Id.* Officer Mayen shouted at De Anda to put the knife down, but in Spanish. Mayen BWV 20:35:53-35:55. De Anda did not comply with either command.

At this time, Officer Hernandez was also positioned at the southern gate but was positioned several feet behind Officer Rodriguez. *See* Mayen BWV at 20:35:54. When De Anda started running towards him and Officer Rodriguez, he dropped his less lethal 40 mm launcher and unholstered his firearm.[3] Inspector

---

[2] Plaintiffs dispute the accuracy of Defendant's translation of Mayan's communications with De Anda, many of which were in Spanish. While noted, the accuracy of Defendant's translation does not bear on the reasoning of this order. The Court only mentions it to provide context for the reader.

[3] Unlike Officers Mayen and Rodriguez, Officer Hernandez is not a defendant in this case. Nor are Plaintiffs challenging the reasonableness of his actions. Accordingly, the reasonableness of Hernandez's decision to replace his launcher with his firearm is not at issue in this case.

:

Initials of Preparer                    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

General Investigation at 23, Pl. Opp. to Def. Mot. for Summ. J. Ex. E, ECF No. 57-1. While De Anda was pacing back in forth in front of her, Officer Rodriguez did not know where Officer Hernandez was positioned. PAMF ¶ 180.

After 3-4 seconds of walking back and forth, De Anda again advanced towards Rodriguez. Rodriguez BWV at 20:35:55. After taking one step forward, Rodriguez fired her weapon. *Id.* at 20:35:56. After she fired the first shot, De Anda skipped forward. *Id.* She fired two more shots at De Anda, after which he fell to the ground. *Id.* at 20:35:56. After Officer Rodriguez fired at De Anda, Officer Hernandez moved forward to the entrance of the southern gate such that he was to the right of Officer Rodriguez, rather than behind her. Officer Mayen BWV at 20:35:58.

Two seconds before De Anda started advancing towards Rodriguez, Officer Mayen ran from his position just north of the southern gate to Rodriguez's position in front of the gate. *Id.* at 20:35:54-56. He arrived at the southern gate at the exact moment that De Anda began to advance towards Rodriguez. *Id.* at 20:35:56. After Rodriguez fired her first shot, and after De Anda continued to move forward, Mayen fired two shots at De Anda. *Id.* at 20:35:57. The officers then secured the knife from De Anda and provided medical attention. DF ¶¶ 30-61. De Anda, however, died from his wounds.

Officer Morse, who was positioned to the North of Officer Mayen and had followed Mayen to the Southern gate, arrived at the scene a few seconds after the shooting occurred. Officer Morse Body Worn ("Morse BWV") 20:36:00-36:10, Def. Mot. for Summ. J. Ex. 12. At no point during the incident did Officer Morse have a clear shot at De Anda. *See id.*; Mayen BWV 20:35:20-36:00; *see also* Inspector General Correspondence to the Honorable Board of Police Commissioners at 22-23, ECF No. 57-1.

After the shooting, the LAPD and other associated entities investigated the incident. Together, the Use of Force Review Board, Chief of Police, Inspector General, and Board of Police Commissioners reviewed the available evidence and concluded that Officer Rodriguez and Mayen's conduct did not violate department policy. *See* PAMF ¶ 172 (collecting the investigative reports).

:

| Initials of Preparer | PMC |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

On September 6, 2024, Plaintiffs M.B. and L.D. (acting by and through their respective guardians, Nayelli Bautista and Jasmin Trinidad) brought a litany of claims against Defendants regarding De Anda's death. ECF No. 1. In December 2024, the Court bifurcated Plaintiffs' state and federal claims. ECF No. 25. Plaintiffs amended their complaint on January 17, 2025. ECF No. 33. On March 17, 2025, Defendant moved for summary judgment on Plaintiffs' four federal claims: (1) excessive force under 42 U.S.C. § 1983; (2) denial of familial relationship under the 14th Amendment; (3) *Monell* claims based on municipal ratification; and (4) *Monell* claims based on inadequate training. ECF No. 42.

### III.    Legal Standard

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the factual record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its initial burden, the non-moving party must demonstrate with admissible evidence that genuine issues of material fact exist. Matsushita Elec. *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56 . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). "On an issue as to which the nonmoving party will have the burden of proof . . . the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Id.*

A material fact for purposes of summary judgment is one that "might affect the outcome of the suit" under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although a court must draw all inferences from the facts in the non-movant's favor, *id.* at 255, when the non-moving party's version of the facts is "blatantly contradicted by the record, so

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

that no reasonable jury could believe it, [the] court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV.   Discussion

### A.  Excessive Force

Plaintiffs bring claims under Section 1983 for excessive force against Officers Mayen and Rodriguez (collectively, "the Officers"). Defendants raise two defenses on summary judgment: (1) Officers Mayen and Rodriguez did not use excessive force as a matter of law; and (2) the officers are entitled to qualified immunity. *See* ECF No. 42. If Defendants prevail on either argument, the Court must grant summary judgment for Defendants. Because "qualified immunity is to be determined at the earliest possible point in the litigation," the Court will begin its analysis there. *Est. of Lopez v. Gelhaus*, 871 F.3d 998, 1021 (9th Cir. 2017).

### i.      Qualified Immunity

"Qualified immunity protects government officials [(including police officers)] from suit unless '(1) they have violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Hart v. City of Redwood*, 99 F.4th 543, 549 (9th Cir. 2024) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018)).

While qualified immunity is a two-pronged analysis, courts have discretion "in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 239 (2009). For example, where "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," the court could begin their analysis with the second prong of qualified immunity. *See id.* at 237. By starting with the more settled element, the court avoids "substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Id.*

:

| Initials of Preparer | PMC |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
| --- | --- | --- | --- |
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

In this case, the Court will begin (and end) its qualified immunity analysis with the second element: whether the unlawfulness of the Officers' conduct was clearly established. For the reasons outlined below, Plaintiffs' excessive force claim fails at this step.

### a. It was not clearly established that the Officers' use of force was unconstitutional.

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Perez v. City of Fresno*, 98 F.4th 919, 924 (9th Cir. 2024) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "[T]here need not be 'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Hart*, 99 F.4th at 555 (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011)). "While in the 'rare' case a clearly established right may be obvious, clearly establishing a right usually requires 'controlling authority or a robust consensus of cases of persuasive authority.'" *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018)). The "burden is on Plaintiffs to make the showing" of qualified immunity. *Id.*

Importantly, the Supreme Court has made clear that "clearly established law should not be defined at a high level of generality." *White v. Pauly*, 580 U.S. 73, 79 (2017). This need for "[s]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Kisela v. Hughes*, 584 U.S. 100, 104 (2019). Because "[u]se of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' . . . police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Id.* Indeed, "it does not suffice for a court to simply state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness." *Id.* at 105.

| | : |
| --- | --- |
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | | Date | April 29, 2025 |
|---|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | | |

Here, the conduct at issue is the Officers' use of lethal force on De Anda, who approached the Officers while holding a knife. To start, it is certainly well established that "[l]aw enforcement officers may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed." *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997). But conversely, it is also well established that an "officer's use of deadly force is reasonable [] if the 'officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994) (quoting *Tennessee v. Garner*, 471 U.S. 1, 3 (1985)).

Accordingly, the question for the Court is whether it was well-established that, given the circumstances of this case, there was no probable cause to believe that De Anda posed a significant threat of death or serious physical injury to the Officers. Answering this question necessarily requires diving into the specific circumstances surrounding the Officers' actions.

The following facts are undisputed or arise from review the officers' body worn videos.[4] In short, at the incident, De Anda ran towards Officer Rodriguez while holding a visible knife by his side. He stopped 25-30 feet away from her and paced back and forth for three seconds. Officers Rodriguez and Mayen yelled at De Anda to drop the knife and stop advancing. De Anda did neither. Instead, he took one step towards Officer Rodriguez. Officer Rodriguez shot once. After the first shot, De Anda continued to move towards her, leading her to fire two more times. Officer Mayen, who watched De Anda advance towards Officer Rodriguez while holding the knife, shot De Anda twice.

With the circumstances of the case defined, the next step is to determine whether "existing precedent 'squarely governs' the specific facts at issue." *Kisela*, 584 U.S. at 104. Plaintiffs bear the burden of making this showing. *Hart*, 99 F.4th at 557 ("Plaintiffs have the burden of showing that the law was clearly established.").

---

[4] Because video footage of the Officers' action is available, the Court will "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

|  |  | : |  |
|---|---|---|---|
| Initials of Preparer | | PMC | |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | | Date | April 29, 2025 |
|---|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | | |

### a) The cases cited by Plaintiffs do not clearly establish that the Officers' actions were unconstitutional.

This is where Plaintiffs' claim fails. It is not well established that the Officers use of lethal force on De Anda violated the Fourth Amendment. None of the cases Plaintiffs identify would have put the Officers on notice that their use of force would be unlawful.

### *Johnson v. Myers*, 129 F.4th 1189 (9th Cir. 2025)

Plaintiffs first cite *Johnson v. Myers*, 129 F.4th 1189 (9th Cir. 2025). But right off the bat, this case is not useful to Plaintiffs' case. *Johnson* was decided in 2025. The events of this case happened in 2023. Because *Johnson* was decided after the Officers' use of force, it is not evidence that the "violative nature of [the Officers'] particular conduct [was] clearly established." *al-Kidd*, 563 U.S. at 741-42.

Even if the Court views *Johnson* as just an illustrative example of how to conduct its "clearly established right" analysis, it is still unpersuasive, as its facts differ meaningfully from the facts of this case. In *Johnson*, officers responded to a domestic violence call in which a woman claimed that a man, Smith, was threatening to kill her with a knife. 129 F.4th at 1192. Four officers came to the woman's home. *Id.* After they kicked open the front door, they saw Smith standing in the hallway with a knife in his hand. *Id.* Over the next five seconds, the officers shouted overlapping commands. *Id.* Smith took a few steps forward towards the officers, but then stopped. *Id.* at 1196. He then "rais[ed] his right hand, holding a pocketknife, in compliance with the officers command to raise his hands." *Id.* He never "pointed the knife at the officers or made any aggressive moves towards them." *Id.* Despite this, the officers shot and killed Smith. *Id.* at 1192.

This case is different. Unlike Smith, who attempted to comply with the officers' commands, De Anda did not comply with the Officers' commands to drop the knife. Rather, he advanced towards the

| | : | |
|---|---|---|
| | | |
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|----------|----------------------|------|----------------|

| Title | *M.B. et al. v. City of Los Angeles et al.* |
|-------|---------------------------------------------|

Officers knife in hand.[5] Not only that, but De Anda ***continued*** to move towards the Officers even after Officer Rodriguez fired the first shot. By contrast, in *Johnson*, Smith was not moving towards the police at the time of the shooting. 129 F.4th at 1196. That it is unconstitutional to use deadly force on a man "standing still in his own hallway and raising his right hand in compliance with the officers' command to raise his hands" does not render it "clearly established" that the Officers' conduct in this case was unconstitutional. *See id.*

### ***Tan Lam v. City of Los Banos*, 976 F.3d 986 (9th Cir. 2020)**

Plaintiffs' citation to *Tan Lam v. City of Los Banos*, 976 F.3d 986 (9th Cir. 2020) is no more persuasive. There, an individual suffering from mental health issues, "Sonny," stabbed a police officer in the arm with a pair of scissors. *Id.* at 992. The officer responded by shooting Sonny in the calf, which the Court held was "an objectively reasonable use of force." *Id.* at 992, 999. But then, after the officer retreated away from Sonny, he fired a second shot even though Sonny "was injured and was [no longer] approaching [the officer] with scissors." *Id.* at 999. The Court held that this second shot, which killed Sonny, was unreasonable because "Sonny no longer posed an immediate threat." *Id.*

The differences between *Tan Lam* and this case are obvious. In *Tan Lam*, the officer shot an ***unarmed*** and injured individual. *See id.* De Anda, by contrast, was armed with a knife when the Officers' shot him. That it is excessive force to shoot an unarmed individual does not make it "beyond debate" that it is unconstitutional to shoot an individual approaching police officers while holding a knife, as is the case here. *al-Kidd*, 563 U.S. at 741.

---

[5] Plaintiffs spend much time disputing the speed at which De Anda approached the Officers. But regardless of whether De Anda moved slowly or quickly towards the Officers, it is undisputed that De Anda advanced towards them.

:

| Initials of Preparer | PMC |
|----------------------|-----|

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

### *Glenn v. Washington Cnty.*, 673 F.3d 864 (9th Cir. 2011)

*Glenn v. Washington Cnty.*, 673 F.3d 864 (9th Cir. 2011) is also insufficiently similar to this case. In *Glenn*, officers surrounded a teenager, Lukus, who was holding a pocketknife to his neck and threatening to kill himself. *Id.* at 867. Lukus "stayed in the same position from the time officers arrived and took no threatening actions (other than noncompliance with shouted orders)." *Id.* at 874. The officers eventually shot Lukus with beanbag guns, which caused him to take "one or two steps." *Id.* at 869. Officers then opened fire, killing him. *Id.* The Court held that the officers used excessive force. *Id.* at 874-75.

This case is again different. De Anda was not simply holding a knife and standing still—he approached the officers with the knife while failing to comply with the Officers' commands. *Glenn*'s holding is thus unhelpful to Plaintiffs' qualified immunity argument.

### *Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018)

Next, Plaintiffs cite *Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018). This is admittedly the closest match to the current case, but it still fails to defeat qualified immunity. In *Vos*, officers saw an individual, Vos, standing inside a 7-Eleven, yelling and "pretending to have a gun." *Id.* at 1029. The officers spent 20 minutes creating a plan of action, which included a plan to "us[e] non-lethal force to subdue Vos." *Id.* Multiple officers, including one bearing "a 40-millimeter less-lethal projectile launcher," entered the 7-Eleven to engage Vos. *Id.* When they entered, Vos ran towards the police officers stationed outside the 7-11 while holding what the officers initially believed to be scissors (it later turned out to be a "pronged metal display hook"). *Id.* at 1029-30. When Vos was 30 feet away, the lead officer shouted "shoot him," intending to direct that order only to the officer holding a less-lethal weapon. *Id.* That officer fired, but so did two other officers wielding AR-15 rifles. *Id.* Vos was struck by the bullets and died. *Id.* at 1030. The Court held that the officers used unreasonable force. *Id.* at 1032.

While *Vos* is certainly the closet factual match to the present case of the cases cited by Plaintiffs, it still differs from this case in meaningful ways. In *Vos*, the court emphasized in its reasoning that the

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

officers force was unreasonable because they "had surrounded the front door to the 7-Eleven" and "had less-lethal methods available to stop Vos from charging." *Id.* at 1032. Those facts are not present here. To start, neither Officer Mayen nor Officer Rodriguez—the officers who used lethal force—carried a less-lethal 40mm launcher at the time of the shooting. And while Officer Hernandez initially wielded a less-lethal 40 mm launcher, he dropped it and replaced it with his firearm once De Anda started running towards his position. ECF No. 57-1 at 23. Moreover, it is undisputed that Officer Rodriguez did not know where Officer Hernandez was at the time of shooting. PAMF ¶ 180. So, unlike *Vos*, where the officers who fired their AR-15s knew that the officer beside them could subdue Vos with a less-lethal launcher, Officer Rodriguez had no idea if Officer Hernandez was available to use similarly less-lethal force. *See id.*; 892 F.3d at 1029-30. Also unlike *Vos*, where at least one officer with a clear shot at Vos wielded a less-lethal launcher, no officer with a clear shot of De Anda carried a launcher; not one of Officers Rodriguez, Mayen, or Hernandez carried a 40mm launcher at the time of the shooting. And while Officer Morse also wielded a less-lethal 40 mm launcher, he was too far away from De Anda to help the Officers. Inspector General Correspondence to the Honorable Board of Police Commissioners at 22-23, ECF No. 57-1.

Also important is that the officers in *Vos* had twenty minutes to set up a perimeter and develop a tactical plan. 892 F.3d at 1029-30. Here, by contrast, Officer Rodriguez stood with just one fellow officer (whose exact location she did not know) when De Anda approached her. Rodriguez BWV 20:35:40-58; PAMF ¶ 180. And she only had one minute and 29 seconds from her initial position observing De Anda until he started running at her. Rodriguez BMW 20:34:00-35:58. Together, the differences between *Vos* and this case are such that *Vos* does not "squarely govern" the specific facts of this case and does not give the Officers notice that their conduct was unconstitutional. *Kisela*, 584 U.S. at 104.

### *S.B. v. Cnty. of San Diego*, 864 F.3d 1010 (9th Cir. 2017)

Plaintiff's final citation is to *S.B. v. Cnty. of San Diego*, 864 F.3d 1010 (9th Cir. 2017), and it also fails to sufficiently match the facts of the present case. In *S.B.*, officers confronted a man (hereinafter, "Brown") kneeling on the ground with knives in his pockets. *Id.* at 1012. Brown grabbed a knife from his

:

| Initials of Preparer | PMC |
|---|---|

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

back pocket. *Id.* at 1014. As soon as Brown touched the knife, an officer, who stood 6-8 feet away, shot him without ordering him to drop the knife or warning that he was about to be shot. *Id.* The officer had a taser on his person but did not use it. *Id.*

Once again, *S.B.* is different than this case. In *S.B.*, the officers shot Brown while he was on his knees (i.e., not advancing towards the police) and without any instruction to drop the knife. *Id.* In this case, the Officers shot De Anda only after he advanced towards them, and they did so after De Anda ignored instructions to drop his knife. Rodriguez BWV 20:35:45-35:58. Moreover, while a taser may have been an effective weapon on Brown, who was 6-8 feet away from the officer and not moving, a taser would be meaningfully less effective in this case, as De Anda was more than 20 feet away and a moving target. To put it simply, that it is unconstitutional to shoot an armed man kneeling on the ground does not make it "clearly established" that it is unconstitutional to shoot an armed man advancing towards the police.

In sum, Plaintiffs fail to satisfy their burden of identifying "existing precedent [that] squarely governs the specific facts at issue." *Kisela*, 584 U.S. at 104. The Court thus holds that the Officers are entitled to qualified immunity.

### b) Ninth Circuit case law supports finding qualified immunity in this case.

This holding is consistent with Ninth Circuit precedent, especially the court's recent decision in *Hart v. City of Redwood*, 99 F.4th 543 (9th Cir. 2024). There, two officers confronted a man, "Hart", holding a knife in his backyard. *Id.* at 546. Like the Officers in this case, the two officers told Hart to drop the knife. *Id.* at 546. And just like De Anda, Hart did not. *Id.* Rather, he "approached the officers, holding the knife out towards them." *Id.* at 549. Once Hart was 8-10 feet away, one officer fired a taser (which missed Hart). *Id.* at 546. At the same time[6], the other shot Hart with a standard issue firearm, killing him.

---

[6] In *Hart*, the parties disputed whether the officers shot the firearm and taser at the same time. *Id.* at 546. Because the court was

Initials of Preparer        PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

*Id.* The Court held for the officers on both prongs of qualified immunity: holding that the officers used reasonable force and, even if they did not, that any constitutional violation was not clearly established. *Id.* at 549-557.

While not factually identical, this case is meaningfully similar to the present case. In both cases, officers were confronted with an individual approaching them while holding a knife. In both cases, the officers instructed the man to drop the knife, and he did not. And in both cases, neither decedent ran at the police,[7] verbally threatened the police, or made slashing movements with their knives.

The primary difference between the cases is that the officers in *Hart* fired when the man was 10 feet away, while the Officers in this case shot De Anda when he was 25-30 feet away. While this is not an inconsequential difference, it is not dispositive. There is no black and white rule that the police must wait for an armed and threatening individual to get within a certain distance before protecting themselves. "A reasonable officer need not await the glint of steel before taking self-protective action[.]" *Estate of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008).

Most importantly, this difference is not reason for the Court to differ from *Hart*'s finding on qualified immunity. Yes, the officers in *Hart* shot from 10 feet away while the officers in this case shot

---

obliged to view the facts in the light most favorable to the plaintiff, the Court assumed that the officers fired the firearm and taser simultaneously. Because of this, the court did not consider the officers' use of a taser in its analysis. This, of course, makes sense. At the time the officer fired his firearm, the other officer had not yet used a taser. So, that the taser would ultimately prove ineffective was not relevant to whether the officer who used a firearm faced an imminent threat of harm. Because *Hart* did not consider the officer's use of a taser in its analysis, that an officer in *Hart* fired a taser and the Officers in this case did not is not a meaningful distinction between the cases.

[7] The Court notes that in Defendant's view, De Anda did run at the police. And to be sure, based on the Body Worn Video, there is no disputing that De Anda ran at the police prior to stopping 25-30 feet away from them. It is less certain whether, after stopping for 3-4 seconds, De Anda "ran" at the Officers, or merely advanced towards them. At this procedural posture, the Court must view the facts in the light most favorable to Plaintiffs, and thus finds that De Anda did not run at this moment. That said, this is ultimately a moot point. The Court's analysis assumes that De Anda merely advanced towards the police at the time he was shot, and it still holds that qualified immunity applies.

:

Initials of Preparer                    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

from 25 to 30 feet. But it is not clearly established that this is a dispositive difference. It is not "beyond debate" that use of lethal force is reasonable when the armed individual is 10 feet away but unreasonable when they are 30 feet away. *Al-Kidd*, 563 U.S. at 741. The question of reasonableness depends on whether the armed individual poses an objective threat. This question will not track perfectly with the distance between the police and the armed person. Sometimes an armed individual who is 10 feet away will not pose an objective threat. And sometimes an armed individual who is 40 feet away will. While the decedents in *Hart* and this case may have been different distances away at the time of the shooting, the threats they posed to the Officers were the same—both sets of Officers faced a man advancing towards them with a knife despite instructions to stop. So, just as the court in *Hart* held that the officers "did not violate clearly established law," so too will the Court in this case. *See* 99 F.4th at 555.

This conclusion is bolstered by the fact that in the two most analogous cases cited by Plaintiffs— *Vos v. City of Newport Beach* and *S.B. v. Cnty. of San Diego*—the courts held that the officers at issue were protected by qualified immunity, as any potential use of excessive force was not "clearly established" as unconstitutional. That even the cases most favorable to Plaintiffs find qualified immunity underscores the Court's conclusion that there was no "clearly established" constitutional violation in this case.

In sum, the Court holds that even if the Officers' conduct violated De Anda's right to be free of excessive force, that the Officers did not violate clearly established law. Because the Court makes this holding, it need not evaluate whether the Officers did indeed violate De Anda's Fourth Amendment rights; the Officers are protected by qualified immunity either way. Accordingly, the Court grants summary judgment for Defendants on Plaintiffs' excessive force claim.

### B.  14th Amendment Claim

In addition to their Fourth Amendment excessive force claim, Plaintiffs also bring due process claims against the Officers under the Fourteenth Amendment for denial of a familial relationship, namely, interference in Plaintiffs' relationship with their father, De Anda. *See* FAC at 11, ECF No. 33.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

"Parents and children have a well-established constitutional right to live together without government interference." *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000). "That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in emergency." *Id.*

To state a claim under the Fourteenth amendment for interference with a familial association, the conduct that deprives the plaintiff of their familial interest must "shock the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) ("[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation."). If the potentially unlawful conduct at issue is the use of excessive force, determination of whether the conduct "shocks the conscience" turns into a three-step inquiry.

First, as a threshold issue, the Court must determine that the defendant officer used excessive force. *See id.*; *see also J.P. v. City of Porterville*, 801 F. Supp. 965, 988-989 (E.D. Cal. 2011) ("Where a claim for interference with familial relationships is integrally predicated upon, or entwined with, other conduct that is alleged to be unconstitutional, a finding that the other conduct was constitutional generally will preclude recovery for interference with familial relationship.").

Second and third, if there is excessive force, the court must ask "whether the circumstances are such that actual deliberation [by the officer] is practical" before the use of force. *Porter*, 546 F.3d at 1137. If "actual deliberation is practical," then the Court moves on to step three: whether the officer acted with "deliberate indifference." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). If so, then the officer's conduct shocks the conscience. *Id.* "On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.*

Here, Plaintiffs' claim fails on step two: the Officers' conduct did not shock the conscience.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

### i.       Actual deliberation was not practical in this case.

Actual deliberation is impractical when an officer faces a "quickly evolving and escalating" situation that prompts "repeated split-second decisions" that presents "public safety obligations." *Id.* That is exactly the case here. Less than two minutes elapsed between Officer Rodriguez arriving on the scene and the shooting. *See* Rodriguez BWV 20:34:00-36:00. More relevantly, less than 20 seconds elapsed between when De Anda started running[8] towards Rodriguez and the shooting. *See id.* And less than 5 seconds elapsed between De Anda stopping, knife in hand, in front of Officer Rodriguez and him continuing to advance towards her. *See id.* That is the type of "quickly evolving and escalating" situation in which actual deliberation is impractical.[9] *See Diaz v. Cnty. of Ventura*, 512 F. Supp. 3d 1030, 1047 (C.D. Cal. 2021) (holding that "actual deliberation" was not practical before using lethal force when a potentially armed man, after an "approximately hour-long standoff" and "a lengthy car chase," began advancing towards an officer).

To be sure, more than five minutes elapsed between Officer Mayen arriving on the scene and the shooting. But this does not mean that actual deliberation was practical. The Ninth Circuit has explained "that 'deliberation' should not be interpreted in the narrow, technical sense, reasoning that the Supreme Court had [found that actual deliberation was impractical] even in cases where an officer giving chase could have deliberated while pursuing the suspect. Instead, the heightened purpose-to-harm standard applies where a suspect's . . . actions force the officers to act quickly." *Wilkinson*, 610 F.3d at 554. So, just as in *Porter*, where that the altercation between the police and the decedent lasted five minutes did

---

[8] While the Court acknowledges that there is reasonable dispute as to the speed that De Anda approached Officer Rodriguez after briefly stopping 25-30 feet in front of her, there is no reasonable dispute as to the speed De Anda moved prior to stopping in front of her. The Officers' Body Worn Video clearly shows De Anda running from the middle of the parking lot towards Officer Rodriguez's position. *See* Rodriguez BWV 20:35:30-50; Mayen BWV 20:35:30-50.

[9] Plaintiffs contend that there is a genuine dispute of fact regarding whether actual deliberation was practical. But the facts underlying the Court's reasoning are not in dispute: the Officers body worn videos "speak for [themselves]." *Scott v. Harris*, 550 U.S. 372, 378 n.5 (2007)). When such footage is available, and there is no reason to doubt its authenticity, the Court will "view[] the facts in the light depicted by the videotape." *Id.* at 381.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

not necessarily mean that actual deliberation was practical, that Officer Mayen spent 7 minutes watching De Anda move around harmlessly before the incident escalated does not mean that deliberation was practical either. *See* 546 F.3d at 1139. Quite the contrary, less than 20 seconds elapsed between Officer Mayen observing De Anda running towards Officer Rodriguez and the shooting. *See* Mayen BWV at 20:35:40-36:00. In other words, at the time of the shooting, Mayen faced a "quickly evolving and escalating" situation that prompted "repeated split-second decisions" and presented "public safety obligations"—i.e., the exact type of situation where actual deliberation is impractical. *See Porter*, 546 F.3d at 1139.

### ii.    The Officers did not act with a purpose to harm.

Because actual deliberation was not practical, the Officers "conduct may only be found to shock the conscience if [they] act[ed] with a purpose to harm unrelated to legitimate law enforcement objectives." *Wilkinson*, 610 F.3d at 554. Plaintiffs make no argument on this point. And for good reason. There is simply no evidence that the Officers acted with a purpose to harm. De Anda advanced towards Rodriguez while holding a knife. The purpose of using force in that situation is obvious: to prevent De Anda from potentially harming police officers.

Accordingly, because actual deliberation was not impractical and the Officers did not act with a purpose to harm, the Court must hold that the Officers' conduct did not shock the conscience. Plaintiffs' 14th Amendment claim thus fails, and the Court will grant summary judgment on this claim for Defendants.

### C. *Monell*

Finally, Plaintiffs bring claims against the City of Los Angeles (the "City"). Of course, "[a] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But that does not mean municipalities are not immune from Section

:

| Initials of Preparer | PMC |
|---|---|

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

1983 liability. Rather, a "local government is liable for an injury under Section 1983 under three possible theories." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018).

"First, a local government may be liable if 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicted the injury.'" *Id.* (quoting *Monell*, 436 U.S. at 694). "Second, a local government can fail to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right[.]" *Id.* "Third, a local government may be held liable if 'the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at 802-03 (quotations omitted).

Plaintiffs bring *Monell* claims under the second and third theories: (1) that the City failed to adequately train its police officers; and (2) that the City ratified the Officers' allegedly unconstitutional actions. The Court will address each theory in turn.[10]

### i.    Failure to Train

To establish a *Monell* claim for failure to train, courts apply a three-part test. "First, it must be determined whether the existing training program is adequate." *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989). "A training program will be deemed adequate if it 'enables officers to respond properly to the usual and recurring situations with which they must deal.'" *Id.* (quotations omitted).

---

[10] The Court notes that a prerequisite for these claims is that the Officers did indeed commit constitutional violations. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[N]either [*Monell*] nor any other of [the Supreme Court's] cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."). So far, the Court has not had to consider that issue, and it does not need to do so here. Even if Plaintiffs could establish that the Officers committed constitutional violations, they fail, for the reasons explained below, to bring evidence sufficient to support their *Monell* claims. The Court therefore does not need to decide whether the Officers violated De Anda's Fourth Amendment rights.

:

Initials of Preparer        PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|----------|------------------------|------|----------------|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

Second, the failure to train must "amount[] to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* "This heightened degree of culpability on the party of a municipality may be established when the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.*

Third and finally, the "inadequate training that manifests a deliberate indifference on the part of a municipality must be shown to have 'actually caused' the constitutional deprivation at issue." *Id.*

Plaintiffs fail to establish any of these elements. Their theory is essentially that official LAPD policy, if followed, would have resulted in the Officers taking De Anda into custody without killing him. So, by failing to take De Anda into custody, the Officers did not comply with basic officer training. And this, according to Plaintiffs, creates a genuine dispute as to whether the City provided adequate training in the first place. Put simply, Plaintiffs' evidence of a failure to train is that the Officers' violated basic training/LAPD policy by shooting De Anda.

But "[a]n officer's failure to follow a [department] policy . . . does not itself indicate a failure to train." *Roy v. Contra Costa Cnty.*, No. 15-cv-02672, 2016 WL 54119, at *6 (N.D. Cal. Jan. 5, 2016), *aff'd*, 694 F. App'x 536 (9th Cir. 2017). Indeed, "[t]hat a particular officer [(or, as in this case, officers)] may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings have resulted from factors other than a faulty training program." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390-91 (1989). "It may be, for example, that an otherwise sound program has occasionally been negligently administered." *Id.* at 391. After all, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.*

Moreover, not only is Plaintiffs' theory of liability foreclosed by binding case law, but they fail to bring any evidence to establish the three prongs of a failure to train claim. To start, Plaintiffs bring no

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|----------|----------------------|------|----------------|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

evidence regarding the adequacy of the City's training program. Rather, they just ask the Court to infer that the training program is inadequate because the Officers allegedly violated LAPD policy. For reasons already explained, that argument is not persuasive.

Plaintiffs' evidence is similarly deficient when it comes to the second prong of a failure to train claim: deliberate indifference by the City. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of a failure to train." *Connick v. Thompson*, 563 U.S 51, 62 (2011). Plaintiffs bring no evidence of similar constitutional violations by the City.

To be sure, the rare exception to this requirement is where "the unconstitutional consequences of failing to train [are] so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 62, 64. Such a case could be "the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Id.* at 63. But Plaintiffs supply no evidence that this rare exception applies either.

And as to the third prong of a failure to train claim—causation—Plaintiffs again fail to bring any relevant evidence. So even if they did show an inadequate training program, and even if they did show that the City was deliberately indifferent to that inadequacy, Plaintiffs claim still fails because they have no evidence connecting the inadequate training program to the allegedly unconstitutional conduct at issue.

Accordingly, for the reasons explained above, the Court grants summary judgment for Defendants on Plaintiffs' failure to train claim.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|----------|------------------------|------|----------------|

| Title | *M.B. et al. v. City of Los Angeles et al.* |
|-------|---------------------------------------------|

ii.     **Ratification**

Plaintiffs' second theory of *Monell* liability is that the City ratified the Officers' allegedly unconstitutional actions. A municipality may be liable for "an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). "To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *Id.*

Importantly, because the policy maker must "have knowledge of the constitutional violation and actually approve of it," the "mere failure to overrule a subordinate's actions, without more, is insufficient" to show ratification. *Sheehan v. City and County of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part, on other grounds*, *City & Cty. of San Francisco, Calif. V. Sheehan*, 135 S. Ct. 1765 (2015). Similarly, "failing to discipline the employees who violated [the plaintiff's] constitutional rights," without more, is also insufficient. *Clouthier v. County of Contra Costa*, 591 F.3d 1231, 1253 (9th Cir. 2010), *rev'd on other grounds*, *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

Here, Plaintiffs' evidence of ratification is that various authorities (specifically, the City's Use of Force Review Board, the Chief of Police, the City's Inspector General, and the Board of Police Commissioners) investigated the incident and found that the Officers' conduct did not violate legal or departmental standards. *See* PAMF ¶ 172. As the Court will explain below, this is insufficient to show ratification.

The Ninth Circuit has found that a police investigation can constitute a "conscious, affirmative choice" to ratify unconstitutional conduct, but only when the plaintiff supplied evidence beyond just the investigation itself. For example, in *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991), the court held that the police's investigation into the plaintiff's excessive force complaint, and their subsequent finding that no misconduct occurred, could serve as evidence of ratification because the investigation was obviously flawed. To start, the investigation was conducted by the unit responsible for the alleged constitutional violation. *Id.* at 647. It also contained holes and inconsistencies "that should have been

|  |  : |
|--|----|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

visible to any reasonable police administrator." *Id.* The Chief of Police did not question the investigation but, rather, accepted the results. *Id.* at 635. Moreover, this flawed investigation was not an isolated incident. A two-year study of LAPD complaints showed that it was "almost impossible for a police officer to suffer discipline as a result of a complaint lodged by a citizen." *Id.* at 647. Because of these flawed investigations, a reasonable jury could find that LAPD was indeed aware that officers were engaging in unconstitutional conduct but were nonetheless finding no violations in their investigations. As the Ninth Circuit put it, this was evidence that the LAPD had a "policy or custom of condonation of, and acquiescence in, the use of excessive force by its officers." *Id.*

The "something more" in *Larez* (i.e., the obviously flawed investigation) that justified ratification is not present in this case. There is no evidence of wrongdoing or faulty investigation by any of the departmental entities that investigated the Officers' conduct. Rather, there is simply the fact that departmental entities investigated the Officers' conduct and found no policy violations. Courts in the Ninth Circuit have consistently held that this is not sufficient for ratification. *See, e.g.*, *Garcia v. City of Imperial*, No. 08-cv-2357, 2010 WL 3911457, at *2 (S.D. Cal. Oct. 4, 2010) ("[I]n order for there to be ratification, there must be 'something more' than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures."); *Tacci v. City of Morgan Hill*, No. 11-cv-04684, 2012 WL 195054, at *8 (N.D. Cal. Jan. 23, 2012) ("The court . . . cannot find that the police chief's letter[, which found no misconduct by the police officers,] alone constitutes a ratification of the subordinate officer's actions."); *Victory v. Henderson NA P.D.*, No. 2:23-cv-02086, 2024 WL 3992326, at *2 (D. Nev. Aug. 29, 2024) (holding that allegations that "the police department found after an investigation that the police officers 'did not commit any act of misconduct as alleged'" was "not . . . sufficient to state a claim for municipal liability"); *Aguilar v. City of Los Angeles*, No. 17-cv-4382, 2018 WL 6016278, at *10 (C.D. Cal. Sept. 10, 2018) (holding that "Chief of Police and Board of Commissioners' findings that Defendants' actions complied with policies during a single, after-the-fact, internal investigation cannot be the sole basis for a ratification claim").

Moreover, analysis of the actual reports cited by Plaintiffs make clear that the City did not ratify unconstitutional conduct, as the report's factual findings do not describe conduct that is plainly

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | | Date | April 29, 2025 |
|---|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | | |

unconstitutional. The reports cited by Plaintiffs, which were based upon a review of the available evidence, including the Officers' body worn videos, largely agree with the Officers' characterization of events. For example, the Inspector General's investigation found that De Anda "abruptly ran toward the south gate entrance with the knife in his right hand, where Officers Hernandez, Arteaga Mayen, and Rodriguez were positioned." Inspector General Report at 24, ECF No. 57-1. The Chief of Police report found that "De Anda, still armed with a knife, ran towards officers." *Id.* at 44. Likewise, the Board of Police Commissioners reviewed the evidence and concluded that "[De Anda] abruptly ran toward the south gate entrance with the knife in his right hand, where [the Officers] were positioned." Board of Police Commissioners Report at 8, Pl. Opposition Ex. P, ECF No. 53-13. And the Use of Force Review Board and Board of Police Commissioners found that "an officer with similar training and experience as [the Officers] in the same situation, would reasonably believe the use of lethal force was objectively reasonable, proportional and necessary." *Id.* at 22-23.

The facts presented to the departmental entities, which plainly present De Anda as an imminent threat to the Officers' safety, would not indicate to any reasonable administrator that the shooting was improper. Because of this, the Court cannot conclude on the basis of the department investigations alone that the City had knowledge of a constitutional violation—a prerequisite for finding ratification. *Sheehan*, 743 F.3d at 1231.

This is, of course, consistent with the Court's own analysis on qualified immunity. As the Court explained above, even if the Officers' use of force was in fact unreasonable, the Officers' conduct was, at worst, a borderline case for which the unconstitutionality was not clearly established. Accepting the police officer's version of events over the victim's in a borderline case is not an example of a police department making a "conscious, affirmative choice" to ratify the use of unconstitutional excessive force. Indeed, the "law does not say that, whenever an investigative group accepts an officer's version over a victim's differing version, this acceptance establishes a policy for which a municipality may be held liable under § 1983. If that were the law, counties might as well never conduct internal investigations and might as well always admit liability." *Kanae v. Hodson*, 294 F. Supp. 2d 1179, 1191 (D. Haw. 2003).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|----------|----------------------|------|----------------|
| Title    | *M.B. et al. v. City of Los Angeles et al.* | | |

In sum, as consistently held in the Ninth Circuit district courts, the mere fact that LAPD departments investigated the Officers' conduct and found no policy violations is insufficient to establish ratification. *See, e.g.*, *Garcia v. City of Imperial*, No. 08-cv-2357, 2010 WL 3911457, at *2 (S.D. Cal. Oct. 4, 2010) ("[I]n order for there to be ratification, there must be 'something more' than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures.").

### iii.    Unconstitutional Custom or Policy

Technically, Plaintiffs bring a third *Monell* claim alleging that the City has an unconstitutional official policy. *See* First Amended Complaint at 1, ECF No. 35. The parties' summary judgment briefing, however, indicates that Plaintiffs have agreed to dismiss that claim. *See* Def. Mot. for Summ. J. at 3 n.2 ("On March 14, 2025, the parties had a telephonic conference an[d] agreed that Plaintiffs would be dismissing the following Claims: Plaintiffs 2nd Claim for Denial of Medical Care & Plaintiffs' 6th *Monell* Claim of Custom or Policy."); Pl. Opp. to Def. Mot. for Summ. J. at 23 ("Defendants argue against the unconstitutional policy claim yet acknowledge that ***Plaintiffs have dismissed that claim during the parties' conference of counsel.***") (citations omitted) (emphasis added).

Plaintiffs' have not yet officially moved to dismiss this claim on the docket. But, in recognition of the parties' agreement, the Court will dismiss their *Monell* claim of unconstitutional custom or policy.

### D.  State Law Claims

In addition to their federal claims, Plaintiffs also bring various claims under state law. The Court bifurcated the state and federal claims earlier in this case. Now that the Court has granted summary judgment for Defendants on Plaintiffs' federal claims, it will turn to their state law claims.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|----------|----------------------|------|----------------|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

The only basis for jurisdiction over these claims is supplemental jurisdiction. "A district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting 28 U.S.C. § 1367(c)(3)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded on other grounds by statute as recognized in Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000)).

Here, the Court has dismissed all of Plaintiffs' claims over which it has original jurisdiction. Accordingly, as courts do in the "usual case in which all federal-law claims are eliminated before trial," the Court will decline to exercise supplemental jurisdiction over their state law claims. *See* 28 U.S.C. § 1367(c)(3).[11]

**V.    Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

---

[11] Plaintiffs may argue that judicial economy would be furthered by retaining jurisdiction over Plaintiffs' negligence claim. But such argument rests on a misunderstanding of the nuances of Fourth Amendment excessive force claims and negligence law. While both causes of action ask factfinders to consider the question of "reasonableness," the standards are not identical. Indeed, the Ninth Circuit has repeatedly acknowledged that California negligence law "is broader than federal Fourth Amendment law." *C.V. ex rel. Villegas v. City of Anaheim*, 823 F.3d 1252, 1257 n.6 (9th Cir. 2016); *accord Vos. V. City of Newport Beach*, 892 F.3d 1024, 1037-38 (9th Cir. 2018); *see also Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1126-28 (9th Cir. 2021) (holding that the district court erred by "conflat[ing] the broader California negligence standard, regarding pre-shooting conduct with the Fourth Amendment standard.") So, since evaluating Plaintiffs' negligence claim will require different analysis than Plaintiffs' excessive force claims, retaining their negligence claim does not increase judicial economy.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-07642-SVW-SSC | Date | April 29, 2025 |
|---|---|---|---|
| Title | *M.B. et al. v. City of Los Angeles et al.* | | |

Because summary judgment is granted as to all of Plaintiffs' federal claims and the Court declines to exercise supplemental jurisdiction over the remaining state claims, Plaintiffs no longer have claims pending before this Court. The Court therefore vacates the status conference set for May 12, 2025.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | PMC |